No. 16-1222

# In The United States Court of Appeals For The Fourth Circuit

JAMES HAMILTON,

Plaintiff-Appellant,

v.

WILLIAM L. PALLOZZI, Superintendent of the Maryland State Police, and BRIAN E. FROSH, Attorney General of Maryland,

Defendants-Appellees.

Appeal from a Judgment of the United States District Court for the District of Maryland, the Hon. James K. Bredar, District Judge (1:15-CV-02142-JKB)

## APPELLANT'S BRIEF

Cary Hansel
Hansel Law, P.C.
2514 N. Charles Street
Baltimore, MD 21218
301.461.1040/Fax 443.451.8606
cary@hansellaw.com

Alan Gura
Gura & Possessky, PLLC
916 Prince Street, Suite 107
Alexandria, VA 22314
703.835.9085/Fax 703.997.7665
alan@gurapossessky.com

April 11, 2016

Attorneys for Appellant

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Disclosures must be filed on behalf of <u>all</u> parties to a civil, agency, bankruptcy or mandamus case, except that a disclosure statement is **not** required from the United States, from an indigent party, or from a state or local government in a pro se case.  In mandamus cases arising from a civil or bankruptcy action, all parties to the action in the district court are considered parties to the mandamus case.

Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements.

If counsel is not a registered ECF filer and does not intend to file documents other than the required disclosure statement, counsel may file the disclosure statement in paper rather than electronic form.  Counsel has a continuing duty to update this information.

No. __16-1222__     Caption: __James Hamilton v. William L. Pallozzi, et al.__

Pursuant to FRAP 26.1 and Local Rule 26.1,

__James Hamilton__
(name of party/amicus)

_____

who is _____appellant_____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1.    Is party/amicus a publicly held corporation or other publicly held entity?    ☐YES ☑NO

2.    Does party/amicus have any parent corporations?    ☐YES ☑NO
      If yes, identify all parent corporations, including all generations of parent corporations:

3.    Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?    ☐YES ☑NO
      If yes, identify all such owners:

4.  Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation (Local Rule 26.1(b))?     ☐ YES ☑ NO
    If yes, identify entity and nature of interest:

5.  Is party a trade association? (amici curiae do not complete this question)     ☐ YES ☑ NO
    If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.  Does this case arise out of a bankruptcy proceeding?     ☐ YES ☑ NO
    If yes, identify any trustee and the members of any creditors' committee:

Signature: /s/ Alan Gura _____     Date: _____ March 4, 2016 _____

Counsel for: Appellant James Hamilton _____

## CERTIFICATE OF SERVICE
**************************

I certify that on _____ March 4, 2016 _____ the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by serving a true and correct copy at the addresses listed below:

/s/ Alan Gura _____          March 4, 2016 _____
        (signature)                                  (date)

TABLE OF CONTENTS

Table of Authorities........................................ iii

Jurisdictional Statement.................................... 1

Statement of Issue......................................... 1

Statement of the Case...................................... 2

    1.   The Relevant Regulatory Scheme...................... 3

    2.   James Hamilton's Record and Personal Circumstances.... 5

    3.   Defendants' Disarmament of Hamilton................. 7

    4.   Procedural History.................................. 9

    5.   The Decision Below................................. 9

Summary of Argument ..................................... 12

Argument................................................ 14

    I.   The Standard of Review........................... 14

    II.   The District Court Correctly Found Hamilton's Claim
        Justiciable...................................... 15

        A.   Hamilton's Claim, Sounding in Non-Applicant
            and Pre-Enforcement Standing, Is Ripe.......... 15

        B.   Hamilton's Injury Was Complete for Standing
            Purposes.................................... 20

    III.   "Presumptively" Constitutional Felon Disarmament
         Laws Are Subject to As-Applied Challenges........... 24

i

IV.   This Court Applies A "Streamlined" Test for As-
      Applied Challenges to Felon Disarmament Laws,
      Inquiring Whether the Applicant Is a Responsible,
      Law-Abiding Citizen. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

V.    The District Court Erred In Declining to Apply
      This Court's "Streamlined" As-Applied Inquiry,
      Under Which Hamilton Is Entitled to Summary
      Judgment. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

Conclusion. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 39

Statement Concerning Oral Argument. . . . . . . . . . . . . . . . . . . . . . 39

Addendum. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Addendum 1

Certificate of Compliance

Certificate of Service

TABLE OF AUTHORITIES

Cases

*Bach* v. *Pataki*, 408 F.3d 75
(2nd Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Begay* v. *United States*,
553 U.S. 137 (2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

*Binderup* v. *Holder*, No 13-6750,
2014 U.S. Dist. LEXIS 135110 (E.D. Pa. Sept. 25, 2014) . . . 36, 38

*Britt* v. *State*,
363 N.C. 546, 681 S.E.2d 320 (N.C. 2009). . . . . . . . . . . . . . . . . 32

*Dearth* v. *Holder*,
641 F.3d 499 (D.C. Cir. 2011). . . . . . . . . . . . . . . . . . . . . . . . 17, 18

*District of Columbia* v. *Heller*,
554 U.S. 570 (2008) . . . . . . . . . . . . . . . . . . 19, 24, 25, 27-30, 36, 37

*DKT Memorial Fund, Ltd.* v. *Agency for International Dev.*,
810 F.2d 1236 (D.C. Cir. 1987) . . . . . . . . . . . . . . . . . . . . . . . 15, 16

*Doe* v. *Va. Dep't of State Police*,
713 F.3d 745 (4th Cir. 2013). . . . . . . . . . . . . . . . . . . 10, 11, 20-23

*Doe* v. *Va. Dep't of State Police*,
720 F.3d 212 (4th Cir. 2013). . . . . . . . . . . . . . . . . . . . . . . . 10, 22

*Ezell* v. *City of Chicago*,
651 F.3d 684 (7th Cir. 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . 38

*Groves* v. *Commun. Workers of Am.*, No.14-1854,
2016 U.S. App. LEXIS 4470 (4th Cir. March 10, 2016) . . . . . 14, 15

*Horsley* v. *Trame*,
  808 F3d 1126 (7th Cir. 2015)........................... 17, 19

*Int'l Brotherhood of Teamsters* v. *United States*,
  431 U.S. 324 (1977) .................................... 15

*Johnson* v. *Am. Towers, LLC*,
  781 F.3d 693 (4th Cir. 2015) ........................... 14

*Jones* v. *State*,
  420 Md. 437 (2011)...................................... 4

*Leocal* v. *Ashcroft*,
  543 U.S. 1 (2004) ...................................... 34

*McCloud* v. *Dep't of State Police*,
  426 Md. 473 (2011)...................................... 4

*McDonald* v. *City of Chicago*,
  561 U.S. 742 (2010)..................................... 16

*Medimmune, Inc.* v. *Genentech, Inc.*,
  548 U.S. 118 (2007)..................................... 20

*Mobil Oil Corp.* v. *Attorney Gen. of Virginia*,
  940 F.2d 73 (4th Cir. 1991). ........................... 20

*Parker* v. *District of Columbia*,
  311 F. Supp. 2d 103 (D.D.C. 2004). ..................... 36

*Parker* v. *District of Columbia*,
  478 F.3d 370 (D.C. Cir. 2007). ......................... 37

*Patsy* v. *Board of Regents of Fla.*,
  457 U.S. 496 (1982). ....................... 11, 19, 21, 23

iv

*Schrader* v. *Holder*,
    704 F.3d 980 (D.C. Cir. 2012). . . . . . . . . . . . . . . . . . . . . . . . 25, 27

*Steffel* v. *Thompson*,
    415 U.S. 452 (1974). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Suarez* v. *Holder*, No. 14-968,
    2015 U.S. Dist. LEXIS 19378 (M.D. Pa. Feb. 18, 2015). . . . 29, 36-
    38

*United States* v. *Barton*,
    633 F.3d 168 (3d Cir. 2011). . . . . . . . . . . . . . . . . . . . . . . 24, 30-32

*United States* v. *Brookins*,
    345 F.3d 231 (4th Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . 39

*United States* v. *Carpio-Leon*,
    701 F.3d 974 (4th Cir. 2012). . . . . . . . . . . . . . . . . . . 26, 30, 32, 33

*United States* v. *Carter*,
    669 F.3d 411 (4th Cir. 2012). . . . . . . . . . . . . . . . . . . . . . . . . 36

*United States* v. *Chester*,
    628 F.3d 673 (4th Cir. 2010) . . . . . . . . . . . . . . . . . . 25, 27, 29, 36

*United States* v. *Moore*,
    666 F.3d 313 (4th Cir. 2012). . . . . . . . . . . . . . . . . . . . . . . 26, 29-33

*United States* v. *Pruess*,
    703 F.3d 242 (4th Cir. 2012). . . . . . . . . . . . . . . . . . . . . 29, 31, 32

*United States* v. *Smoot*,
    690 F.3d 215 (4th Cir 2012). . . . . . . . . . . . . . . . . . . . . . 26, 31, 32

*United States* v. *Torres-Rosario*,
    658 F.3d 110 (1st Cir. 2011).. . . . . . . . . . . . . . . . . . . . . . . . 25

*United States* v. *Triple Canopy, Inc.*,
  775 F.3d 628 (4th Cir. 2015) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*United States* v. *Williams*,
  616 F.3d 685 (7th Cir. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . 25, 26

*Vill. of Arlington Hghts.* v. *Metro. Housing Dev. Corp.*,
  429 U.S. 252 (1977) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Williamson Cnty. Reg'l Planning Comm'n* v. *Hamilton Bank
  of Johnson City*, 473 U.S. 172 (1985) . . . . . . . . . . . . . . . . . . . . . 22

*Wright* v. *Roanoke Redev't & Hous. Auth.*,
  479 U.S. 418 (1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

Rules and Statutes

18 U.S.C. § 922(a)(9) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

18 U.S.C. § 922(b)(3) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

18 U.S.C. § 922(g) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26, 30

18 U.S.C. § 922(g)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 36, 37

18 U.S.C. § 925(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26, 27, 30

28 U.S.C. § 1291 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

28 U.S.C. § 1292 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

28 U.S.C. § 1331 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

28 U.S.C. § 1343 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

42 U.S.C. § 1983 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19, 21

Fed. R. Civ. P. 56(a). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Md. Crim. Law Code Ann. § 8-204. . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Md. Crim. Law Code Ann. § 8-205. . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Md. Crim. Law Code Ann. § 8-209. . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Md. Pub. Safety Code Ann. § 5-101(g). . . . . . . . . . . . . . . . . . . . . . . . . 4

Md. Pub. Safety Code Ann. § 5-101(r)(1). . . . . . . . . . . . . . . . . . . . . . . 3

Md. Pub. Safety Code Ann. § 5-101(r)(2). . . . . . . . . . . . . . . . . . . . . . . 3

Md. Pub. Safety Code Ann. § 5-133(b)(1). . . . . . . . . . . . . . . . . . . . . 4, 9

Md. Pub. Safety Code Ann. § 5-134(b). . . . . . . . . . . . . . . . . . . . . . . . . 4

Md. Pub. Safety Code Ann. § 5-144(b). . . . . . . . . . . . . . . . . . . . . . . 4, 9

Md. Pub. Safety Code Ann. § 5-205(b)(1). . . . . . . . . . . . . . . . . . . . . 4, 9

Md. Pub. Safety Code Ann. § 5-205(d). . . . . . . . . . . . . . . . . . . . . . . . . 4

Va. Code Ann. § 18.2-192. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Va. Code Ann. § 18.2-193. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Va. Code Ann. § 18.2-195. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Other Authorities

"Types of Pardons in Virginia and Eligibility Information,"
    https://commonwealth.virginia.gov/media/3654/pardon-
    questionnaire- 2015-03-04.pdf (last visited April 3, 2016). . . . . . 24

vii

"Types of Pardons in Virginia and Eligibility Information,"
https://commonwealth.virginia.gov/media/5080/_-
pardon-questionnaire-1-1-16.pdf (last visited April 3, 2016). . . . 23

APPELLANT'S BRIEF

JURISDICTIONAL STATEMENT

Plaintiff-Appellant James Hamilton seeks declaratory and injunctive relief from the application of Maryland laws barring his possession of firearms. The District Court had jurisdiction over this case pursuant to 28 U.S.C. §§ 1331 and 1343.

On February 18, 2016, the District Court announced that it would dismiss the action with prejudice and deny Hamilton's motion for summary judgment. Joint Appendix ("JA") 34, 49. An order denying Hamilton's motion for summary judgment, dismissing Hamilton's case with prejudice, and closing the District Court's file was entered that day. JA 50.

This Court has jurisdiction per 28 U.S.C. §§ 1291, 1292 in this appeal from a final judgment, and from an order denying injunctive relief. Hamilton timely noticed his appeal on February 29, 2016. JA 51.

STATEMENT OF THE ISSUE

James Hamilton was convicted in 2006, in Virginia, of non-violent offenses that are not inherently related to violence. A Virginia court later restored Hamilton's firearm rights, and Virginia's Governor

subsequently restored Hamilton's other civil rights. Accordingly, neither Virginia nor federal law bars Hamilton's possession of firearms.

Hamilton is a peaceful, law-abiding, responsible citizen, and is licensed to provide armed security by the Virginia Department of Criminal Justice Services. But Maryland, where Hamilton resides, nonetheless bars Hamilton from possessing firearms on account of his Virginia conviction. The issue presented is:

Is there any constitutionally-adequate reason under the Second Amendment to support application of Maryland's firearm prohibition against Hamilton, on account of Hamilton's non-violent and non-violence-related Virginia convictions for which his rights have been fully restored?

## STATEMENT OF THE CASE

The Second Amendment offers no impediment to a legislature enacting this simple, common-sense proposition into law: dangerous people should not have guns. But as this Court (among others) has repeatedly held, the Second Amendment secures the arms rights of individuals who, having fallen within the metes and bounds of facially-valid arms prohibitions, have nonetheless become the responsible, law-

abiding citizens whose rights the Amendment seeks to protect, and whose disarmament consequently serves no purpose.

Until now, this Court's occasions to recite this basic rule have arisen in circumstances where the claimant was decidedly not very law-abiding or responsible. The only novelty presented here is that the individual seeking relief is, in fact, responsible and law-abiding—so much so, that he is now licensed to work as an armed guard. James Hamilton's non-violent background, unremarkable criminal history, stable family life, role in the community, and employment as an armed guard in the state that once convicted him but has since restored all of his rights, suffice to establish Hamilton's entitlement to relief.

The District Court expressly refused to perform the required analysis of Hamilton's factual circumstances, but there is no genuine dispute as to what those facts reveal when considered.

1.    *The Relevant Regulatory Scheme*

A handgun is a "regulated firearm" under Maryland law. Md. Pub. Safety Code Ann. § 5-101(r)(1).[1] Maryland law provides that "a person

---

[1]"Regulated firearm" also includes 45 specifically delineated so-called "assault weapons" or their copies, Md. Pub. Safety Code Ann. § 5-101(r)(2), but does not include any other rifle or shotgun.

3

may not possess a regulated firearm if the person: (1) has been convicted of a disqualifying crime . . . ." Md. Pub. Safety Code Ann. § 5-133(b)(1). Possession of a handgun in violation of this provision is a misdemeanor punishable by up to 5 years imprisonment, a $10,000 fine, or both. Md. Pub. Safety Code Ann. § 5-144(b); *Jones* v. *State*, 420 Md. 437 (2011). The same punishment applies to "[a] dealer or other person," who "may not sell, rent, or transfer a regulated firearm to a purchaser, lessee, or transferee who the dealer or other person knows or has reasonable cause to believe . . . (2) has been convicted of a disqualifying crime . . . ." Md. Pub. Safety Code Ann. § 5-134(b).

Maryland forbids the possession of rifles and shotguns by anyone convicted of a "disqualifying crime." Md. Pub. Safety Code Ann. § 5-205(b)(1). A violation of this provision is a misdemeanor punishable by up to 3 years' imprisonment, a $1000 fine, or both. Md. Pub. Safety Code Ann. § 5-205(d). "'Disqualifying crime' means . . . (2) a violation classified as a felony in the State . . . ." Md. Pub. Safety Code Ann. § 5-101(g). The term extends to crimes committed in other states, if the equivalent crime is a felony in Maryland. *McCloud* v. *Dep't of State Police*, 426 Md. 473 (2011).

2.    *James Hamilton's Record and Personal Circumstances.*

James Hamilton, an American citizen residing in Maryland, is over the age of 21. JA 15, ¶¶ 1, 2. Hamilton is not under indictment, and has never been convicted of a misdemeanor crime of domestic violence, any other crime of violence, or any common law crime for which he received a sentence exceeding two years imprisonment. *Id.* ¶ 2.

Hamilton is not a fugitive from justice, habitual drunkard, or an unlawful user of or addicted to any controlled substance. *Id.* ¶ 3. Hamilton has not been adjudicated a mental defective or committed to a mental institution, nor has he been voluntarily admitted to a mental institution. *Id.* ¶ 4. Hamilton does not suffer from any mental disorder, nor has he ever been found incompetent to stand trial or not criminally responsible by reason of insanity. *Id.* Hamilton has not been discharged from the Armed Forces under dishonorable conditions, has never renounced his citizenship, and has never been the subject of a restraining order relating to an intimate partner. *Id.* ¶ 5.

Hamilton had agreed to let an individual buy him a laptop on a stolen credit card. As a result, on November 6, 2006, Hamilton was convicted by the Circuit Court for Rockbridge County, Virginia, of three

felonies: one count of credit card fraud, in violation of Va. Code Ann. § 18.2-195; one count of credit card theft, in violation of Va. Code Ann. § 18.2-192; and one count of credit card forgery, Va. Code Ann. § 18.2-193. He received a suspended sentence of four years, and was ordered to pay $1,247.90 in restitution and $1,090.00 in court costs. JA 16, ¶ 6; JA 18-21.

Hamilton successfully completed probation, made restitution, and paid his costs. But owing to this conviction, Hamilton lost his political rights in Virginia: the rights to vote; hold public office; sit on a jury; serve as a notary; and ship, transport, possess or receive firearms. JA 16, ¶ 7. On November 20, 2013, Virginia's Governor restored Hamilton's rights to vote, hold public office, sit on a jury, and serve as a notary. JA 16, ¶ 8; JA 22-23. On April 22, 2014, the Circuit Court for Spotsylvania County, Virginia, restored Hamilton's firearms rights under Virginia law. JA 16, ¶ 9; JA 24. Hamilton is now a registered Armed Security Officer with the Virginia Department of Criminal Justice Services, certified in the use of handguns and shotguns. JA 16, ¶ 10; JA 25-26.

Hamilton has been happily married for over seven years. JA 16, ¶ 11. He resides with two of his children, and continues to support, and be involved in the lives of all his children, including those from an earlier marriage. JA 16-17, ¶ 11. Hamilton also serves as the head coach of an elite junior league wrestling team, supervising the training, competition, and travel of children ages five through sixteen. JA 17, ¶ 12. He has no history of violent conduct. *Id.* ¶ 13. Hamilton intends to possess a handgun and a long gun to defend himself and his family at home. *Id.* ¶ 14.

     3.    *Defendants' Disarmament of Hamilton.*

Maryland's provisions equivalent to those of which Hamilton was convicted in Virginia are Md. Crim. Law Code Ann. § 8-204, credit card theft, a misdemeanor; Md. Crim. Law Code Ann. § 8-205, credit card counterfeiting, a felony; and Md. Crim. Law Code Ann. § 8-209, receiving property by stolen, counterfeit, or misrepresented credit card, a felony on the facts of Hamilton's case.

Prior to obtaining any firearms, Hamilton sought a permit to carry a handgun from the Maryland State Police. JA 17, ¶ 14; JA 29. The Police's Licensing Division informed Hamilton that he could not possess

a firearm in Maryland, owing to his Virginia conviction, unless he were to obtain a full pardon from Virginia's Governor. JA 17, ¶ 14. Because he was informed that he was not allowed to possess guns, Hamilton walked out of the police station without filling out any forms. JA 29. The Licensing Division thus has no record of Hamilton having applied for permits to carry or purchase a handgun. JA 27, ¶ 2.

But while the Licensing Division also "has no record of any communication between Division personnel and James Hamilton of District Heights, Maryland concerning his eligibility to" carry or acquire handguns or other "regulated firearm[s]," *id.* ¶ 3, Defendants do have a record of communicating *with one of Hamilton's attorneys* concerning the subject. Hamilton's attorney asked Defendant Frosh's office to recognize Virginia's restoration of her client's firearms rights, and was refused in an email copied to Appellees' counsel, who was also designated as the point of contact for any further discussion. JA 30-33.

Maryland offers Hamilton no procedure by which he might regain his firearm rights in that state. *Id.*; JA 17, ¶ 14. Hamilton refrains from obtaining a firearm only because he reasonably fears arrest, prosecution, incarceration and fine, under Md. Pub. Safety Code Ann.

8

§§ 5-133(b)(1), 5-144, 5-205(b)(1), instigated and directed by Defendants Frosh and Maryland State Police Superintendent William L. Pallozzi, should he follow through with his plan to obtain a firearm. JA 17, ¶ 15.

4.   *Procedural History*.

Hamilton brought this lawsuit on July 22, 2015, seeking declaratory and injunctive relief against Defendants' application of Maryland's firearms prohibitions against him on account of his 2006 Virginia conviction. Defendants moved to dismiss the complaint on October 6, 2015, and Hamilton cross-moved for summary judgment on October 26, 2015. On February 18, 2016, the District Court denied Hamilton's summary judgment motion and granted Defendants' motion to dismiss with prejudice. JA 50. On February 29, 2016, Hamilton timely noticed his appeal. JA 51.

5.   *The Decision Below*.

The District Court opened by finding that Hamilton had standing to present his claim, which is ripe, rejecting Defendants' speculation that a formal handgun license application might have uncovered some other, unspecified disqualification.

> [Defendants] provide no evidence whatsoever in support of their conjecture. Plaintiff, conversely, denies having any disqualifying characteristics other than his felony convictions . . . And Defendants never refute Plaintiff's basic assertion—i.e., that because of the Firearms Prohibitions, he is barred from lawfully possessing a handgun or long gun in the State of Maryland.

JA 39. The District Court held that Hamilton need not "avail himself of a hopeless administrative process before looking to the courts for relief." *Id.* (citations omitted). And it further found that even if Hamilton had some other disability, he could still obtain relief from prosecution under the challenged provisions. JA 40.

The District Court then identified *sua sponte* a different standing issue not raised by Defendants and consequently not briefed by any party, but concluded that it was no impediment to Hamilton's claim. Citing *Doe* v. *Va. Dep't of State Police*, 713 F.3d 745 (4th Cir. 2013), *reh'g denied*, 720 F.3d 212 (4th Cir. 2013), the District Court noted that Defendants might have allowed Hamilton to possess firearms had he obtained a pardon from Virginia's Governor. JA 40-41.

But the District Court put aside any doubts as to the completeness of Hamilton's harm, as the parties never had occasion to brief the issue; as "Judge King's thoughtful and vigorous dissent in *Doe*" raised serious

10

questions about the decision's interaction with *Patsy* v. *Board of Regents of Fla.*, 457 U.S. 496 (1982); because courts have afforded *Doe* a limited reading; and, per Judge Keenan's *Doe* concurrence (if not per the *Doe* majority opinion itself), because Virginia's Governor has nothing to do with administering Maryland's firearm laws. JA 42.

Turning to the merits, the District Court found that the framework for evaluating challenges to the federal so-called "felon in possession" ban of 18 U.S.C. § 922(g)(1) was applicable to Hamilton's challenge to Maryland's similar firearm prohibitions. JA 46. The District Court then eschewed a "complicated means-ends inquiry," finding from the face of the complaint that Hamilton was "*not* an average law-abiding, responsible citizen." JA 47. The District Court observed that property offenders, as a class, are subject to recidivate, JA 47-48, and that "courts in this Circuit and elsewhere have repeatedly rejected Second Amendment challenges to disarmament statutes brought by felons with nonviolent offenses of conviction," JA 48 (citations omitted).

The District Court then offered that "[t]he point of [its] discussion [was] not, of course, to impugn Plaintiff's motives or even to assess his

11

rehabilitation." JA 49. Rather, the District Court dismissed Hamilton's complaint solely on account of his conviction at "prong one." *Id.*

## SUMMARY OF ARGUMENT

The District Court correctly found that Hamilton presents a justiciable complaint. After all, Defendants confirmed that they will arrest and prosecute Hamilton should he follow through on his plan to possess firearms. Hamilton was not required to engage in a futile act of seeking a permit for which he is not qualified and which the Defendants have already assured him, and his attorney via email, would be denied. Moreover, state law does not require or provide for a permit to possess a long gun, which Hamilton also seeks. And regardless of whether Defendants would acknowledge the uncertain outcome of an out-of-state administrative process, there is no question that Hamilton's injury under Maryland law is complete, and that it was complete at the time Hamilton brought suit.

But the District Court clearly erred in refusing to "assess [Hamilton's] rehabilitation." JA 49. Multiple decisions of this Court have confirmed, time and again, that assessment of a felon's

rehabilitation is *precisely* what the Second Amendment requires in an as-applied challenge to an otherwise valid disarmament law.

To this unremarkable proposition, Hamilton adds another: on a motion to dismiss, the facts alleged in the complaint must be assumed to be true, and viewed in the light most favorable to the plaintiff. Accordingly, the lower court erred not merely by refusing to perform the analysis required by this Court's precedent. As the complaint alleged that Hamilton is a responsible, law-abiding citizen unlinked in any way to violence, whose possession of firearms poses no greater danger to the community than would firearm possession by any other responsible, law-abiding citizen, the court below plainly erred in dismissing Hamilton's textbook case raising an as-applied challenge to a felon-disarmament law.

And because the summary judgment record was entirely one-sided, Defendants having declined to challenge Hamilton's evidence or adduce any of their own that might show Hamilton to be something other than the responsible, law-abiding citizen he plainly is, the court below erred in failing to grant Hamilton's summary judgment motion. After all, James Hamilton is a non-violent, non-dangerous, fully-rehabilitated

13

offender whose disarmament cannot be justified on traditional, if any, grounds. Hamilton is plainly not a typical felon. His non-violent background, unremarkable criminal history, stable family life, role in the community, and employment as an armed guard in the state that once convicted him but has since restored to Hamilton all of his rights, suffice to establish entitlement to as-applied Second Amendment relief.

The decision below should be reversed, and the case remanded with instructions to enter summary judgment for Hamilton.

ARGUMENT

## I. THE STANDARD OF REVIEW.

"We review the district court's grant of the defendants' motion to dismiss de novo." *Johnson* v. *Am. Towers, LLC*, 781 F.3d 693, 706 (4th Cir. 2015) (citation omitted). "[W]e accept as true all well-pled facts in the complaint and construe them in the light most favorable to the [Plaintiff]." *United States* v. *Triple Canopy, Inc.*, 775 F.3d 628, 632 n.1 (4th Cir. 2015).

> We review a district court's grant or denial of summary judgment de novo. Summary judgment is appropriate when, viewing the facts in the light most favorable to the nonmoving party, "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."

14

*Groves* v. *Commun. Workers of Am.*, No.14-1854, 2016 U.S. App. LEXIS

4470, at *7 (4th Cir. March 10, 2016) (quoting Fed. R. Civ. P. 56(a))

(other citation omitted).

II.    THE DISTRICT COURT CORRECTLY FOUND HAMILTON'S CLAIM
       JUSTICIABLE.

   A.      Hamilton's Claim, Sounding in Non-Applicant and Pre-
           Enforcement Standing, Is Ripe.

Notwithstanding their position that Hamilton is prohibited from

possessing firearms in Maryland, Defendants asserted that Hamilton's

challenge was unripe owing to his formal lack of application for a

handgun permit. The District Court correctly rejected the claim.

   Putting aside the fact that Hamilton seeks not only a handgun, but

also a long gun, which is not subject to any Maryland licensing process,

Hamilton need not go through a futile, ritualistic act of submitting

paperwork to test an announced disqualification. See, *e.g. Int'l*

*Brotherhood of Teamsters* v. *United States*, 431 U.S. 324, 365-66 (1977)

(minority job applicants need not test a "whites only" sign before filing

a Title VII claim). "The Supreme Court has recognized that otherwise

qualified non-applicants may have standing to challenge a

disqualifying statute or regulation." *DKT Memorial Fund, Ltd.* v.

*Agency for International Dev.*, 810 F.2d 1236, 1238 (D.C. Cir. 1987) (citing *Vill. of Arlington Hghts.* v. *Metro. Housing Dev. Corp.*, 429 U.S. 252 (1977)).

Courts have rejected futile act defenses in Second Amendment challenges. Directly on-point is the Second Circuit's opinion in *Bach* v. *Pataki*, 408 F.3d 75 (2nd Cir. 2005), *overruled on other grounds, McDonald* v. *City of Chicago*, 561 U.S. 742 (2010). In *Bach*, the plaintiff challenged New York's prohibition on the issuance of firearms carry permits to those who neither permanently reside nor work in the state. Because the prohibition clearly applied to the plaintiff, he did not bother applying for a firearms permit. The District Court rejected the ripeness challenge, and the Second Circuit affirmed:

> The State Police informed Bach that he was statutorily ineligible for a carry license. Bach had nothing to gain thereafter by completing and filing an application . . . . Imposing a filing requirement would force Bach to complete an application for which he is statutorily ineligible and to file it with an officer without authority to review it. We will not require such a futile gesture as a prerequisite for adjudication in federal court.

*Id*. at 82-83 (footnotes, citations and internal quotation marks omitted).

More recently, the Seventh Circuit considered a Second Amendment challenge to a law requiring parental permission for gun purchases by

16

adults aged 18-20. The state claimed that the plaintiff's case was unripe because she "did not ask the Director of State Police to grant her a [firearms] card after her application was returned to her." *Horsley* v. *Trame*, 808 F.3d 1126, 1129 (7th Cir. 2015). But the Seventh Circuit rejected the claim, because the lack of parental permission had already been consequential. "[I]t is clear that the Department of State Police will not process Horsley's application in the same way that it will process applications that contain parent or guardian signatures." *Id.*

The D.C. Circuit supplied a third example of this principle in action in Second Amendment challenges. In *Dearth* v. *Holder*, 641 F.3d 499 (D.C. Cir. 2011), the court rejected the Government's jurisdictional challenge to a Second Amendment claim brought by a consumer whose attempts to obtain a gun were stymied by his lack of domestic residence, per 18 U.S.C. § 922(a)(9) and (b)(3). Had the plaintiff truthfully filled out the form, disclosing his overseas residence, the transaction would have been canceled—so he stepped away, and sued. The Government claimed that "it did not affirmatively deny Dearth's application to purchase a firearm," but the D.C. Circuit answered, "the Government cannot so easily avoid suit when it has erected a

regulatory scheme that precludes Dearth from truthfully completing the application form the Government requires for the purchase of a firearm." *Dearth*, 641 F.3d at 502.

What would have happened here had Hamilton filled out a form disclosing his felony record? The same thing that the police advised Hamilton, and that Defendants later confirmed to Hamilton's counsel and later in their pleadings below: denial, because they do not believe he can legally have guns on account of his Virginia conviction.

Again putting aside the issue that Maryland requires no permits to possess long guns, Defendants nonetheless persist that had only Hamilton applied, the application might have revealed some *other* problem. But this is not how standing works. African-American job seekers dismayed by a "whites only" sign need not apply anyway before suing, so that the employer might discover some as-yet unimagined reason for refusing to hire them unrelated to race. And as the District Court found, even if Hamilton suffered some other firearms disability (he does not, and Defendants never suggested that he does), he could still be prosecuted by Defendants for violating the laws whose application he challenges here. Moreover, on Defendants' motion to

dismiss, the complaint's allegations that Hamilton has no other disability must be assumed true.

The bottom line is that in *this* case, Hamilton challenges the impact of his November 6, 2006 conviction—the *only* known impediment to his ability to possess firearms. That dispute is plainly ripe for resolution. See, *e.g., District of Columbia* v. *Heller*, 554 U.S. 570, 635 (2008) ("*Assuming that Heller is not disqualified from the exercise of Second Amendment rights*, the District must permit him to register his handgun and must issue him a license to carry it in the home") (emphasis added). If Defendants wished to raise some other, as-yet unknown problem with Hamilton, they should have done so.

As for the Defendants' suggestion that Hamilton should have exhausted administrative or state judicial procedures, that much is plainly not required to maintain an action under 42 U.S.C. § 1983. See *Patsy* v. *Florida Board of Regents*, 457 U.S. 496 (1982); *Wright* v. *Roanoke Redev't & Hous. Auth.*, 479 U.S. 418, 427-28 (1987); *Steffel* v. *Thompson*, 415 U.S. 452, 472-73 (1974); *Horsley*, 808 F.3d at 1129.

Finally, Defendants suggested that Hamilton lacks standing because they have not actually threatened to arrest him. But that much is

plainly erroneous. See *Mobil Oil Corp.* v. *Attorney Gen. of Virginia*, 940 F.2d 73, 75 (4th Cir. 1991). A reasonable fear of prosecution suffices to ripen a dispute—actual threats are not required. "The plaintiff's own action (or inaction) in failing to violate the law eliminates the imminent threat of prosecution, but nonetheless does not eliminate Article III jurisdiction." *Medimmune, Inc.* v. *Genentech, Inc.*, 548 U.S. 118, 129 (2007). Surveying its cases on the subject, the Supreme Court explained, "In each of these cases, the plaintiff had eliminated the imminent threat of harm by simply not doing what he claimed the right to do . . . That did not preclude subject-matter jurisdiction because the threat-eliminating behavior was effectively coerced." *Id.* (citations omitted).

The dispute is ripe, in the contexts of both non-applicant and pre-enforcement standing.

B.      Hamilton's Injury Was Complete for Standing Purposes.

The District Court correctly concluded that Hamilton's injury was complete under Maryland law, as the concerns raised in *Doe, supra,* 713 F.3d 745, are inapplicable—both for reasons the court below suspected, and for others that briefing below would have revealed.

20

*Doe* concerned the question of whether a woman who had been registered as a violent sexual offender could challenge Virginia's prohibition on her entry to school and other child-related grounds, including churches, without first seeking a determination on the question from the relevant school board or church, and from Virginia's state courts. Judge King's dissent argued that requiring the plaintiff to pursue these state determinations violated *Patsy*'s proscription against conditioning Section 1983 relief on the exhaustion of state administrative and judicial remedies, but the majority understood Virginia's law differently. It found that the determination of whether the exclusion actually applied to the plaintiff required administrative and state circuit court decisions; absent those processes, the injury was incomplete. *Doe*, 713 F.3d at 758-59.

As Judge Keenan noted, "the question whether [Doe] suffers from any injury at all depends on the manner in which [the statute] applies to the facts and circumstances of her case." *Id.* at 761 (Keenan, J., concurring). But "[b]ecause Doe has not sought relief from a Virginia circuit court and the local school board, we have no way of knowing" the nature and extent of her injury, if any. *Id.* The local school board and

21

court were not providers of administrative and judicial review, but
rather "initial decisionmaker[s]" who must "arrive at a definitive
position on the issue that inflicts an actual, concrete injury." *Id.* at 763
(Keenan, J., concurring) (quoting *Williamson Cnty. Reg'l Planning
Comm'n* v. *Hamilton Bank of Johnson City*, 473 U.S. 172, 193-94
(1985)). Judge Duncan later reiterated *Doe*'s "limited issue" and
resultant "limited ruling" as bound by the fact that the court did not
"know[] whether those [challenged] policies in fact constrain" the
plaintiff. *Doe*, 720 F.3d at 213 (Duncan, J., concurring in denial of
rehearing en banc).

The District Court noted, sua sponte, that Defendants took the
position that they would not prosecute Hamilton for possessing
firearms were he to obtain a pardon from Virginia's Governor.
Assuming that Hamilton was eligible for a pardon (he was not, see
*infra*), the District Court nonetheless correctly noted that Defendant
Maryland officials are different decision-makers than is Virginia's
Governor, and that they apply different sets of laws. JA 42 n.15.
Virginia's Governor is not an "initial decisionmaker," or indeed, any
kind of decisionmaker, as to what Maryland law forbids or how it

22

applies. Unlike *Doe*, there is no question that Maryland's law in fact constrains Hamilton, and no question as to the extent of Maryland's firearms prohibition. A pardon's theoretical availability is, at best, an administrative remedy from an already known and complete injury—precisely that which *Patsy* holds cannot be required in federal civil rights actions.[2]

Finally on this point, Hamilton is constrained to note that he was ineligible for a Virginia pardon when he brought his action. As the District Court noted, Virginia pardons now require a five-year waiting period. JA 40 n.11. But that waiting period runs from the end of all court supervised probation, which for Hamilton, ended on November 6, 2010. JA 21. Consequently, the five year waiting period would not have expired until well-after Hamilton brought suit.[3]

--------

[2]It would be especially irrational, if not Kafkaesque, to require a Virginia administrative process to determine whether Hamilton is injured under Maryland law, considering that Hamilton has already done all that he could under Virginia law to restore his firearms rights–an outcome that (1) a gubernatorial pardon would not have achieved, and (2) which Defendants do not credit.

[3]Moreover, at the time Hamilton brought suit, the waiting period was not five years, but ten years. The District Court's February 2016 link in turn links to a questionnaire setting forth the current policy, whose URL suggests it was posted on January 1, 2016. *See* "Types of

While it appears that Hamilton is *now* eligible for a pardon, he was not so eligible when he brought suit. And again, that administrative relief might now be available does not change the complete, non-contingent and well-known scope of Defendants' decision to prohibit Hamilton's possession of firearms.

III.    "PRESUMPTIVELY" CONSTITUTIONAL FELON DISARMAMENT LAWS ARE SUBJECT TO AS-APPLIED CHALLENGES.

In upholding the individual right to bear arms, the Supreme Court explained that "nothing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons," which it termed "presumptively lawful." *Heller*, 554 U.S. at 626-27 & n.26. This language contemplates as-applied challenges.

"By describing the felon disarmament ban as 'presumptively' lawful, the Supreme Court implied that the presumption may be rebutted."

---

Pardons in Virginia and Eligibility Information," https://commonwealth.virginia. gov/media/5080/_-pardon-questionnaire-1-1-16.pdf (last visited April 3, 2016). The notation at the bottom of the questionnaire reading "Revised March 2015" appears to be left over from a different document, whose URL suggests it was posted on March 4, 2015, and reflects the ten-year waiting period rule. *See* "Types of Pardons in Virginia and Eligibility Information," https://commonwealth.virginia.gov/media/3654/pardon-questionnaire-2015-03-04.pdf (last visited April 3, 2016).

*United States* v. *Barton*, 633 F.3d 168, 173 (3d Cir. 2011). "*Heller*
referred to felon disarmament bans only as 'presumptively lawful,'
which, by implication, means that there must exist the possibility that
the ban could be unconstitutional in the face of an as-applied
challenge." *United States* v. *Williams*, 616 F.3d 685, 692 (7th Cir.
2010).

"[G]iven the 'presumptively lawful' reference in *Heller*—the Supreme
Court may be open to claims that some felonies do not indicate
potential violence and cannot be the basis for applying a categorical
ban. Possibly it might even be open to highly fact-specific objections."
*United States* v. *Torres-Rosario*, 658 F.3d 110, 113 (1st Cir. 2011);
*Schrader* v. *Holder*, 704 F.3d 980, 991 (D.C. Cir. 2013).

This Court is no exception. It has repeatedly confirmed the
availability of as-applied challenges to felon disarmament laws, even if,
in the short time since *Heller*, it has not been presented a civil as-
applied challenge brought by a non-dangerous individual. "[T]he phrase
'*presumptively* lawful regulatory measures' suggests the possibility that
one or more of these 'longstanding' regulations 'could be
unconstitutional in the face of an as-applied challenge.'" *United States*

v. *Chester*, 628 F.3d 673, 679 (4th Cir. 2010) (quoting *Williams*, 616

F.3d at 692)) (emphasis in *Chester*); *id.* at 687 ("Chester can plainly

challenge the statute as applied to him") (Davis, J., concurring in the

judgment); *United States* v. *Smoot*, 690 F.3d 215, 221 (4th Cir 2012);

*United States* v. *Moore*, 666 F.3d 313, 319 (4th Cir. 2012).

> [W]e do not hold that any person committing any crime
> automatically loses the protection of the Second Amendment. The
> *Heller* Court's holding that defines the core right to bear arms by
> law-abiding, responsible citizens does not preclude some future
> determination that persons who commit some offenses might
> nonetheless remain in the protected class of "law-abiding,
> responsible" persons.

*United States* v. *Carpio-Leon*, 701 F.3d 974, 981 (4th Cir. 2012).

Federal courts are not alone in acknowledging that felon

disarmament, however proper as a general matter, is inappropriate in

particular cases. Many states, such as the convicting state here

(Virginia), provide for relief from firearms disabilities in particular

cases. So did Congress:

> the Attorney General may grant such relief [from the disability of 18
> U.S.C. § 922(g)] if it is established to his satisfaction that the
> circumstances regarding the disability, and the applicant's record
> and reputation, are such that the applicant will not be likely to act in
> a manner dangerous to public safety and that the granting of the
> relief would not be contrary to the public interest.

26

18 U.S.C. § 925(c). District courts are empowered to review the denial of such relief. Indeed, the D.C. Circuit warned that

> Without the relief authorized by section 925(c), the federal firearms ban will remain vulnerable to a properly raised as-applied constitutional challenge brought by an individual who, despite a prior conviction, has become a "law-abiding, responsible citizen[]" entitled to "use arms in defense of hearth and home."

*Schrader*, 704 F.3d at 992 (quoting *Heller*, 554 U.S. at 635)).

The question is not whether, but how, individuals may challenge the application of generally valid felon disarmament laws.

## IV. THIS COURT APPLIES A "STREAMLINED" TEST FOR AS-APPLIED CHALLENGES TO FELON DISARMAMENT LAWS, INQUIRING WHETHER THE APPLICANT IS A RESPONSIBLE, LAW-ABIDING CITIZEN.

In *Heller*'s wake, appellate courts, including this Court, have favored applying a two-step means-ends scrutiny test in Second Amendment cases. At step one, courts ask whether the challenged laws implicate conduct secured by the Second Amendment. If not, the matter ends there. Otherwise, step two calls for the application of a balancing test to measure the appropriate level of constitutional "fit" between the governmental interests and the law. *Chester*, 628 F.3d at 680.

Yet *Heller* stands as a reminder that while the two-step test may be useful in many cases, it is not always required. After all, neither the

D.C. Circuit nor the Supreme Court in *Heller* employed any means-ends scrutiny to test Washington, D.C.'s challenged gun laws, striking them down simply upon a finding that the laws were flatly inconsistent with the rights guaranteed by the amendment.

Indeed, as this Court (among others) has recognized, the two-step method is not fully applicable to as-applied felon disarmament challenges. To be sure, the two-step process resolves *facial* challenges to felon disarmament laws, in that either felons, as a class, are not "law abiding responsible citizens" entitled to Second Amendment rights at step one; or that the categorical prohibition is suitably-tailored to advancing the Government's legitimate crime-reducing interests without unduly encroaching upon the rights of law-abiding, responsible citizens. But if an individual proves that he or she *is*, notwithstanding a prior conviction, a responsible, law-abiding citizen, the Government lacks a justification to disarm that individual; and however well-tailored the "felon" ban may be as a general matter, it cannot be "tailored" to one whose possession of arms poses no special threat.

This Court has thus "streamlined" the two-step process in as-applied cases, favoring an approach that directly asks whether the plaintiff

28

should be disarmed, considering his or her personal circumstances:

> "[T]he *Chester* analysis is more streamlined" in cases involving firearms regulations deemed "presumptively lawful" in *Heller*. That is, a presumptively lawful regulation could not violate the Second Amendment unless, as applied, it proscribed conduct "fall[ing] within the category of . . . 'law-abiding responsible citizens . . . us[ing] arms in defense of hearth and home.'"

*United States* v. *Pruess*, 703 F.3d 242, 245 (4th Cir. 2012) (quoting

*Moore*, 666 F.3d at 318-19); *Heller*, 554 U.S. at 635. In other words, this

Court essentially dispenses with the second step in as-applied felon-

disarmament challenges, asking only whether the claimant,

notwithstanding the convictions, "fall[s] within the category of citizens

to which the *Heller* court ascribed the Second Amendment protection of

'the right of *law-abiding responsible* citizens to use arms in defense of

hearth and home." *Moore*, 666 F.3d at 319 (quoting *Heller*, 554 U.S. at

635) (emphasis in *Moore*).

> [I]f a challenger can show that his circumstances place him outside the intended scope of [a felon disarmament provision], he establishes . . . that he is the "law-abiding citizen" identified in *Heller*. And if he is a law-abiding citizen, the possession of a firearm for protection of hearth and home is not just conduct protected by the Second Amendment, it is the core of the Second Amendment's guarantee.

*Suarez* v. *Holder*, No. 14-968, 2015 U.S. Dist. LEXIS 19378, at *17-*18

(M.D. Pa. Feb. 18, 2015), *appeal pending*, 3d Cir. Nos. 15-1975, 1976.

29

To show that one convicted of a disabling offense "nonetheless remain[s] in the protected class of 'law-abiding, responsible' persons," *Carpio-Leon*, 701 F.3d at 981, "a litigant claiming an otherwise constitutional enactment is invalid as applied to him must show that his factual circumstances remove his challenge from the realm of ordinary challenges." *Moore*, 666 F.3d at 319; *Smoot*, 690 F.3d at 221. As to which "factual circumstances" must be evaluated,

> *Heller* does not catalogue the facts we must consider when reviewing a felon's as-applied challenge . . . to evaluate [an] as-applied challenge, we look to the historical pedigree of 18 U.S.C. § 922(g) to determine whether the traditional justifications underlying the statute support a finding of permanent disability in this case.

*Barton*, 633 F.3d at 173.

The "traditional justifications" for disarming felons are plain enough: dangerous people should not have firearms.

> Debates from the Pennsylvania, Massachusetts and New Hampshire ratifying conventions, which were considered "highly influential" by the Supreme Court in *Heller* . . . confirm that the common law right to keep and bear arms did not extend to those who were likely to commit violent offenses.

*Id.*; cf. 18 U.S.C. § 925(c) (relief from disability where "the applicant will not be likely to act in a manner dangerous to public safety and that the granting of the relief would not be contrary to the public interest").

30

Accordingly, as the Third Circuit summed up,

> To raise a successful as-applied challenge, [an individual] must present facts about himself and his background that distinguish his circumstances from those of persons historically barred from Second Amendment protections. For instance, a felon convicted of a minor, non-violent crime might show that he is no more dangerous than a typical law-abiding citizen. Similarly, a court might find that a felon whose crime of conviction is decades-old poses no continuing threat to society.

*Barton*, 633 F.3d at 174.

Of course the nature and extent of the claimant's criminal history is a significant, sometimes preclusive aspect of one's "factual circumstances" examined in such cases. See*, e.g.*, *Moore*, 666 F.3d at 320 ("Particularly in light of his extensive and violent criminal history, Moore's conduct here is plainly outside the scope of the Second Amendment"); *Smoot*, 690 F.3d at 221 & n.8 ("remarkably egregious" criminal history "which in the aggregate demonstrate[s] a pattern of criminality placing his character well outside any definition of 'law-abiding'"); *Pruess*, 703 F.3d at 246 ("Pruess' repeated violations of the firearms laws, leading to at least twenty prior convictions, make clear he is hardly 'law-abiding' and 'responsible'").

Because the touchstone of the inquiry is dangerousness, a felon may be disarmed even though the predicate convictions are themselves non-violent. *Pruess*, 703 F.3d at 247. For example, "[c]ourts have held in a number of contexts that offenses relating to drug trafficking and receiving stolen weapons are closely related to violent crime," and those offenses thus support a firearms prohibition. *Barton*, 633 F.3d at 174 (citations omitted).

Yet while a felon's criminal history might be so serious, or so trivial, as to determine the as-applied challenge's outcome in either direction, the cases make clear that the inquiry is a holistic one. Thus, even a drug-trafficking conviction that would ordinarily justify a prohibition might, given the totality of the circumstances, not justify a firearms disability. See *Britt* v. *State*, 363 N.C. 546, 681 S.E.2d 320 (N.C. 2009).

V. THE DISTRICT COURT ERRED IN DECLINING TO APPLY THIS COURT'S "STREAMLINED" AS-APPLIED INQUIRY, UNDER WHICH HAMILTON IS ENTITLED TO SUMMARY JUDGMENT.

This Court's decisions in *Moore*, *Pruess*, *Smoot*, and *Carpio-Leon* (thus far) conclusively establish one thing: as-applied challenges to felon disarmament laws exist in this circuit, and they require a "streamlined" analysis of the "factual circumstances" supporting a

challenger's claim of being a "responsible, law-abiding citizen" notwithstanding the predicate fact of a criminal conviction.

The court below flatly disregarded this precedent and declined to conduct the streamlined analysis of Hamilton's factual circumstances. Instead, it focused on the fact that Hamilton's financial crimes were "black-letter *mala in se* felonies reflecting grave misjudgment and maladjustment," JA 47; cited statistics for the proposition that, as a general matter, property offenders may recidivate, JA 47-48; and observed that non-violent crimes may still qualify for disarmament, JA 48. Unsurprisingly, given its reliance on generalities that apply equally to anyone with a non-violent criminal record, the lower court *expressly disclaimed* that it sought to "assess [Hamilton's] rehabilitation." JA 49.

But assessing Hamilton's rehabilitation is precisely what this Court required when it held that an as-applied challenge inquires as to whether one "who commit[s] some offenses might nonetheless remain in the protected class of 'law-abiding, responsible' persons." *Carpio-Leon*, 701 F.3d at 981; *Moore*, 666 F.3d at 319; *Smoot*, 690 F.3d at 221.

The lower court's reasons for failing to perform the required analysis would effectively overrule this Court's precedent. Every crime, by

33

definition and especially felonies, can be said to be "mala in se." Generalized recidivism statistics, which might be relevant in a facial challenge asking whether a categorical prohibition is properly tailored, are irrelevant in as-applied cases, where the focus is not on a class of people but on the particular individual at issue. And the fact that *some* non-violent felonies, such as drug trafficking, are inimically linked to violence and dangerousness with weapons, does not mean that *all* non-violent offenders must be disqualified from seeking as-applied relief— an exception that would swallow the rule allowing as-applied challenges, unless such challenges were available only to *violent* felons.

For the lower court, it was enough that Hamilton was convicted "not ten years ago of three serious crimes" to determine that he "is *not* an average, law-abiding citizen." JA 47. Put aside the fact that Hamilton's convictions will likely be ten years old by the time this case is decided, and that his crimes, while serious, indicate no propensity for dangerousness with firearms. See *Begay* v. *United States*, 553 U.S. 137, 146 (2008) (DUI not a violent crime under Armed Career Criminal Act); see also *Leocal* v. *Ashcroft*, 543 U.S. 1 (2004) (DUI not a violent crime for immigration purposes). The lower court merely pointed to the fact of

34

conviction, and expressly disregarded not only the analysis required by this Court's precedent, but all the facts that must be assumed true on a motion to dismiss (and on which the evidence was uncontested at summary judgment). Most salient among these are the *facts* that:

- Hamilton's only conviction is for non-violent conduct not linked to violence, JA 7, ¶ 9;

- Hamilton has been fully rehabilitated under state and federal law with respect to his firearm rights, *id.*, ¶¶ 10-12;

- Hamilton is entrusted by Virginia to serve as an armed guard, *id.*, ¶ 13;

- Hamilton is a responsible and involved family man entrusted in his community with the care of children, *id.*, ¶ 14; and

- "Hamilton is a responsible, law-abiding American citizen. He has no history of violent behavior, or of any other conduct that would suggest he would pose any more danger by possessing firearms than an average, law-abiding responsible citizen," *id.* ¶ 15.

At the very least, these facts plainly state a claim for as-applied relief, in that they describe a peaceful, law-abiding person who has not only given no indication of posing a threat, but has been especially

entrusted with firearms. Cf. *Suarez*, 2015 U.S. Dist. LEXIS 19378, at *20-*21 (as-applied claim stated); *Binderup* v. *Holder*, No 13-6750, 2014 U.S. Dist. LEXIS 135110 (E.D. Pa. Sept. 25, 2014) (denying motion to dismiss as-applied Second Amendment challenge to 18 U.S.C. § 922(g)(1) and granting plaintiff summary judgment), *appeal pending*, 3d Cir. Nos. 14-4549, 4550. Indeed, this Court has repeatedly reversed the dismissal of *facial* challenges to general disarmament provisions, where the Government failed to adduce evidence justifying the constitutional "fit" of plainly sensible laws to legitimate regulatory interests. *United States* v. *Carter*, 669 F.3d 411, 421 (4th Cir. 2012); *Chester*, 628 F.3d at 683.

While the lower court's complete departure from precedent would, in some instances, warrant remand, there is no point in doing so on this record. In the case eventually styled as *Heller*, the district court granted the city's motion to dismiss, denying the plaintiffs' cross-motion for summary judgment as moot. *Parker* v. *District of Columbia*, 311 F. Supp. 2d 103 (D.D.C. 2004). But the D.C. Circuit reversed the dismissal, and as there were "no material questions of fact in dispute, the district court [was] ordered to grant summary judgment to Heller

consistent with the prayer for relief contained in appellants' complaint." *Parker* v. *District of Columbia*, 478 F.3d 370, 401 (D.C. Cir. 2007), *aff'd sub nom Heller*, supra, 554 U.S. 570.

Likewise here, there is no factual dispute as to Hamilton's rehabilitation. Defendants did not challenge Hamilton's evidence that he is now a law-abiding, responsible citizen, and Hamilton's evidence on that subject is fairly straightforward and incontrovertible. Were Hamilton a violent person, irresponsible with the use of firearms, he would not have had his firearms rights restored by the Virginia courts, and he most certainly would not be licensed as an armed guard and firearms instructor. Nor is the evidence of Hamilton's family life and role in his community within the bounds of dispute.

Two recent decision, from the Eastern and Middle Districts of Pennsylvania, exemplify as-applied Second Amendment relief. In *Suarez*, supra, the plaintiff's criminal history included a Maryland conviction for having a handgun in his car without the benefit of a carry license, for which he was disarmed under 18 U.S.C. § 922(g)(1), as well as a subsequent conviction for driving under the influence of alcohol. Neither conviction could be classified as a violent crime, and

Suarez's firearms rights were restored by his state's court. Indeed, Suarez is today an upstanding citizen with a stable family life and a "secret" clearance in connection with his work as a defense contractor.

In *Binderup*, the plaintiff's criminal history consisted only of a non-violent misdemeanor conviction for "corruption of a minor," arising from a consensual if illicit affair. Like Suarez, Binderup has a stable family life, is a productive and peaceful member of his community, and notwithstanding the federal prohibition, had seen his firearm rights restored by his state of residence.

Suarez and Binderup both prevailed. So should Hamilton. While his convictions are not, as in those cases, decades old, there is no reason why Hamilton should have to wait so long to exercise his fundamental rights in Maryland when he already suffers no federal prohibition, and no prohibition in the state where he was convicted. Cf. *Ezell* v. *City of Chicago*, 651 F.3d 684, 699 (7th Cir. 2011) (loss of Second Amendment rights constitutes irreparable harm). He has never been violent, was not convicted of a crime that was either violent or related in any way to violence, and has proven himself to be a stable and reliable member of the community. Virginia even trusts him to be an armed guard. There

38

is no reason why he should be unable to guard himself and his family at home.

## CONCLUSION

The District Court's judgment should be reversed, and the case remanded with instructions to grant Hamilton's motion for summary judgment.

## STATEMENT CONCERNING ORAL ARGUMENT

Although Hamilton would welcome an opportunity to present oral argument, he notes that the lower court's refusal to perform the required streamlined analysis of his factual circumstances is a "demonstrably erroneous application of federal law" of the sort subject to summary reversal. *United States* v. *Brookins*, 345 F.3d 231, 237 n.6 (4th Cir. 2003) (quotation omitted).

Dated: April 11, 2016                    Respectfully submitted,

                                         /s/ Alan Gura
Cary Hansel                              Alan Gura
Hansel Law, P.C.                         Gura & Possessky, PLLC
2514 N. Charles Street                   916 Prince Street, Suite 107
Baltimore, MD 21218                      Alexandria, VA 22314
301.461.1040/Fax 443.451.8606           703.835.9085/Fax 703.997.7665
cary@hansellaw.com                       alan@gurapossessky.com

                                         Attorneys for Appellant

ADDENDUM

**U.S. Const. amend. II**:

A well-regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed.

## Md. Pub. Safety Code Ann. § 5-101(g)

Disqualifying crime. -- "Disqualifying crime" means:

(1) a crime of violence;

(2) a violation classified as a felony in the State; or

(3) a violation classified as a misdemeanor in the State that carries a statutory penalty of more than 2 years.

## Md. Pub. Safety Code Ann. § 5-101(r)

Regulated firearm. -- "Regulated firearm" means:

(1) a handgun; or

(2) a firearm that is any of the following specific assault weapons or their copies, regardless of which company produced and manufactured that assault weapon: [listing (i) through (xlv)]

## Md. Pub. Safety Code Ann. § 5-133(b)

Possession of regulated firearm prohibited. -- Subject to § 5-133.3 of this subtitle, a person may not possess a regulated firearm if the person:

(1) has been convicted of a disqualifying crime; * * *

**Md. Pub. Safety Code Ann. § 5-134(b)**

(b)  Sale, rental, or transfer of regulated firearm prohibited. --  A dealer or other person may not sell, rent, or transfer a regulated firearm to a purchaser, lessee, or transferee who the dealer or other person knows or has reasonable cause to believe:

* * *

(2)  has been convicted of a disqualifying crime;

* * *

**Md. Pub. Safety Code Ann. § 5-144(b)**

Penalty. --  A person who violates this section is guilty of a misdemeanor and on conviction is subject to imprisonment not exceeding 5 years or a fine not exceeding $ 10,000 or both.

**Md. Pub. Safety Code Ann. § 5-205(b)**

In general. --  A person may not possess a rifle or shotgun if the person:

(1)  has been convicted of a disqualifying crime as defined in § 5-101 of this title;

* * *

**Md. Pub. Safety Code Ann. § 5-205(d)**

Penalty. --  A person who violates this section is guilty of a misdemeanor and on conviction is subject to imprisonment not exceeding 3 years or a fine not exceeding $ 1,000 or both.

# UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

No. 16-1222     **Caption:** James Hamilton v. William L. Pallozzi

## CERTIFICATE OF COMPLIANCE WITH RULE 28.1(e) or 32(a)
Type-Volume Limitation, Typeface Requirements, and Type Style Requirements

1. **Type-Volume Limitation:** Appellant's Opening Brief, Appellee's Response Brief, and Appellant's Response/Reply Brief may not exceed 14,000 words or 1,300 lines. Appellee's Opening/Response Brief may not exceed 16,500 words or 1,500 lines. Any Reply or Amicus Brief may not exceed 7,000 words or 650 lines. Counsel may rely on the word or line count of the word processing program used to prepare the document. The word-processing program must be set to include footnotes in the count. Line count is used only with monospaced type.

    This brief complies with the type-volume limitation of Fed. R. App. P. 28.1(e)(2) or 32(a)(7)(B) because:

    [✓]    this brief contains _____7,691_____ [*state number of*] words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii), *or*

    [ ]    this brief uses a monospaced typeface and contains _____ [*state number of*] lines of text, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2. **Typeface and Type Style Requirements:** A proportionally spaced typeface (such as Times New Roman) must include serifs and must be 14-point or larger. A monospaced typeface (such as Courier New) must be 12-point or larger (at least 10½ characters per inch).

    This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

    [✓]    this brief has been prepared in a proportionally spaced typeface using
    WordPerfect X4 _____ [*identify word processing program*] in
    14 Point Century Schoolbook _____ [*identify font size and type style*]; **or**

    [ ]    this brief has been prepared in a monospaced typeface using
    _____ [*identify word processing program*] in
    _____ [*identify font size and type style*].

(s) /s/ Alan Gura _____

Attorney for Appellant James Hamilton _____

Dated: April 11, 2016 _____

# CERTIFICATE OF SERVICE

I certify that on April 11, 2016         the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by serving a true and correct copy at the addresses listed below:

/s/ Alan Gura
_____
Signature

April 11, 2016
_____
Date