No. 16-1222

# In The United States Court of Appeals For The Fourth Circuit

JAMES HAMILTON,

Plaintiff-Appellant,

v.

WILLIAM L. PALLOZZI, Superintendent of the Maryland State Police, and BRIAN E. FROSH, Attorney General of Maryland,

Defendants-Appellees.

Appeal from a Judgment of the United States District Court for the District of Maryland, the Hon. James K. Bredar, District Judge (1:15-CV-02142-JKB)

## JOINT APPENDIX

Cary Hansel
Hansel Law, P.C.
2514 N. Charles Street
Baltimore, MD 21218
301.461.1040/Fax 443.451.8606
cary@hansellaw.com

Alan Gura
Gura & Possessky, PLLC
916 Prince Street, Suite 107
Alexandria, VA 22314
703.835.9085/Fax 703.997.7665
alan@gurapossessky.com

Attorneys for Appellant

Brian E. Frosh, Attorney General of Maryland
Mark Bowen, Assistant Attorney General
1201 Reisterstown Road
Baltimore, MD 21208
410.653.4226/Fax 410.653.4270 (fax)
mark.bowen@maryland.gov

Attorneys for Appellees

April 11, 2016

# TABLE OF CONTENTS

Docket Entries. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . App. 1

Complaint. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . App. 5

Motion to Dismiss. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . App. 11

Motion for Summary Judgment. . . . . . . . . . . . . . . . . . . . . . . . App. 14

Declaration of James Hamilton. . . . . . . . . . . . . . . . . . . . . . . . App. 15

Plaintiff's Exhibit A, State Court Records. . . . . . . . . . . . . . . . App. 18

Plaintiff's Exhibit B, Civil Rights Restoration. . . . . . . . . . . . . . App. 22

Plaintiff's Exhibit C, Firearm Rights Restoration. . . . . . . . . . . App. 24

Plaintiff's Exhibit D, Certifications. . . . . . . . . . . . . . . . . . . . . . App. 25

Declaration of Capt. Adam Stachurski. . . . . . . . . . . . . . . . . . . App. 27

Second Declaration of James Hamilton. . . . . . . . . . . . . . . . . . . App. 29

Declaration of Margaret Love. . . . . . . . . . . . . . . . . . . . . . . . . . App. 30

Plaintiff's Exhibit E, Email from S. Baron to M. Love. . . . . . . . App. 32

Memorandum Decision. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . App. 34

Order. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . App. 50

Notice of Appeal. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . App. 51

APPEAL,CLOSED

# U.S. District Court
## District of Maryland (Baltimore)
## CIVIL DOCKET FOR CASE #: 1:15-cv-02142-JKB

Hamilton v Pallozzi et al

Assigned to: Judge James K. Bredar

Case in other court:  Fourth Circuit Court of Appeals, 16-01222

Cause: 42:1983 Civil Rights Act - Civil Action for Deprivation of Rights

Date Filed: 07/22/2015

Date Terminated: 02/18/2016

Jury Demand: None

Nature of Suit: 440 Civil Rights: Other

Jurisdiction: Federal Question

**Plaintiff**

| | | |
|---|---|---|
| **James Hamilton** | represented by | **Cary Johnson Hansel , III** |

Hansel Law, P.C.
2514 North Charles Street
Baltimore, MD 21218
301-461-1040
Fax: 443-451-8606
Email: cary@hansellaw.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Alan Gura**
Gura and Possessky PLLC
916 Prince Street
Suite 107
Alexandria, VA 22314
7038359085
Fax: 7039977665
Email: alan@gurapossessky.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

| | | |
|---|---|---|
| **William L Pallozzi** | represented by | **Mark Holdsworth Bowen** |

*Superintendent of the Maryland State Police*

Office of the Attorney General
Maryland State Police
1201 Reisterstown Road
Pikesville, MD 21208
4106534228
Fax: 4106534270

App. 1

Email: mark.bowen@maryland.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**Brian E. Frosh**                           represented by **Mark Holdsworth Bowen**
*Attorney General of Maryland*                            (See above for address)
                                                          *LEAD ATTORNEY*
                                                          *ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 07/22/2015 | 1 | COMPLAINT against All Defendants ( Filing fee $ 400 receipt number 0416-5508680.), filed by James Hamilton. (Attachments: # 1 Civil Cover Sheet)(Hansel, Cary) (Entered: 07/22/2015) |
| 08/21/2015 | 2 | MOTION to Appear Pro Hac Vice for Alan Gura ( Filing fee $ 50, receipt number 0416-5561348.) by James Hamilton (Attachments: # 1 Bar Admissions)(Hansel, Cary) (Entered: 08/21/2015) |
| 08/28/2015 | 3 | QC NOTICE: 2 Motion to Appear Pro Hac Vice filed by James Hamilton needs to be modified. See attachment for details and corrective actions needed regarding the signature(s) on the motion. (bus, Deputy Clerk) (Entered: 08/28/2015) |
| 09/16/2015 | 4 | NOTICE by James Hamilton re 1 Complaint *Summons Frosh* (Hansel, Cary) (Entered: 09/16/2015) |
| 09/16/2015 | 5 | NOTICE by James Hamilton re 1 Complaint *Summons Pallozzi* (Hansel, Cary) (Entered: 09/16/2015) |
| 09/16/2015 | 6 | Summons Issued 21 days as to Brian E. Frosh, William L Pallozzi. (bmhs, Deputy Clerk) (Entered: 09/16/2015) |
| 10/06/2015 | 7 | MOTION to Dismiss for Failure to State a Claim by Brian E. Frosh, William L Pallozzi Responses due by 10/23/2015 (Attachments: # 1 Supplement Memorandum in Support) (Bowen, Mark) (Entered: 10/06/2015) |
| 10/14/2015 | 8 | CORRECTED MOTION to Appear Pro Hac Vice for Alan Gura by James Hamilton. The fee has already been paid.(Hansel, Cary) (Entered: 10/14/2015) |
| 10/16/2015 | 9 | PAPERLESS ORDER granting 8 Corrected Motion to Appear Pro Hac Vice on behalf of Alan Gura. Attorney Alan Gura will receive a separate email with the previously issued CM/ECF login and password. Signed by Clerk on 10/16/2015. (srd, Intern) (Entered: 10/16/2015) |
| 10/23/2015 | 10 | RESPONSE in Opposition re 7 MOTION to Dismiss for Failure to State a Claim filed by James Hamilton. Replies due by 11/9/2015. (Attachments: # 1 Text of Proposed Order)(Gura, Alan) (Entered: 10/23/2015) |
| 10/26/2015 | 11 | MOTION for Summary Judgment by James Hamilton Responses due by 11/12/2015 |

App. 2

| | | |
|---|---|---|
| | | (Attachments: # 1 Supplement Memorandum of Points and Authorities in Support, # 2 Affidavit Declaration of James Hamilton, # 3 Exhibit A: court records, # 4 Exhibit B: restoration of civil rights, # 5 Exhibit C: restoration of firearm rights, # 6 Exhibit D: Va Dept of Criminal Justice Certifications, # 7 Text of Proposed Order)(Gura, Alan) (Entered: 10/26/2015) |
| 11/09/2015 | 12 | Consent MOTION for Extension of Time to File Response/Reply *in Opposition to Plaintiff's Motion for Summary Judgment* by Brian E. Frosh, William L Pallozzi. Responses due by 11/27/2015 (Attachments: # 1 Text of Proposed Order)(Bowen, Mark) (Entered: 11/09/2015) |
| 11/09/2015 | 13 | PAPERLESS ORDER granting 12 Motion for Extension of Time to File Response. Responses due by 12/4/2015. Signed by Judge James K. Bredar on 11/9/2015. (vdcs, Chambers) (Entered: 11/09/2015) |
| 12/04/2015 | 14 | RESPONSE to Motion re 11 MOTION for Summary Judgment filed by Brian E. Frosh, William L Pallozzi. Replies due by 12/21/2015. (Attachments: # 1 Affidavit Affidavit of Capt Stachurski)(Bowen, Mark) (Entered: 12/04/2015) |
| 12/11/2015 | 15 | NOTICE of Change of Address by Alan Gura (Gura, Alan) (Entered: 12/11/2015) |
| 12/11/2015 | 16 | Consent MOTION for Extension of Time to File Response/Reply as to 14 Response to Motion by James Hamilton Responses due by 12/31/2015 (Gura, Alan) (Entered: 12/11/2015) |
| 12/11/2015 | 17 | PAPERLESS ORDER granting 16 Motion for Extension of Time to File Response/Reply: Reply due by 1/19/2016.. Signed by Judge James K. Bredar on 12/11/2015. (vdcs, Chambers) (Entered: 12/11/2015) |
| 01/19/2016 | 18 | REPLY to Response to Motion re 11 MOTION for Summary Judgment filed by James Hamilton. (Attachments: # 1 Affidavit Second Declaration of James Hamilton, # 2 Affidavit Declaration of Margaret Love, # 3 Exhibit E)(Gura, Alan) (Entered: 01/19/2016) |
| 02/18/2016 | 19 | MEMORANDUM. Signed by Judge James K. Bredar on 2/18/2016. (bmhs, Deputy Clerk) (Entered: 02/18/2016) |
| 02/18/2016 | 20 | ORDER denying 11 Plaintiff's Motion for Summary Judgment; granting 7 Defendants Motion to Dismiss; dismissing with prejudice Plaintiff's claim for relief pursuant to 42 U.S.C. § 1983; and directing Clerk to close the case. Signed by Judge James K. Bredar on 2/18/2016. (bmhs, Deputy Clerk) (Entered: 02/18/2016) |
| 02/29/2016 | 21 | NOTICE OF APPEAL as to 19 Memorandum Opinion, 20 Order on Motion to Dismiss for Failure to State a Claim, Order on Motion for Summary Judgment, by James Hamilton. Filing fee $ 505, receipt number 0416-5884076. (Gura, Alan) Modified on 3/1/2016 (slss, Deputy Clerk). (Entered: 02/29/2016) |
| 03/01/2016 | 22 | Transmission of Notice of Appeal and Docket Sheet to US Court of Appeals re 21 Notice of Appeal,. IMPORTANT NOTICE: To access forms which you are required to file with the United States Court of Appeals for the Fourth Circuit please go to http://www.ca4.uscourts.gov and click on Forms & Notices. (slss, Deputy Clerk) |

App. 3

| | | (Entered: 03/01/2016) |
|---|---|---|
| 03/02/2016 | 23 | USCA Case Number 16-1222 for 21 Notice of Appeal, filed by James Hamilton - Case Manager - Karen Stump. (slss, Deputy Clerk) (Entered: 03/02/2016) |

App. 4

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| JAMES HAMILTON, | ) | Case. No. _____ |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| WILLIAM L. PALLOZZI, Superintendent of the | ) | |
| Maryland State Police; BRIAN E. FROSH, | ) | |
| Attorney General of Maryland, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## **COMPLAINT**

Now comes Plaintiff James Hamilton, by and through undersigned counsel, and complains of Defendants as follows:

### THE PARTIES

1.      Plaintiff James Hamilton is a natural person and citizen of Maryland and of the United States, residing in District Heights, Maryland. Mr. Hamilton presently intends to purchase and possess a handgun and long gun for self-defense within his own home, but is prevented from doing so only by defendants' active enforcement of the policies complained of in this action.

2.      Defendant William L. Pallozzi is sued in his capacity as the Superintendent of the Maryland State Police. As State Police Superintendent, Pallozzi is responsible for executing and administering laws, customs, practices, and policies of the State of Maryland, and is presently enforcing the laws, customs, practices and policies complained of in this action.

3.      Brian E. Frosh is sued in his capacity as the Attorney General of Maryland. As Maryland Attorney General, Frosh is responsible for executing and administering laws, customs,

practices, and policies of the State of Maryland, and is presently enforcing the laws, customs,

practices and policies complained of in this action.

## JURISDICTION AND VENUE

4.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§

1331, 1343, 1346, 2201, and 2202.

5.      Venue lies in this Court pursuant to 28 U.S.C. § 1391(e)(1)(B) and (C), as a

substantial part of the events and omissions giving rise to the claim occurred, and the Plaintiff

resides, in this judicial district.

## STATEMENT OF FACTS

*Plaintiff's Background*

6.      Plaintiff Hamilton is over the age of 21, is not under indictment, and has never been

convicted of a misdemeanor crime of domestic violence, any other crime of violence, or any

common law crime for which he received a sentence exceeding two years imprisonment. Hamilton is

not a fugitive from justice, habitual drunkard, or an unlawful user of or addicted to any controlled

substance.

7.      Hamilton has not been adjudicated a mental defective or committed to a mental

institution, nor has he been voluntarily admitted to a mental institution. Hamilton does not suffer

from any mental disorder, nor has he ever been found incompetent to stand trial or not criminally

responsible by reason of insanity.

8.      Hamilton has not been discharged from the Armed Forces under dishonorable

conditions, has never renounced his citizenship, and has never been the subject of a restraining order

relating to an intimate partner.

2

9.      On November 6, 2006, Hamilton was convicted by the Rockbridge County (Virginia) Circuit Court of three felonies: one count of credit card fraud, in violation of Va. Code Ann. § 18.2-195; one count of credit card theft, in violation of Va. Code Ann. § 18.2-192; and one count of credit card forgery, Va. Code Ann. § 18.2-193. He received a suspended sentence of four years, and was ordered to pay $1,247.90 in restitution and $1,090.00 in court costs. Hamilton successfully completed probation, made restitution, and paid his costs. But owing to this conviction, Hamilton lost his political rights in Virginia: the rights to vote; hold public office; sit on a jury; serve as a notary; and ship, transport, possess or receive firearms.

10.      On November 20, 2013, the Governor of Virginia restored Hamilton's rights to vote, hold public office, sit on a jury, and serve as a notary.

11.      On April 22, 2014, the Circuit Court for Spotsylvania County, Virginia, restored Hamilton's firearms rights under Virginia law

12.      By virtue of the restoration of his rights in the jurisdiction where he was convicted, Hamilton is not prohibited under federal law from possessing firearms.

13.      Hamilton is now a registered Armed Security Officer with the Virginia Department of Criminal Justice Services, certified in the use of handguns and shotguns.

14.      A married father of three children, Hamilton also serves as the head coach of an elite junior league wrestling team, supervising the training, competition, and travel of children ages five through sixteen.

15.      Hamilton is a responsible, law-abiding American citizen. He has no history of violent behavior, or of any other conduct that would suggest he would pose any more danger by possessing firearms than an average, law-abiding responsible citizen.

3

*Defendants' Regulatory Scheme*

16.     A handgun is considered a "regulated firearm" under Maryland law. Md. Pub. Safety Code § 5-101(r)(1). Maryland law provides that "a person may not possess a regulated firearm if the person: (1) has been convicted of a disqualifying crime . . . ." Md. Pub. Safety Code Ann. § 5-133(b)(1). Possession of a handgun in violation of this provision is a misdemeanor punishable by up to 5 years imprisonment, a $10,000 fine, or both. Md. Pub. Safety Code Ann. § 5-144(b); *Jones* v. *State*, 420 Md. 437 (2011). The same punishment applies to "[a] dealer or other person may not sell, rent, or transfer a regulated firearm to a purchaser, lessee, or transferee who the dealer or other person knows or has reasonable cause to believe . . . (2) has been convicted of a disqualifying crime . . . ." Md. Pub. Safety Code Ann. § 5-134.

17.     Maryland forbids the possession of rifles and shotguns by anyone convicted of a "disqualifying crime." Md. Pub. Safety Code § 5-205(b)(1). A violation of this provision is a misdemeanor punishable by up to 3 years' imprisonment, a $1000 fine, or both. Md. Pub. Safety Code § 5-205(d).

18.     "'Disqualifying crime' means . . . (2) a violation classified as a felony in the State . . . ." Md. Pub. Safety Code Ann. § 5-101(g). The term extends to crimes committed in other states, if the equivalent crime is a felony in Maryland. *McCloud* v. *Dep't of State Police*, 426 Md. 473 (2011).

*Defendants' Thwarting of Plaintiff's Presently Intended Transactions*

19.     Maryland's provisions equivalent to those of which Hamilton was convicted in Virginia are Md. Crim. Law Code Ann. § 8-204, credit card theft, a misdemeanor; Md. Crim. Law Code Ann. § 8-205, credit card counterfeiting, a felony; and Md. Crim. Law Code Ann. § 8-209,

4

Receiving property by stolen, counterfeit, or misrepresented credit card, a felony on the facts of Hamilton's case.

20.     Hamilton sought a permit to carry a handgun from the Maryland State Police. The police's Licensing Division informed Hamilton that he could not possess a firearm in Maryland, owing to his Virginia conviction, unless he were to obtain a full pardon from Virginia's governor. The State of Maryland does not offer Hamilton any procedure by which he might regain his firearm rights in Maryland. Defendant Frosh's office subsequently confirmed this position.

21.     Hamilton refrains from obtaining a firearm only because he reasonably fears arrest, prosecution, incarceration and fine, under Md. Pub. Safety Code Ann. §§ 5-133(b)(1), 5-144, 5-205(b)(1), instigated and directed by Defendants, should he follow through with his plan to obtain a firearm.

COUNT ONE
42 U.S.C. § 1983
INDIVIDUALIZED, AS-APPLIED CLAIM FOR RELIEF
RIGHT TO KEEP AND BEAR ARMS, U.S. CONST., AMEND II, XIV

22.     The allegations of paragraphs 1 through 21 are incorporated as though fully set forth herein.

23.     Hamilton is a responsible, law-abiding American citizen. He has no history of violent behavior, or of any other conduct that would suggest he would pose any more danger by possessing firearms than an average, law-abiding responsible citizen. Hamilton is unlikely to act in a manner dangerous to public safety, and his possession of firearms would not be contrary to the public interest.

24.     On account of James Hamilton's unique personal circumstances, including but not limited to the nature of his convictions, the restoration of his rights, the passage of time since those

5

convictions, Hamilton's generally law-abiding record over the years, his trustworthiness with firearms and the lack of danger that his possession of firearms would pose, it is unconstitutional to apply against Hamilton, personally, the firearms prohibitions of Md. Pub. Safety Code Ann. §§ 5-133(b)(1), 5-144, and 5-205(b)(1).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that judgment be entered in his favor and against Defendants as follows:

1.      Declaratory relief to the effect that application of Md. Pub. Safety Code Ann. §§ 5-133(b)(1), 5-144, and 5-205(b)(1) against Hamilton, on account of his November 6, 2006, Virginia convictions, violates the Second and Fourteenth Amendments to the United States Constitution;

2.      An order permanently enjoining Defendants, their officers, agents, servants, employees, and all persons in active concert or participation with them who receive actual notice of the injunction, from enforcing Md. Pub. Safety Code Ann. §§ 5-133(b)(1), 5-144, and 5-205(b)(1) against Hamilton, on account of his November 6, 2006, Virginia convictions;

3.      Costs of suit;

4.      Attorney Fees and Costs pursuant to 42 U.S.C. § 1988; and

5.      Any other further relief as the Court deems just and appropriate.

Dated: July 21, 2015                            Respectfully submitted,

                                    By:    /s/ Cary J. Hansel
Alan Gura*                                 Cary J. Hansel
Gura & Possessky, PLLC                     Hansel Law, P.C.
105 Oronoco Street, Suite 305              2514 N. Charles Street
Alexandria, VA 22314                       Baltimore, MD 21218
703.835.9085/Fax 703.997.7665             301.461.1040/Fax 443.451.8606
alan@gurapossessky.com                     cary@hansellaw.com

*Admission pro hac vice pending            Attorneys for Plaintiff

6

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT COURT OF MARYLAND

| | | |
|---|---|---|
| **JAMES HAMILTON** | * | |
| **Plaintiff,** | * | |
| **v.** | * | **Civil Case No.  JKB 15-2142** |
| **WILLIAM L. PALLOZZI, et al.** | * | |
| **Defendants.** | * | |

\*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*

## DEFENDANTS' MOTION TO DISMISS

For the reasons stated in the accompanying memorandum, Defendants William L. Pallozzi, Secretary of the Maryland Department of State Police, and Brian E. Frosh, Attorney General of Maryland State of Maryland, move to dismiss the complaint in this action, pursuant to Federal Rule of Civil Procedure 12(b)(6), for failure to state a claim on which relief can be granted.

A proposed order is attached.

Respectfully submitted,

BRIAN E. FROSH
Attorney General of Maryland

and

_____ /s/ _____
MARK H. BOWEN (Fed. Bar # 10197)
Assistant Attorney General
1201 Reisterstown Road
Baltimore, Maryland 21208
410-653-4226 (tel.); 410-653-4270 (fax)
mark.bowen@maryland.gov

Dated: October 6, 2015          Attorneys for Defendant

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT COURT OF MARYLAND**

| | | |
|---|---|---|
| **JAMES HAMILTON** | * | |
| **Plaintiff,** | * | |
| v. | * | **Civil Case No.  JKB 15-2142** |
| **WILLIAM L. PALLOZZI, et al.** | * | |
| **Defendants.** | * | |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

**ORDER**

It is, this _____ day of _____ 2015, by the United States District Court for the District of Maryland:

ORDERED that the Defendants' motion to dismiss is GRANTED; and it is further

ORDERED that the Complaint is DISMISSED.

_____
James K. Bredar
United States District Judge

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| JAMES HAMILTON, | ) | Case. No. 1:15-CV-2142-JKB |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| WILLIAM L. PALLOZZI, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

Now comes Plaintiff James Hamilton, by and through undersigned counsel, and moves for

summary judgment in his favor and against Defendants pursuant to Fed. R. Civ. P. 56.

Dated: October 26, 2015                  Respectfully submitted,

By: /s/ Alan Gura_____         By: /s/ Cary J. Hansel_____
    Alan Gura*                             Cary J. Hansel
    Gura & Possessky, PLLC                 Hansel Law, P.C.
    105 Oronoco Street, Suite 305          2514 N. Charles Street
    Alexandria, VA 22314                   Baltimore, MD 21218
    703.835.9085/Fax 703.997.7665          301.461.1040/Fax 443.451.8606
    alan@gurapossessky.com                 cary@hansellaw.com

    *Admitted pro hac vice                 Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| JAMES HAMILTON, | )  Case. No. 1:15-CV-2142-JKB |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| WILLIAM L. PALLOZZI, et al., | ) |
| | ) |
| Defendants. | ) |
| | ) |

DECLARATION OF JAMES HAMILTON

I, James Hamilton, declare:

1.      I am an American citizen residing in Maryland.

2.      I am over the age of 21 and not under indictment. I have never been convicted of a misdemeanor crime of domestic violence, any other crime of violence, or any common law crime for which I received a sentence exceeding two years imprisonment.

3.      I am not a fugitive from justice, habitual drunkard, or an unlawful user of or addicted to any controlled substance.

4.      I have not been adjudicated a mental defective or committed to a mental institution, nor have I been voluntarily admitted to a mental institution. I do not suffer from any mental disorder, nor have I ever been found incompetent to stand trial or not criminally responsible by reason of insanity.

5.      I have not been discharged from the Armed Forces under dishonorable conditions, have never renounced my citizenship, and have never been the subject of a restraining order relating to an intimate partner.

1

6.       Several years ago, I had sold an ATV to an individual who could not pay me in full, but offered to pay his debt by buying me things. I agreed to let him buy me a laptop on a stolen credit card. As a result, On November 6, 2006, I was convicted by the Rockbridge County (Virginia) Circuit Court of three felonies: one count of credit card fraud, in violation of Va. Code Ann. § 18.2-195; one count of credit card theft, in violation of Va. Code Ann. § 18.2-192; and one count of credit card forgery, Va. Code Ann. § 18.2-193. As a result of this conviction, I received a suspended sentence of four years, and was ordered to pay $1,247.90 in restitution and $1,090.00 in court costs. Exhibit A is a true and correct copy (less redacted personal information) of the Circuit Court's statement of fine and/or costs, and sentencing order.

7.       I successfully completed probation, made restitution, and paid these costs. But owing to this conviction, I lost my political rights in Virginia: the rights to vote; hold public office; sit on a jury; serve as a notary; and ship, transport, possess or receive firearms.

8.       On November 20, 2013, the Governor of Virginia restored my rights to vote, hold public office, sit on a jury, and serve as a notary. Exhibit B is a true and correct copy of the Governor's order.

9.       On April 22, 2014, the Circuit Court for Spotsylvania County, Virginia, restored my firearms rights under Virginia law. Exhibit C is a true and correct copy of that order.

10.      I am now a registered Armed Security Officer with the Virginia Department of Criminal Justice Services, certified in the use of handguns and shotguns. Exhibit D is a true and correct copy of my various certifications with the Virginia Department of Criminal Justice.

11.      I have been happily married for over seven years. At the time the complaint was filed, three of my children were living at home with my wife and me, although one has recently

2

moved out. I continue to support, and be involved in the lives of, all my children, including those from my first marriage.

12.     I serve as the head coach of an elite junior league wrestling team, supervising the training, competition, and travel of children ages five through sixteen.

13.     I have never engaged in any violent conduct.

14.     I intend to possess a handgun and a long gun to defend myself and my family at home. Prior to obtaining any firearms, I sought a permit to carry a handgun from the Maryland State Police. The police's Licensing Division informed me that I could not possess a firearm in Maryland, owing to my Virginia conviction, unless I were to obtain a full pardon from Virginia's governor. The State of Maryland does not offer me any procedure by which I might regain my firearm rights in Maryland. Defendant Frosh's office subsequently confirmed this position.

15.     I refrain from obtaining a firearm only because I reasonably fear arrest, prosecution, incarceration and fine, under Md. Pub. Safety Code Ann. §§ 5-133(b)(1), 5-144, 5-205(b)(1), instigated and directed by Defendants, should I follow through with my plan to obtain any firearm.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on October 22, 2015.

James Hamilton

3

# ROCKBRIDGE COUNTY CIRCUIT COURT
Commonwealth of Virginia
County of Rockbridge
City of Lexington
Town of Glasgow
Town of Goshen

Filing Date _2-6-06_
Case# _____
Felony _ 6 _
Misd. _____

V.

_Hamilton, James Paul_ _____ SS# _ _   ___

## Statement of Fine and/or Costs

**STATE**

| | |
|---|---|
| #107 *DOAF Felony* | _____ |
| #110 *Fine* | _____ |
| #113 *DUI Fee* | _____ |
| *Transcript* | _____ |
| *Witness Mileage:* | _____ |
| *Psych. Eval.* | _____ |
| *Extradition:* | _____ |
| *½ DNA Fee* | _12.50_ |
| *Ignition Interlock* | _____ |
| *Lab Fee:(misd)* | _____ |
| #120 *Ct. Appt. Atty:* | |
| *Gen. Dist.* | _____ |
| *Circuit-Felony* | _____ |
| *Circuit-Misd.* | _____ |
| #121 Fail to Appear | _____ |
| #133 Blood Test Fee | _____ |
| #134 Game Replace. | _____ |
| #137 Installment fee | _____ |
| #181 *Jury Costs* | _____ |
| *Jury Meals* | _____ |
| #192 Trauma Ctr. Fund | _____ |

**COUNTY / CITY / TOWN**

| | |
|---|---|
| #201 Fine | _____ |
| #233 *½ DNA Fee* | _12.50_ |
| #234 *Jail Admission* | _25_ |
| #244 *CHSF* | _30-15-_ |
| #260 Glasgow Fine | _____ |
| #270 City Fine | _____ |

**FIXED FEES**

| | |
|---|---|
| #450 *Fix Felony Fee* | _2100- 1050-_ |
| #451 *Fix Felony Rev.* | _____ |
| #452 *Felony Reduced* | _____ |
| #453 *Fel. Rev. reduced to Misdemeanor* | _____ |

| | |
|---|---|
| #460 Dist Appl Fee TI | _____ |
| #461 Dist Appl Fee Misd. | _____ |
| #462 Dist Appl Fee Drug | _____ |
| #470 Fix Misd. Fee | _____ |
| #471 Fix Drug Misd. Fee | _____ |
| #472 Fix Misd. Rev. Fee | _____ |

TOTAL: _1090.00_

#520 Restitution $ _1,247.90_

INDIVIDUAL ACCT # _CR06 000104-109-00_

**Payment Plan Entered:**
Deferred _____
Installment _____

Paid In Full: _04/19/12 Released 04/20/12_

Receipt # _# 12 00000 3019_

Voucher # _____

Date of Judgment _11/6/06_

Docket # _715-06_

Remarks:
_11/7/06 Costs & restitution due on_
_April 6, 2008. 28_
_CR06 000 104, 107 & 109-00 were N.P._

**EFFECTIVE 07/1/04**
Updated 09/04

TRUE COPY OF A RECORD
ON FILE IN THIS OFFICE
TESTE:
D. BRUCE PATTERSON, CLERK
BY: _____, DC
ROCKBRIDGE COUNTY CIRCUIT COURT

VIRGINIA
IN THE CIRCUIT COURT OF ROCKBRIDGE COUNTY          FIPS CODE: 163

Hearing Date: November 6, 2006
Judge:       Michael S. Irvine

COMMONWEALTH OF VIRGINIA

v.

JAMES PAUL HAMILTON
Alias:                          SSN:                    Sex:   Male
                                D.O.B.:                 Race:  Black

| CASE NUMBER | OFFENSE DESCRIPTION AND INDICATOR (F/M) | OFFENSE DATE | VA CODE / VCC |
|---|---|---|---|
| CR06000105-00 | Credit Card Fraud (F) | 03/13/2005 | 18.2-195  FRD-2635-F6 |
| CR06000106-00 | Credit Card Theft (F) | 03/13/2005 | 18.2-192  FRD-2360-F9 |
| CR06000108-00 | Credit Card Forgery (F) | 03/13/2005 | 18.2-193(1)(a) FRD-2512-F5 |

### SENTENCING ORDER

Attorney for the Commonwealth:     Robert N. Joyce, Jr.
Attorney for the Defendant:        Eric L. Sisler

The defendant was present and represented by counsel.  The defendant was arraigned and, after private consultation with and being advised by his counsel, pleaded guilty to the Indictments, which pleas were tendered by the accused in person.

The Court was advised that there was a Plea Agreement in these cases and the Agreement was presented to the Court and filed.  The Court made inquiry of the accused in the manner provided in Part 3A, Rules of the Supreme Court of Virginia, and did determine that the accused fully understood the nature and effect of his pleas, the penalties that could be imposed upon his conviction, the waiver of trial by jury and appeal, and did further determine that the pleas were voluntarily and intelligently given after the advice of counsel.

And having heard all the evidence presented, the Court accepted the Plea Agreement and the pleas of the defendant and finds the accused guilty of credit card fraud, credit card theft and credit card forgery, as charged in the Indictments.  The defendant, by counsel waived his right to a pre-sentence report on these charges.

Pursuant to the provisions of §19.2-298.01, the Court has considered the applicable discretionary sentencing guidelines and the guidelines worksheets, which are ordered filed as part of the record in this case.

Before pronouncing the sentence, the Court inquired if the defendant desired to make a statement and if the defendant desired to advance any reason why judgment should not be pronounced.

The Court **SENTENCED** the defendant to incarceration with the Virginia Department of Corrections for the term of four (4) years on each count, which sentences are to run concurrently. The total sentence imposed was four (4) years.

This sentence shall run consecutively with any other sentences imposed.

The Court **SUSPENDED** this sentence upon the following conditions:

**Good Behavior.**  The defendant shall be of good behavior for four (4) years from this date.

**Supervised Probation.**  The defendant is placed on probation under the supervision of a Probation Officer for four (4) years, or unless sooner released by the Court or by the probation officer.  The defendant shall comply with all the rules and requirements set by the probation officer and shall remain drug free.

**Restitution.**  The defendant shall pay restitution in the amount of $1, 247.90 jointly and severally with Lakesha Dunn, as indicated in the Restitution Memorandum filed in this case.

**Costs.** The defendant shall pay the costs of these proceedings and restitution at a rate of $150.00 per month, beginning December 1, 2006 and on the first of every month thereafter.

**Credit for Time Served.** The defendant shall be given credit for time spent in confinement while awaiting trial pursuant to §53.1-187.

**Right to Appeal.** The defendant was advised of his right to appeal the decision in this case. At all times during the trial the defendant was personally present and his attorney was likewise personally present and ably and capably represented the defendant.

**SENTENCING SUMMARY:**

TOTAL SENTENCE IMPOSED:          4 Years

TOTAL SENTENCE SUSPENDED:        4 Years

_____
                    JUDGE

ENTERED:  NOVEMBER 6, 2006

TRUE COPY OF A RECORD
ON FILE IN THIS OFFICE
TESTE:
D. BRUCE PATTERSON, CLERK
BY: _____, DC
ROCKBRIDGE COUNTY CIRCUIT COURT



## COMMONWEALTH of VIRGINIA

### Office of the Governor

Janet Vestal Kelly
Secretary of the Commonwealth

# ***Restoration of Rights***

I am pleased to inform you that Governor Robert F. McDonnell has granted your restoration of civil rights. The accompanying order will serve as official documentation of Governor McDonnell's decision on your behalf, so it should be kept with your most important papers.

Governor McDonnell's action on your behalf removes all political disabilities imposed as the result of your felony conviction(s) except the right to ship, transport, possess or receive firearms, which must be restored in accordance with Va. Code §18.2-308.2. You now may register to vote (using the enclosed application or another method of registering), become a notary public, serve on a jury, or hold public office.

Governor McDonnell and I welcome your full and enthusiastic civic participation in your locality, the Commonwealth of Virginia and the United States.

Sincerely,

*Janet Vestal Kelly*

Janet V. Kelly
Secretary of the Commonwealth

Patrick Henry Building • 1111 East Broad Street • Richmond, Virginia 23219 • (804) 786-2441 • TTY (800) 828-1120
socmail@governor.virginia.gov

App. 22



# COMMONWEALTH of VIRGINIA

## Executive Department

### TO ALL TO WHOM THESE PRESENTS SHALL COME --- GREETINGS:

**WHEREAS, James Paul Hamilton,** after being convicted and sentenced for crime(s) at the dated hearing(s) held in and for the city or county court(s) noted below;

**County of Rockbridge Circuit Court**
**November 6, 2006** Credit Card Fraud, Credit Card Forgery, Credit Card Theft

**WHEREAS, James Paul Hamilton,** by reason of conviction(s), suffers political disabilities, to wit: denial of the right to vote, to hold public office, to serve on a jury, to be a notary public and to ship, transport, possess or receive firearms; and

**WHEREAS,** it appears that all sentence obligations have been fulfilled and it seems appropriate to the Executive to remove certain of his political disabilities by restoring his right to vote, hold public office, serve on a jury, and to be a notary public;

**NOW, THEREFORE,** I, Robert F. McDonnell, Governor of the Commonwealth of Virginia, by virtue of the authority vested in me, do hereby remove the political disabilities, except the right to ship, transport, possess or receive firearms, under which he labors by reason his conviction(s) as aforesaid, and do hereby restore his rights to vote, hold public office, serve on a jury, and to be a notary public.

Given under my hand and under the Lesser Seal of the Commonwealth at Richmond, on November 20, 2013 in the 238th year of the Commonwealth.

_____
**Governor of Virginia**

**Secretary of the Commonwealth**

**VIRGINIA:**

## IN THE CIRCUIT COURT FOR SPOTSYLVANIA COUNTY

**IN RE: JAMES PAUL HAMILTON**     *CL 14-391*

### REQUEST FOR RESTORATION OF FIREARM RIGHTS PURSUANT TO SECTION 18.2-308.2 CODE OF VIRGINIA

CAME THIS DAY, the petitioner, James Paul Hamilton, by counsel, seeking restoration of his rights to possess firearms under Section 18.2-308.2 Code of Virginia. Having considered evidence presented by the petitioner along with papers and exhibits already filed, the Court finds that the petitioner has met the requirements of Section 18.2-308.2 Code of Virginia and it is therefore;

ORDERED that the rights to possess firearms are hereby restored to Petitioner, James Paul Hamilton.

Entered this _22ND_ day of _april_, 2014

_____
Judge,

I ASK FOR THIS

_____
Darren Meyer
SMKC, PLC
1671 Jefferson Davis Hwy., Suite 201
Fredericksburg, Va 22401
(540) 372-4046
Fax: (540) 372-9807

SEEN AND AGREED

_____
Commonwealth Attorney
Spotsylvania County Commonwealth Attorney's Office

*cy CA*
*Meyer*
*State Police*
*4-23-14*

A COPY TESTE:
Jeff, Clerk
By: _____
Deputy Clerk

SPENCER,
MAYORAS,
KOCH,
CORNICK &
MEYER
Attorneys at Law
1671 Jefferson Davis Hwy
Suite 201
Fredericksburg, VA 22401
O. (540) 372-4046
F. (540) 372-9807
www.smkclaw.com

## Private Security Services Registration

RE-0136922



Name:      James P Hamilton
DCJS ID:      99311924
Issue Date:      10/07/2014
Expiration Date:      10/31/2016
Firearms Expires:   10/31/2015

Issued by  Department of Criminal
Justice Services

**Categories**
RE01 Armed Security Officer
RE11 Unarmed Security Officer
RE31 Alarm Respondent

**Firearms Categories**
RE07 Handgun
RE08 Shotgun

**Firearms Expiration**
10/31/2015

# Commonwealth of Virginia



**Department of Criminal Justice Services**

**certifies that**

James P Hamilton

has satisfied the certification requirements for

# Private Security Services Instructor

To provide training for:
IN01 Security Officer Core Subjects, IN05 Armed Security Officer Arrest Authority, IN07 Firearms, IN75 Intermediate Firearms

| IN-1000002 | 07/31/2017 | Teresa Gooch |
|---|---|---|
| License ID # | Expiration Date | Director, Law Enforcement & Security Services |

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT COURT OF MARYLAND

| | | |
|---|---|---|
| **JAMES HAMILTON** | * | |
| **Plaintiff,** | * | |
| **v.** | * | **Civil Case No.  JKB 15-2142** |
| **WILLIAM L. PALLOZZI, et al.** | * | |
| **Defendants.** | * | |

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

## DECLARATION OF CAPTAIN ADAM STACHURSKI

I, Captain Adam Stachurski, being over 18 years of age and competent to testify, hereby declare as follows:

1. I am the Commander of the Licensing Division of the Maryland State Police ("MSP").   The Licensing Division is responsible for the processing of applications for handgun carry permits and handgun qualification licenses, as well as applications to sell, rent or transfer regulated firearms in Maryland.

2. The Licensing Division has no record of an application having been submitted by  James Hamilton of District Heights, Maryland to obtain either a handgun carry permit or a handgun qualification license.

3. The Licensing Division has no record of any communication between Division personnel and James Hamilton of District Heights, Maryland concerning his eligibility to

obtain a handgun carry permit, a handgun qualification license or to purchase a regulated firearm.

I declare under penalty of perjury that the foregoing is true and correct.

Captain Adam Stachurski

Executed on this ____/ˢᵗ____ day of December, 2015.

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| JAMES HAMILTON, | ) Case. No. 1:15-CV-2142-JKB |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| WILLIAM L. PALLOZZI, et al., | ) |
| | ) |
| Defendants. | ) |
| | ) |

SECOND DECLARATION OF JAMES HAMILTON

I, James Hamilton, declare:

1.     After I was told by the Maryland State Police Licensing Division that I could not lawfully possess a firearm in Maryland, I understood that it would be futile for me to complete the application for a Maryland license to carry a concealed handgun. I understood that the application would be denied owing to Maryland's position that I am prohibited from having firearms. I opted not to waste my time, my application fee, and the state's time in sending a formal denial, and walked away.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on January 19, 2016.

James Hamilton

1

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

JAMES HAMILTON,                         )   Case. No. 1:15-CV-2142-JKB
                                        )
        Plaintiff,                      )
                                        )
            v.                          )
                                        )
WILLIAM L. PALLOZZI, et al.,            )
                                        )
        Defendants.                     )
_____ )

DECLARATION OF MARGARET LOVE

I, Margaret Love, declare:

1.      I am an attorney in Washington, D.C. My practice focuses on assisting rehabilitated

people restore their various civil rights after conviction.

2.      I attempted to assist James Hamilton in his dispute with Maryland officials.

3.      Exhibit E is a true and correct copy of my correspondence with Maryland Assistant

Attorney General Susan Howe Baron. [Although Ms. Baron addressed me as "Mary," that appears

to have been a typographical error. I usually go by "Margy," as in my email address from which I

corresponded with Baron.]

4.      As the email shows, I asked that Maryland give full effect to Virginia's restoration of

Mr. Hamilton's firearm rights. In response, Ms. Baron made clear that Maryland would not do so

absent a pardon, which is not practically available. Ms. Baron's email suggests that this position was

relayed by Assistant Attorney General Mark Bowen, who was copied on Ms. Baron's email to me,

and Ms. Baron suggested that I contact Mr. Bowen in the event I wanted to discuss the matter

further.

1

I declare under penalty of perjury that the foregoing is true and correct.

Executed on January 13, 2016.

Margaret Love

2

From: SBaron@dpscs.state.md.us
To: MARGYLOVE@aol.com
CC: mark.bowen@maryland.gov, DBlumberg@dpscs.state.md.us
Sent: 12/22/2014 11:18:35 A.M. Eastern Standard Time
Subj: RE: Full faith etc,

Hi Mary,

I have spoken with Mark Bowen, an Assistant Attorney General for the Maryland State Police.  If Mr. Hamilton receives a pardon from the Governor of Virginia, then he will have achieved maximum restoration of his rights in Virginia -- in other words, he will have done everything that he can do.  After he is pardoned by the Governor of Virginia, Maryland will give effect to the restoration of his rights by Virginia.  Mr. Bowen, who is copied on this email, said that if you have any further concerns or questions, you should feel free to contact him.

Happy holidays,
Susan

Susan Howe Baron
Assistant Attorney General
Department of Public Safety
   and Correctional Services
115 Sudbrook Lane, Suite A
Pikesville, MD. 21208
Tel. 410-585-3072
Fax 410-764-5366
Email: sbaron@dpscs.state.md.us


This communication may contain confidential or privileged information.  Unauthorized retention, disclosure, or use of this information is prohibited and may be unlawful under 18 U.S.C. §§ 2510-2521. Accordingly, if this email has been sent to you in error, please notify the sender and delete the e-mail from your computer and network.

From: MARGYLOVE@aol.com [mailto:MARGYLOVE@aol.com]
Sent: Thursday, December 18, 2014 5:25 PM
To: Baron, Susan
Subject: Full faith etc,

Hi Susan -

Thanks for your interest in this issue.  The material on Full Faith and inter-jurisdictional relief issues, including Uniform Act and Model Penal Code, is attached.  The UCCCA provides that jurisdictions should respect relief granted in sister jurisdictions; the MPC draft approved in May provides that a jurisdiction should make available relief to those convicted in other jurisdictions, and should give consideration to relief granted in other jurisdictions.

The updated cite for Blackwell case (it went up and then back down since this edition) is  Blackwell v. Haslam, 2013 WL 3379364 (Tenn.Ct.App. Jun 28, 2013) (remanding for consideration whether giving effect in Tennessee to a Georgia pardon restoring firearms rights to a drug offender violates Tennessee's public policy against restoring firearms rights to violent drug offenders).

I hope we can straighten this out.  It does seem to me that every jurisdiction should offer its residents at least some way to regain their firearms rights, either through their own courts or administrative agencies,  or by recognizing relief granted in the jurisdiction of conviction.  As it is, Mr. Hamilton has done everything he can in the jurisdiction of his conviction, and has no remedy under Maryland law.   It seems to me pointless to send him back to Virginia for more relief in the form of a pardon, since the Virginia Supreme Court has held that the governor has no authority through a pardon to restore firearms rights.  See Gallagher v. Commonwealth, 284 Va. 444; 732 S.E.2d 22 (2012).

I very much appreciate your willingness to speak to your counterpart at the State Police.

Margaret Love

Law Office of Margaret Love
15 7th Street, N.E.
Washington, D.C. 20002
202-547-0453
202-236-0484 (cell)
www.pardonlaw.com

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **JAMES HAMILTON,** | * | |
| **Plaintiff** | * | |
| **v.** | * | **CIVIL NO. JKB-15-2142** |
| **WILLIAM L. PALLOZZI, *et al.*,** | * | |
| **Defendants** | * | |

    \*      \*      \*      \*      \*      \*      \*      \*      \*      \*      \*      \*

### <u>MEMORANDUM</u>

James Hamilton ("Plaintiff") brought an action under 42 U.S.C. § 1983 against William L. Pallozzi in his official capacity as Superintendent of the Maryland State Police ("MSP"), and against Brian E. Frosh in his official capacity as Attorney General of Maryland (collectively, "Defendants").  Plaintiff challenges the constitutionality of certain Maryland statutes that Defendants are charged with enforcing; Plaintiff alleges that these statutes, as applied to him, violate his Second Amendment rights.

Now pending before the Court is Defendants' Motion to Dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.  (ECF No. 7.)  Also pending is Plaintiff's Motion for Summary Judgment pursuant to Rule 56.  (ECF No. 11.)  The issues have been briefed, and no hearing is required, *see* Local Rule 105.6 (D. Md. 2014).  For the reasons explained below, Plaintiff's Motion will be DENIED, and Defendants' Motion will be GRANTED.

## I.   Background[1]

Plaintiff, a Maryland resident, was convicted in November 2006 in Rockbridge County, Virginia, of three felony offenses:  credit-card theft in violation of Va. Code Ann. § 18.2-192; credit-card forgery in violation of Va. Code Ann. § 18.2-193; and credit-card fraud in violation of Va. Code Ann. § 18.2-195.  (ECF No. 1 ¶¶ 1, 9.)  Plaintiff received a four-year suspended sentence, and he paid restitution and court costs totaling $2337.90.  (*Id*. ¶ 9.)  Although Plaintiff's felony convictions triggered forfeiture of certain of his political rights in Virginia, those rights were restored in 2013 and 2014.  (*Id*. ¶¶ 9-11.)[2]

According to Plaintiff, in the years following his convictions he has become a "responsible, law-abiding American citizen."  (*Id*. ¶ 15.)[3]  A married father of three children, he serves as head coach of a junior-league wrestling team; he is also an armed security officer registered with the Virginia Department of Criminal Justice Services.  (*Id*. ¶¶ 13-14.)  In spite of his past crimes, Plaintiff alleges that he has "no history of violent behavior."  (*Id*. ¶ 15.)  He wishes to obtain a handgun and a long gun, ostensibly for self-defense purposes within his Maryland home.  Unfortunately for Plaintiff, he is barred from possessing such weapons due to the operation of certain Maryland statutes (collectively, "Firearms Prohibitions").  Specifically, Md. Code Ann., Pub. Safety § 5-133(b)(1) prohibits any person who has been convicted of a

---

[1] Because the Court will resolve this action on Defendants' Motion to Dismiss, the facts are recited here as alleged in the Complaint.  *See Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997).

[2] Specifically, the Governor of Virginia restored Plaintiff's rights to vote, hold public office, sit on a jury, and serve as a notary (ECF No. 1 ¶ 10), while the Circuit Court for Spotsylvania County, Virginia, restored Plaintiff's right to bear arms (*id*. ¶ 11).  The process for securing restoration of civil rights differs under Maryland law:  in Maryland, a "gubernatorial pardon of [a] felony conviction [is] necessary to restore . . . firearm possession rights."  *Washington v. United States*, Crim. No. RWT-11-0380, 2015 WL 4069489, at *1 n.1 (D. Md. July 2, 2015).

[3] Several of Plaintiff's allegations seem at first blush oddly self-congratulatory:  he avers, for instance, that he is neither a fugitive from justice nor a habitual drunkard and that he has never been adjudicated incompetent.  (ECF No. 1 ¶¶ 6-7.)  It turns out, however, that these averments correspond to specific proscriptions on handgun and long-gun possession under Maryland law.  *See* Md. Code Ann., Pub. Safety §§ 5-133, -205.  Of course, the fact that Plaintiff is not barred from possessing regulated weapons under *most* of the enumerated proscriptions has no bearing on the propriety of the *one* proscription that plainly applies to him—conviction of a "disqualifying crime," discussed *infra*.

2

"disqualifying crime" from possessing a "regulated firearm,"[4] while § 5-205(b)(1) forbids any person who has been convicted of such a crime from possessing a rifle or shotgun. The glossary accompanying these statutes defines "disqualifying crime" to include any offense that is classified as a felony in Maryland. § 5-101(g)(2). Two of Plaintiff's Virginia convictions fit within this rubric.[5] Possession of a restricted weapon in violation of the Firearms Prohibitions is a misdemeanor, punishable by a fine and/or incarceration. *See* §§ 5-144(b), -205(d).

At some unspecified point, Plaintiff contacted the MSP Licensing Division to request a Handgun Wear and Carry Permit. (ECF No. 1 ¶ 20.) Plaintiff was advised that, due to his disqualifying convictions, he cannot possess a firearm in Maryland unless he first obtains a full pardon from the Governor of Virginia. (*Id*.) Subsequently, on July 22, 2015, Plaintiff filed the present action under 42 U.S.C. § 1983, claiming that enforcement of the Firearms Prohibitions violates his Second and Fourteenth Amendment rights on an as-applied basis.[6] Plaintiff seeks declaratory and injunctive relief, as well as costs and attorneys' fees.

On October 6, 2015, Defendants moved to dismiss. (ECF No. 7.) Plaintiff filed a response in opposition (ECF No. 10); thereafter, Defendants did not reply within the period prescribed by Local Rule 105.2(a) (D. Md. 2014). Then, on October 26, 2015, Plaintiff moved for summary judgment. (ECF No. 11.) Plaintiff's summary-judgment motion is fully briefed (ECF Nos. 11–1, 14 & 18), and both motions are ripe for decision.

---

[4] Handguns are included on the list of regulated firearms. *See* Md. Code Ann., Pub. Safety § 5-101(r)(1).

[5] Plaintiff acknowledges that Virginia's credit-card forgery statute is equivalent to Maryland's credit-card counterfeiting statute, Md. Code Ann., Crim. Law § 8-205, while Virginia's credit-card fraud statute is equivalent to Maryland's statute proscribing receipt of property by stolen, counterfeit, or misrepresented credit card, § 8-209. Violations of these Maryland statutes would constitute felonies on the facts of Plaintiff's conviction. (*See* ECF No. 1 ¶ 19.) *See also McCloud v. Dep't of State Police*, 44 A.3d 993, 1001 (Md. 2012) (holding that out-of-state convictions are included within the definition of "disqualifying crimes" under the Firearms Prohibitions); *Jones v. State*, 23 A.3d 880, 882 (Md. 2011) (same).

[6] Although Plaintiff cites the Fourteenth Amendment, he does not appear to be raising a freestanding Due Process or Equal Protection claim, and the Court assumes that Plaintiff's Fourteenth Amendment reference is for incorporation purposes only. *See McDonald v. City of Chicago*, 561 U.S. 742, 791 (2010) ("We . . . hold that the Due Process Clause of the Fourteenth Amendment incorporates the Second Amendment right recognized in [*District of Columbia v.* ]*Heller*.").

## II.   Standard of Review Under Rule 12(b)(6)[7]

A complaint must contain "sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'"   *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).   In analyzing a Rule 12(b)(6) motion, the Court views all well-pleaded allegations in the light most favorable to the plaintiff.   *Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997).   Nevertheless, "[f]actual allegations must be enough to raise a right to relief above the speculative level."   *Twombly*, 550 U.S. at 555.   In conducting its analysis, the Court "need not accept legal conclusions couched as facts or 'unwarranted inferences, unreasonable conclusions, or arguments.'"   *Wag More Dogs, LLC v. Cozart*, 680 F.3d 359, 365 (4th Cir. 2012) (quoting *Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008)).

## III.  Analysis

### A.   Constitutional Standing and Ripeness

Before turning to the merits of Plaintiff's § 1983 claim, the Court must address a justiciability concern that Defendants first raised in their response to Plaintiff's Motion for Summary Judgment.[8]   Defendants contend that "Plaintiff's claim is not ripe for adjudication because [he] has not even applied to obtain a handgun carry permit or handgun qualification license and . . . Defendants have taken no action . . . against Plaintiff."   (ECF No. 14 at 5.)

---

[7] As noted above, Plaintiff moved for summary judgment shortly after filing his response in opposition to Defendants' Motion to Dismiss.  However, the Court concludes herein that Plaintiff failed to state a claim for which relief can be granted.  Because of the Court's determination, and because the exhibits appended to the summary-judgment briefs do nothing to alter the Court's analysis, the Court will resolve this matter under Rule 12(b)(6) without conducting a separate and superfluous analysis under Rule 56.

[8] Despite Plaintiff's assertion that "it is too late in the day for Defendants to suddenly claim that their dispute with [Plaintiff] isn't ripe" (ECF No. 18 at 5), ripeness is a jurisdictional matter that "may be raised at any point during the proceedings and may . . . be raised *sua sponte* by the court."  *Brickwood Contractors, Inc. v. Datanet Eng'g, Inc.*, 369 F.3d 385, 390 (4th Cir. 2004); *see also Doe v. Va. Dep't of State Police*, 713 F.3d 745, 758 (4th Cir. 2013) ("A claim should be dismissed as unripe if the plaintiff has not yet suffered injury and any future impact 'remains wholly speculative.'" (quoting *Gasner v. Bd. of Supervisors*, 103 F.3d 351, 361 (4th Cir. 1996))), *reh'g denied*, 720 F.3d 212 (4th Cir. 2013), *cert. denied*, 134 S. Ct. 1538 (2014).

4

Federal courts are courts of limited jurisdiction, the contours of which are circumscribed by the case-or-controversy requirement of Article III.  The doctrines of constitutional standing and ripeness are integral components of that requirement.  To establish standing, "(1) the plaintiff must allege that he or she suffered an actual or threatened injury that is not conjectural or hypothetical[;] (2) the injury must be fairly traceable to the challenged conduct; and (3) a favorable decision must be likely to redress the injury."  *Miller v. Brown*, 462 F.3d 312, 316 (4th Cir. 2006).  In the context of a preenforcement challenge to a penal statute, a litigant may satisfy constitutional standing where (1) the litigant alleges "an intention to engage in a course of conduct arguably affected with a constitutional interest" but (2) there exists a "credible threat of prosecution" under the challenged law.  *W. Va. Citizens Def. League, Inc. v. City of Martinsburg*, 483 F. App'x 838, 839 (4th Cir. 2012) (per curiam) (quoting *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298 (1979)).[9]

Ripeness overlaps with standing:  the ripeness doctrine "prevents judicial consideration of issues until a controversy is presented in 'clean-cut and concrete form.'"  *Miller*, 462 F.3d at 318-19 (quoting *Rescue Army v. Mun. Court*, 331 U.S. 549, 584 (1947)).  In evaluating ripeness, courts must "'balance the fitness of the issues for judicial decision [with] the hardship to the parties of withholding court consideration.'  A case is fit for judicial decision when the issues are purely legal and when the action in controversy is final and not dependent on future uncertainties."  *Id.* at 319 (quoting *Franks v. Ross*, 313 F.3d 184, 194 (4th Cir. 2002)).

The thrust of Defendants' justiciability argument is that the MSP never had an opportunity to formally determine whether Plaintiff qualifies for a handgun license or carry

---

[9] *See also Kolbe v. O'Malley*, 42 F. Supp. 3d 768, 774 n.3 (D. Md. 2014) (finding that plaintiff-challengers to Maryland assault-weapons ban faced credible threat of prosecution and thus brought justiciable claims where they alleged that they possessed banned weapons and would purchase additional banned weapons but for the ban), *vacated in part on other grounds sub nom. Kolbe v. Hogan*, No. 14-1945, 2016 WL 425829 (4th Cir. Feb. 4, 2016).

permit.  Had Plaintiff submitted an application, Defendants reason, he would have been subject to a background check—and he might have been denied a license for a reason unrelated to his felony record, mooting his argument in these proceedings.  (ECF No. 14 at 7-8.)  Plaintiff counters that he "refrained from filling out a useless application" because agents at the MSP Licensing Division *told him* that his application would be futile; the Maryland Office of the Attorney General subsequently confirmed the MSP's position.  (ECF No. 18 at 6.)[10]

The Court finds Plaintiff's position here more persuasive.  While Defendants speculate that Plaintiff *might* have been denied a license for some unknown reason, they provide no evidence whatsoever in support of their conjecture.  Plaintiff, conversely, denies having any disqualifying characteristics other than his felony convictions; in fact, he included pleadings in his Complaint that specifically negate most of the disabling factors under Md. Code Ann., Pub. Safety §§ 5-133, -205.  And Defendants never refute Plaintiff's basic assertion—*i.e.*, that because of the Firearms Prohibitions, he is barred from lawfully possessing a handgun or long gun in the State of Maryland.  Had Plaintiff gone through the motions of formally applying for a license or carry permit, it is uncontroverted that the MSP would have denied his request.  The law does not require Plaintiff to avail himself of a hopeless administrative process before looking to the courts for relief.  *See Thetford Props. IV Ltd. P'ship v. U.S. Dep't of Housing & Urban Dev.*, 907 F.2d 445, 449 (4th Cir. 1990) ("To be sure, no litigant is obliged to exhaust inadequate administrative procedures."); *see also Sammon v. N.J. Bd. of Med. Exam'rs*, 66 F.3d 639, 643 (3d Cir. 1995) ("Litigants are not required to make . . . futile gestures to establish ripeness.").

---

[10] To prove his point, Plaintiff supplies a declaration by his former attorney, Margaret Love, as well as an e-mail chain between Ms. Love and Susan Howe Baron, an assistant attorney general in Maryland.  (ECF Nos. 18–2 & 18–3.)  Although the Court generally confines its analysis to the four corners of the Complaint at the 12(b)(6) stage, the Court may look to extrinsic evidence in determining a threshold justiciability question, *see Neal v. Residential Credit Sols., Inc.*, Civ. No. JKB-11-3707, 2013 WL 428675, at *1 (D. Md. Feb. 1, 2013).  Accordingly, the Court has taken notice of Plaintiff's exhibits.

6

Furthermore, Plaintiff's lawsuit does not challenge Maryland's firearms licensing scheme *per se*; rather, he asks the Court to enjoin enforcement of the Firearms Prohibitions as against him—and specifically those provisions that prohibit firearm possession on the basis of a disqualifying conviction.   As Plaintiff aptly observes, "[e]ven if [he] suffered some other firearms disability . . . he could still be prosecuted by Defendants for violating the laws whose application he challenges here."  (ECF No. 18 at 8-9.)  Conversely, were the Court to grant the declaratory and injunctive relief that Plaintiff seeks, he would be shielded from prosecution under those provisions.

Although Defendants' justiciability argument is unpersuasive, the Court has identified a separate issue that is potentially more problematic.   In his Complaint, Plaintiff alleges that the MSP informed him he could not possess a firearm in Maryland "*unless* he were to obtain a full pardon from Virginia's governor."  (ECF No. 1 ¶ 20 (emphasis added).)   An e-mail chain appended to Plaintiff's summary-judgment reply brief reinforces the possibility of relief via a pardon:  Susan Howe Baron, Assistant Attorney General for the Maryland Department of Public Safety and Correctional Services, indicated that "[a]fter [Plaintiff] is pardoned by the Governor of Virginia, Maryland will give effect to the restoration of his rights by Virginia."  (ECF No. 18–3 at 1.)  However, Plaintiff's former attorney, Margaret Love, indicated in a declaration that a pardon is "not practically available":   she did not elaborate on the reasons for such impracticability.  (ECF No. 18–2 at 1.)[11]

While applying for a handgun license or carry permit would have been a futile endeavor for Plaintiff at this juncture, the same cannot necessarily be said of a pardon petition.   And if

---

[11] The Constitution of Virginia endows the Governor with the power of executive clemency.  *See* Va. Const. art. V, § 12.  Under current administrative practice, simple pardons are available at the Governor's discretion after the petitioner has (1) fulfilled all conditions associated with his conviction and (2) satisfied a five-year waiting period. *See Simple Pardons*, Off. Secretary Commonwealth, https://commonwealth.virginia.gov/judicial-system/pardons /simple-pardons/ (last visited Feb. 11, 2016).

Plaintiff could have averted the sting of the Firearms Prohibitions by requesting (and securing) executive clemency, it is not clear that his as-applied challenge to the constitutionality of the statutes is properly before the Court:  that is, it is not clear that he has *actually* suffered an injury the likes of which the Court is the proper institution to redress.[12]

   *Doe v. Virginia Department of State Police* is instructive.  713 F.3d 745 (4th Cir. 2013), *reh'g denied*, 720 F.3d 212 (4th Cir. 2013), *cert. denied*, 134 S. Ct. 1538 (2014).  In *Doe*, the plaintiff—who had been convicted decades earlier of "carnal knowledge of a minor"—brought an action under § 1983 to challenge the constitutionality of a state law that had reclassified her crime as a "sexually violent offense," resulting in her exclusion from certain school facilities unless she received permission from both a state court and the school board.  Ms. Doe alleged, *inter alia*, that the law interfered with her fundamental right to raise and educate her children as well as with certain of her First Amendment rights.  Significantly, however, Doe never filed a petition with any state court or school board.  The district court dismissed Doe's case, and the Fourth Circuit affirmed, finding that (1) Doe lacked Article III standing and (2) Doe's claims were not ripe for judicial review.[13]  Writing for the majority, Judge Duncan explained that the harms Doe complained of did "not affect her with finality, as she ha[d] not taken any of the steps necessary to access [restricted] properties."  *Id*. at 754.  "Therefore, any injury to her [constitutional] rights [that] she would suffer from not being able to enter a school . . . remain[ed] hypothetical."  *Id*.  Similarly, because Doe had not availed herself of the petition

---

[12] The Court is particularly attuned to jurisdictional issues when a litigant invites the Court to invalidate or enjoin the enforcement of a state law, given the weighty federalism concerns implicated by such an exercise of federal judicial power.  *Cf. Valenti v. Rockefeller*, 292 F. Supp. 851, 867 (W.D.N.Y. 1968) ("We are . . . aware of the basic principle of federalism which requires that a federal court exercise great caution before striking down a state statute as repugnant to the Constitution."), *aff'd*, 393 U.S. 405 (1969) (per curiam).
[13] Doe brought an additional procedural due process claim that the court addressed on the merits; that claim is not apposite to this discussion.

process under state law, her claims were "dependent on future uncertainties and thus not ripe for judicial decision." *Id*. at 759.[14]

The Court notes the parallels between Ms. Doe's claims and Plaintiff's claim. Both litigants brought § 1983 actions challenging the constitutionality of state laws as applied to them. Moreover, both litigants declined to avail themselves of a state process that, if successful, could have granted them the relief they sought. In light of *Doe*, the Court has reservations about the justiciability and, in particular, the ripeness of Plaintiff's challenge here.

That being said, the Court recognizes that (1) the parties neither discussed the consequences of Plaintiff's failure to petition for clemency nor addressed the relevance of *Doe* in their briefs; and (2) *Doe* may be distinguishable on its facts.[15] The Court also acknowledges Judge King's thoughtful and vigorous dissent in *Doe*, through which Judge King questioned whether the Fourth Circuit had erected an administrative hurdle to § 1983 relief that is improper under *Patsy v. Board of Regents of Florida*, 457 U.S. 496 (1982).[16] The Circuit has not had occasion to revisit *Doe*, and the few district courts that have discussed the case in any detail have distinguished it. For these reasons, and in spite of its reservations, the Court deems it prudent to turn to the merits of Plaintiff's § 1983 claim.

---

[14] Judge Duncan noted the "limited nature" of the court's determination, explaining that, were Doe simply to file a proper petition under state law, the court's justiciability concerns would be addressed. *Doe*, 713 F.3d at 759.

[15] Judge Keenan's concurring opinion in *Doe* illustrates one potentially significant distinction. Citing *Williamson County Regional Planning Commission v. Hamilton Bank of Johnson City*, 473 U.S. 172 (1985), Judge Keenan explained the principle of administrative finality, which is "concerned with whether [an] initial decisionmaker has arrived at a definitive position on [an] issue that inflicts an actual, concrete injury," *id*. at 193. In *Doe*, the panel concluded that the plaintiff was "required . . . to petition a Virginia circuit court and the local school board, in their capacities as 'initial decisionmaker[s],' to determine whether and under what conditions she [would] be granted access to school property." *Doe*, 713 F.3d at 763 (Keenan, J., concurring) (alteration in original). But in this case, there are two unrelated decisionmakers with separate decisionmaking processes—*i.e.*, the Governor of Virginia and Defendant Frosh. Defendant Frosh (through his agents) has indicated that Plaintiff's firearms rights will be restored *if but only if* he first secures a pardon in Virginia. Perhaps that "decision" is sufficiently final to bring Plaintiff's challenge within the ambit of federal jurisdiction.

[16] In *Patsy*, the Court held that "exhaustion of state administrative remedies [is] not . . . required as a prerequisite to bringing an action pursuant to § 1983." 457 U.S. 496, 516 (1982); *see also Porter v. Nussle*, 534 U.S. 516, 523 (2002) ("Ordinarily, plaintiffs pursuing civil rights claims under 42 U.S.C. § 1983 need not exhaust administrative remedies before filing suit in court.").

### B.   *§ 1983 Claim*

### 1.   *Legal Framework*

Plaintiff asserts that application of the Firearms Prohibitions as against him violates his Second Amendment rights.   He seeks declaratory and injunctive relief via § 1983, which provides that any person who, under color of state law, "subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights . . . secured by the Constitution . . . shall be liable to the party injured in an action at law, *suit in equity*, or other proper proceeding for redress" (emphasis added).

Until recently, the nature and extent of the Second Amendment right was ill-defined.  But in *District of Columbia v. Heller*, 554 U.S. 570, 599 (2008), the Supreme Court held that self-defense is the "*central component*" of the right.   According to *Heller*, foremost among the interests protected by the Second Amendment is the "right of law-abiding, responsible citizens to use arms in defense of hearth and home."   *Id.* at 635.   *Heller* clarified, however, that the self-defense right is not unlimited, and the Court specifically advised that nothing in its opinion should be taken to cast doubt on "presumptively lawful regulatory measures" such as "longstanding prohibitions on the possession of firearms by felons."   *Id.* at 626 & 627 n.26.   Two years after *Heller*, the Court held that the Second Amendment right—and its concomitant limitations[17]—is "fully applicable to the States."   *McDonald v. City of Chicago*, 561 U.S. 742, 748 (2010).

In the aftermath of *Heller* and *McDonald*, the Fourth Circuit—along with appellate courts nationwide—began developing a framework through which district courts might evaluate Second Amendment challenges to firearms regulations.   In *United States v. Chester*, 628 F.3d 673 (4th

---

[17] "We made it clear in *Heller* that our holding did not cast doubt on such longstanding regulatory measures as 'prohibitions on the possession of firearms by felons' . . . . We repeat those assurances here.  . . . [I]ncorporation does not imperil every law regulating firearms."  *McDonald*, 561 U.S. at 786 (citation omitted).

10

Cir. 2010), the Circuit set forth a two-prong approach.  When faced with a Second Amendment challenge, a court must first determine "whether the challenged law imposes a burden on conduct falling within the scope of the Second Amendment's guarantee."  *Id*. at 680 (quoting *United States v. Marzzarella*, 64 F.3d 85, 89 (3d Cir. 2010)).  If the law *does* burden a Second Amendment interest, the court must move to the "second step of applying an appropriate form of means-end scrutiny."  *Id*.  *Chester* held that the proper degree of scrutiny turns on whether the interest implicated falls within the "core right identified in *Heller*—the right of a *law-abiding, responsible* citizen to possess and carry a weapon for self-defense."  *Id*. at 683.  For persons who, by virtue of their criminal history, do not qualify as law-abiding, responsible citizens, intermediate scrutiny is the appropriate standard of review.  *Id*.[18]  Under the intermediate scrutiny standard, "the government must demonstrate . . . that there is a 'reasonable fit' between the challenged regulation and a 'substantial' government objective."  *Id*. (quoting *Bd. of Trs. v. Fox*, 492 U.S. 469, 480 (1989)).

Picking up where *Chester* left off, the Fourth Circuit in *United States v. Moore*, 666 F.3d 313 (4th Cir. 2012), confronted a repeat offender's challenge to his conviction for violating the Gun Control Act of 1968 ("GCA"), as amended, 18 U.S.C. §§ 921 *et seq*.  The GCA makes it unlawful for any person "who has been convicted in any court of[] a crime punishable by imprisonment for a term exceeding one year" to possess a firearm or ammunition in or affecting commerce.  § 922(g)(1).  The appellant in *Moore* had multiple felony convictions on his record, bringing him well within the purview of § 922(g)(1); he argued, however, that the statute

---

[18] Nothing in the Fourth Circuit's most recent Second Amendment decision, *Kolbe v. Hogan*, No. 14-1945, 2016 WL 425829 (4th Cir. Feb. 4, 2016), alters this analysis.  Though *Kolbe* held that strict scrutiny is the appropriate standard of review for a challenge to Maryland's assault-weapons ban, it did so only after recognizing that the ban "implicates the core protection of the Second Amendment—'the right of law-abiding responsible citizens to use arms in defense of hearth and home.'"  *Id*. at *1 (quoting *Dist. of Columbia v. Heller*, 554 U.S. 570, 635 (2008)).  Where a law restricts firearm access for convicted criminals, the law does not implicate *Heller*'s "core protection," and strict scrutiny is inappropriate.

11

violated his Second Amendment rights.  The *Moore* court began its analysis by acknowledging that every circuit court of appeals to consider the constitutionality of § 922(g)(1), whether through a facial attack or an as-applied challenge, has upheld the statute.[19]  The court next explained that, because § 922(g)(1) falls within the scope of "presumptively lawful regulatory measures" under *Heller*, a facial challenge to the statute cannot succeed.  *Moore*, 666 F.3d at 318.  Nevertheless, picking up on dicta in *Chester*,[20] *Moore* recognized that a felon could— *theoretically*—prevail in an as-applied attack on such a presumptively valid law.  In order to succeed, the felon would have to "show that his factual circumstances remove his challenge from the realm of ordinary challenges."  *Id*. at 319.  Although *Moore* offered little guidance on what might constitute such an exceptional set of factual circumstances, the court flatly rejected the appellant's challenge in that case, noting that his "extensive and violent criminal history" moved his conduct "plainly outside the scope of the Second Amendment."  *Id*. at 320.

Following *Moore*, the Fourth Circuit has repeatedly upheld § 922(g)(1) and other provisions of the GCA in the face of constitutional attack.  *See, e.g*., *United States v. Taylor*, 594 F. App'x 784, 790 (4th Cir. 2014) (per curiam) (rejecting challenge to § 922(g)(1)), *cert. denied*, 135 S. Ct. 2339 (2015); *United States v. Izaguirre–De La Cruz*, 510 F. App'x 233, 234 (4th Cir. 2013) (per curiam) (rejecting challenge to § 922(g)(5), which proscribes firearm possession by

---

[19] As of this writing, the circuit courts of appeals have continued to speak with one voice, unanimously upholding § 922(g)(1) in the face of Second Amendment attacks.  *See, e.g*., *United States v. Torres-Rosario*, 658 F.3d 110, 113 (1st Cir. 2011); *United States v. Bogle*, 717 F.3d 281, 281-82 (2d Cir. 2013) (mem.); *Bell v. United States*, 574 F. App'x 59, 60 (3d Cir. 2014) (mem.), *cert. denied*, 135 S. Ct. 693 (2014); *United States v. Taylor*, 594 F. App'x 784, 790 (4th Cir. 2014) (per curiam), *cert. denied*, 135 S. Ct. 2339 (2015); *United States v. Powell*, 574 F. App'x 390, 397 (5th Cir. 2014) (per curiam), *cert. denied*, 135 S. Ct. 767 (2014); *United States v. Griffin*, 476 F. App'x 592, 598 (6th Cir. 2011); *United States v. Shields*, 789 F.3d 733, 750-51 (7th Cir. 2015), *cert. denied*, 136 S. Ct. 420 (2015); *United States v. Siegrist*, 595 F. App'x 666, 667-68 (8th Cir. 2015) (mem.); *Van Der Hule v. Holder*, 759 F.3d 1043, 1051 (9th Cir. 2014); *United States v. Molina*, 484 F. App'x 276, 285-86 (10th Cir. 2012); *United States v. Ponce-Cortes*, 574 F. App'x 876, 876-77 (11th Cir. 2014) (mem.); *Schrader v. Holder*, 704 F.3d 980, 991 (D.C. Cir. 2013).
[20] *Chester* had suggested that *Heller*'s reference to *presumptively lawful* regulatory measures "suggests the possibility that one or more of these 'longstanding' regulations 'could be unconstitutional in the face of an as-applied challenge.'"  *United States v. Chester*, 628 F.3d 673, 679 (4th Cir. 2010) (quoting *United States v. Williams*, 616 F.3d 685, 692 (7th Cir. 2010)).

12

an illegal alien); *United States v. Larson*, 502 F. App'x 336, 339 (4th Cir. 2013) (per curiam) (rejecting challenge to § 922(g)(8), which proscribes firearm possession by a person subject to a restraining order); *United States v. Elkins*, 495 F. App'x 330, 333 (4th Cir. 2012) (per curiam) (same); *United States v. Mudlock*, 483 F. App'x 823, 828 (4th Cir. 2012) (per curiam) (same).

In this case, of course, Plaintiff is not challenging the GCA; rather, he assails Maryland's Firearms Prohibitions as applied to him. The case law construing the constitutionality of the Firearms Prohibitions is admittedly quite sparse.[21] But because of the material overlap between § 922(g)(1) and the Firearms Prohibitions (both of which prohibit gun possession by felons), the GCA case law is relevant to the Court's present analysis. Accordingly, the Court will apply the *Chester–Moore* framework in evaluating the plausibility of Plaintiff's § 1983 claim.

### 2. Application

Because the Firearms Prohibitions, as felon-disarmament statutes, are included within that class of regulatory measures that is presumptively lawful under *Heller*, the burden is on Plaintiff in the first instance to rebut the presumption of lawfulness. Before the Court even considers whether the Firearms Prohibitions as applied to Plaintiff are reasonably tailored to a substantial government objective, *Chester*, 628 F.3d at 683, Plaintiff must demonstrate that "his factual circumstances remove his challenge from the realm of ordinary challenges," *Moore*, 666 F.3d at 319. But taking Plaintiff's Complaint at face value, he has failed to plausibly allege that he "fall[s] within the category of citizens to which the *Heller* court ascribed the Second Amendment protection of 'the right of *law-abiding responsible* citizens to use arms in defense of hearth and home.'" *Id.* (quoting

---

[21] *But see Spencer v. State*, No. 1164, 2015 WL 6108245, at *9 (Md. Ct. Spec. App. Oct. 15, 2015) ("§ 5-133 is exactly the type of regulatory measure prohibiting the possession of firearms by those convicted of a disqualifying crime that the Supreme Court stated that its holdings in *McDonald* and *Heller* did not touch. As a result, . . . § 5-133 does not violate the Second Amendment." (citation omitted)).

13

*Heller*, 554 U.S. at 635).  Consequently, the Court can resolve this dispute—and dismiss Plaintiff's Complaint—without undertaking a complicated means-ends inquiry.[22]

Plaintiff's theory is, at bottom, a simple one:  he sees himself as a "responsible, law-abiding American citizen" with "no history of violent behavior, or of any other conduct that would suggest he would pose any more danger by possessing firearms than an average, law-abiding responsible citizen."  (ECF No. 1 ¶ 15.)[23]  The problem, of course, is that Plaintiff is *not* an average, law-abiding, responsible citizen:  he is a felon who was convicted not ten years ago of three serious crimes.  Although the particular statutes that Plaintiff violated are directed toward misappropriation of credit cards, the underlying misconduct is the kind of misconduct that the law has proscribed from time immemorial.  Plaintiff's crimes are not technical or regulatory offenses:  they are black-letter *mala in se* felonies reflecting grave misjudgment and maladjustment.[24]

While Plaintiff emphasizes the nonviolent nature of his crimes, studies show a statistically significant risk that persons who commit property crimes may engage in other maladaptive behaviors.  For instance, a 2014 study published by the Bureau of Justice Statistics, which tracked recidivism patterns of 404,638 state prisoners released in 2005, found that 82.1%

---

[22] Given that the Fourth Circuit has continually upheld the GCA in the face of constitutional attack (even at prong two of the *Chester* test) the Court has little doubt that the Firearms Prohibitions would likewise survive intermediate scrutiny.  But the Court need not ultimately decide that question—because taking Plaintiff's allegations as true, he cannot carry his burden at prong one.

[23] Elsewhere, Plaintiff declares that he is "plainly not a typical felon."  (ECF No. 11–1 at 9.)  Given the wide array of culpable acts and omissions that can give rise to a felony conviction, the Court is unsure what it means to be a "typical" felon.  In any event, in emphasizing his (allegedly) nonviolent history and his (alleged) rehabilitation, Plaintiff would deflect attention from his three grave offenses of conviction.  But it is those felonies that bring Plaintiff's factual circumstances squarely within the "realm of ordinary challenges" to the Firearms Prohibitions, *see United States v. Moore*, 666 F.3d 313, 319 (4th Cir. 2012).

[24] Theft crimes are as old as the Babylonian Code of Hammurabi.  *See* John D. Bessler, *Revisiting Beccaria's Vision:  The Enlightenment, America's Death Penalty, and the Abolition Movement*, 4 Nw. J.L. & Soc. Pol'y 195, 216 (2009).  Fraud crimes likewise date back centuries; in 1601, for example, the Star Chamber in *Twyne's Case* concluded that "fraud and deceit abound in these days more than in former times" and that, consequently, "all statutes made against fraud should be liberally and beneficially expounded to suppress the fraud."  76 Eng. Rep. 809, 815-16; 3 Co. Rep. 80 a, 82 a–82 b (K.B.).  Forgery, too, is a crime deeply rooted in the common law.  *See Union Bank v. Barker*, 3 Barb. Ch. 358, 359 (1848) (describing fraud by means of forgery as an "offence involving the highest degree of moral turpitude, which . . . has long . . . been made a felony by our statutes").

14

of former property offenders were arrested for a new offense within five years following their release.[25]   Notably, while 54% of former property offenders committed subsequent property offenses during that five-year period, 28.5% of former property offenders committed subsequent violent offenses.[26]   *Cf. United States v. Barton*, 633 F.3d 168, 175 (3d Cir. 2011) ("[D]enying felons the right to possess firearms is entirely consistent with the purpose of the Second Amendment to maintain 'the security of a free State.'   It is well-established that felons are more likely to commit violent crimes than are other law-abiding citizens." (citation omitted)).

For that matter, courts in this Circuit and elsewhere have repeatedly rejected Second Amendment challenges to disarmament statutes brought by felons with nonviolent offenses of conviction.   *See United States v. Pruess*, 703 F.3d 242, 247 (4th Cir. 2012) ("We now join our sister circuits in holding that application of the felon-in-possession prohibition to allegedly non-violent felons like Pruess does not violate the Second Amendment."); *United States v. Everist*, 368 F.3d 517, 519 (5th Cir. 2004) ("Irrespective of whether his offense was violent in nature, a felon has shown manifest disregard for the rights of others.   He may not justly complain of the limitation on his liberty when his possession of firearms would otherwise threaten the security of his fellow citizens."); *see also United States v. Kline*, 494 F. App'x 323, 325 (4th Cir. 2012) (per curiam) (rejecting challenge by felon convicted of eluding a law-enforcement officer); *United States v. Torres-Rosario*, 658 F.3d 110, 113 (1st Cir. 2011) (rejecting challenge by felon convicted of drug offenses); *Wilson v. United States*, No. 4:14-CV-158-A, 2014 WL 2445788, at *2 (N.D. Tex. May 30, 2014) (rejecting challenge by felon convicted of mail fraud).[27]

---

[25] Matthew R. Durose et al., U.S. Dep't of Justice, Bureau of Justice Statistics, *Recidivism of Prisoners Released in 30 States in 2005: Patterns from 2005 to 2010*, at 8 (2014), http://www.bjs.gov/content/pub/pdf/rprts05p0510.pdf.
[26] *Id*. at 9.
[27] Plaintiff pins his hopes on two cases litigated by Plaintiff's counsel and recently decided by district courts in Pennsylvania:  *Suarez v. Holder*, No. 1:14-CV-968, 2015 WL 685889 (M.D. Penn. Feb. 18, 2015), and *Binderup v. Holder*, No. 13-cv-06750, 2014 WL 4764424 (E.D. Pa. Sept. 25, 2014).   In both cases, the courts departed from the overwhelming current of authority and approved as-applied challenges to § 922(g)(1).   Both cases are pending on

15

The point of this discussion is not, of course, to impugn Plaintiff's motives or even to assess his rehabilitation. Assuming the truth of Plaintiff's allegations, it appears that he has made a number of commendable, socially responsible choices in the years following his convictions, and he has been rewarded for those choices (*e.g.*, by the restoration of his civil rights in Virginia). That said, because of Plaintiff's criminal past, the State of Maryland has acted well within its discretion in choosing to withhold firearms privileges from him—at least until he obtains a full pardon under Virginia law. Plaintiff has not shown that his factual circumstances "remove his challenge from the realm of ordinary challenges," *Moore*, 666 F.3d at 319. Accordingly, he has not carried—*and cannot carry*—his burden at *Chester* prong one, and the Court will dismiss his § 1983 claim.

## IV. Conclusion

For the foregoing reasons, an Order shall enter DENYING Plaintiff's Motion for Summary Judgment (ECF No. 11); GRANTING Defendants' Motion to Dismiss (ECF No. 7); DISMISSING WITH PREJUDICE Plaintiff's § 1983 claim; and CLOSING THIS CASE.

DATED this 18th day of February, 2016.

BY THE COURT:

_____/s/_____
James K. Bredar
United States District Judge

---

appeal, so they have limited persuasive value at this point. Moreover, regardless how the Third Circuit rules in *Suarez* and *Binderup*, those cases are factually distinguishable from the case at bar. In *Suarez*, the plaintiff's predicate offense was a nearly 25-year-old conviction for carrying a handgun without a license, a regulatory misdemeanor under state law. In *Binderup*, the plaintiff's predicate offense was a 16-year-old conviction for corruption of minors, also a misdemeanor under state law. In this case, by contrast, Plaintiff's predicate offenses were felonies under Virginia law, and he committed them within the past decade.

16

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| **JAMES HAMILTON,** | * | |
| **Plaintiff** | * | |
| **v.** | * | **CIVIL NO. JKB-15-2142** |
| **WILLIAM L. PALLOZZI,** *et al.*, | * | |
| **Defendants** | * | |

*     *     *     *     *     *     *     *     *     *     *     *

**ORDER**

For the reasons stated in the foregoing Memorandum, it is ORDERED:

1. The Motion for Summary Judgment filed by Plaintiff James Hamilton (ECF No. 11) is DENIED;

2. The Motion to Dismiss filed by Defendants William L. Pallozzi and Brian E. Frosh (ECF No. 7) is GRANTED;

3. Plaintiff's claim for relief pursuant to 42 U.S.C. § 1983 is DISMISSED WITH PREJUDICE; and

4. The Clerk is DIRECTED to CLOSE THIS CASE.

DATED this 18th day of February, 2016.

BY THE COURT:

_____/s/_____
James K. Bredar
United States District Judge

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| JAMES HAMILTON, | ) Case. No. 1:15-CV-2142-JKB |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| WILLIAM L. PALLOZZI, et al., | ) |
| | ) |
| Defendants. | ) |

NOTICE OF APPEAL

PLEASE TAKE NOTICE that Plaintiff James Hamilton hereby appeals to the United States

Court of Appeals for the Fourth Circuit from the Court's memorandum and order entered February

18, 2016, granting Defendants' motion to dismiss, denying Plaintiff's motion for summary

judgment, and dismissing Plaintiff's case [ECF 19, 20].

Dated: February 29, 2016              Respectfully submitted,

By: /s/ Alan Gura                     By: /s/ Cary J. Hansel
    Alan Gura*                            Cary J. Hansel
    Gura & Possessky, PLLC               Hansel Law, P.C.
    916 Prince Street, Suite 107         2514 N. Charles Street
    Alexandria, VA 22314                 Baltimore, MD 21218
    703.835.9085/Fax 703.997.7665        301.461.1040/Fax 443.451.8606
    alan@gurapossessky.com               cary@hansellaw.com

    *Admitted pro hac vice               Attorneys for Plaintiff

# CERTIFICATE OF SERVICE

I certify that on  April 11, 2016        the foregoing document was served on all parties or their
counsel of record through the CM/ECF system if they are registered users or, if they are not, by
serving a true and correct copy at the addresses listed below:

/s/ Alan Gura
_____
Signature

April 11, 2016
_____
Date