No. 16-1222

## In the
## United States Court of Appeals for the Fourth Circuit

———————————

JAMES HAMILTON,
*Plaintiff-Appellant*,

v.

WILLIAM L. PALLOZZI, *et al.*,
*Defendants-Appellees.*

———————————

## On Appeal from the
## United States District Court for
## the District of Maryland

———————————

Brief *Amicus Curiae* of Gun Owners of America, Inc., Gun Owners Foundation,
United States Justice Foundation, Downsize DC Foundation, DownsizeDC.org,
The Heller Foundation, Conservative Legal Defense and Education Fund, and
Institute on the Constitution in Support of Plaintiff-Appellant and Reversal

———————————

MICHAEL CONNELLY
  932 D Street, Ste. 2
  Ramona, CA 92065
*Attorney for Amicus Curiae*
*U.S. Justice Foundation*

ROBERT J. OLSON*
HERBERT W. TITUS
WILLIAM J. OLSON
JOHN S. MILES
JEREMIAH L. MORGAN
  WILLIAM J. OLSON, P.C.
  370 Maple Avenue W., Suite 4
  Vienna, Virginia 22180-5615
  (703) 356-5070
*Attorneys for Amici Curiae*

*Attorney of Record
April 18, 2016

———————————

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Disclosures must be filed on behalf of <u>all</u> parties to a civil, agency, bankruptcy or mandamus case, except that a disclosure statement is **not** required from the United States, from an indigent party, or from a state or local government in a pro se case.  In mandamus cases arising from a civil or bankruptcy action, all parties to the action in the district court are considered parties to the mandamus case.

Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements.

If counsel is not a registered ECF filer and does not intend to file documents other than the required disclosure statement, counsel may file the disclosure statement in paper rather than electronic form.  Counsel has a continuing duty to update this information.

No. __16-1222__     Caption: __Hamilton v. Pallozzi, et al.__

Pursuant to FRAP 26.1 and Local Rule 26.1,

__Gun Owners of America, Gun Owners Fndn., US Justice Fndn, Downsize DC Fndn, DownsizeDC.org,__
(name of party/amicus)

__The Heller Foundation, Conservative Legal Def & Edu. Fund, and Institute on the Constitution__

 who is _____amici_____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1.      Is party/amicus a publicly held corporation or other publicly held entity?   ☐YES ☑NO


2.      Does party/amicus have any parent corporations?                         ☐YES ☑NO
        If yes, identify all parent corporations, including all generations of parent corporations:




3.      Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or
        other publicly held entity?                                             ☐YES ☑NO
        If yes, identify all such owners:

4. Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation (Local Rule 26.1(b))? ☐ YES ☑ NO
   If yes, identify entity and nature of interest:

5. Is party a trade association? (amici curiae do not complete this question) ☐ YES ☐ NO
   If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6. Does this case arise out of a bankruptcy proceeding? ☐ YES ☑ NO
   If yes, identify any trustee and the members of any creditors' committee:

Signature: /s/ Robert J. Olson _____    Date: _____April 18, 2016_____

Counsel for: Gun Owners of America, et al. _____

## CERTIFICATE OF SERVICE
**************************

I certify that on _____April 18, 2016_____ the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by serving a true and correct copy at the addresses listed below:

/s/ Robert J. Olson _____        _____April 18, 2016_____
      (signature)                                    (date)

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

INTEREST OF *AMICI CURIAE*. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

I.    MARYLAND HAS VIOLATED PLAINTIFF'S SECOND
      AMENDMENT RIGHTS BY REFUSING TO GIVE FULL
      FAITH AND CREDIT TO VIRGINIA'S JUDGMENT. . . . . . . . . . . . . . . . 5

      A.    The Supreme Court Has Applied Full Faith and Credit
            Most Strongly to the Recognition of State Court Judgments.. . . . . . . 6

            1.    Maryland is Required to Recognize Virginia's Judgment.. . . . 6

            2.    Plaintiff is Not Asking for Enforcement
                  of Virginia's Judgment. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

      B.    Other Courts Have Given Full Faith and Credit to the Decisions
            of Sister States to Restore Firearm Rights. . . . . . . . . . . . . . . . . . . . . . 9

      C.    Many Courts Give Full Faith and Credit to the Pardons
            of Sister States Which Restore Firearm Rights. . . . . . . . . . . . . . . . . 11

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

# TABLE OF AUTHORITIES

Page

CONSTITUTION

Article IV, Section I.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 6
Amendment II. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, *passim*

STATUTES

Maryland Code §5–117.1. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
Va. Code Ann. § 18.2-308.2(B). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 3
18 U.S.C. § 921(a)(20). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
28 U.S.C. § 1738. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

CASES

Baker v. General Motors Corp., 522 U.S. 222 (1998). . . . . . . . . . . . . . . . 6, 7, 8
DuPont v. Nashua Police Dep't, 167 N.H. 429 (2015).. . . . . . . . . . . . . . . . . 10
Estin v. Estin, 334 U.S. 541 (1948).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8
Fisher v. Kealoha, 49 F. Supp. 3d 727 (D. Haw. 2014). . . . . . . . . . . . . . . . . 12
Kellogg v. State, 504 P.2d 440 (Okla. Crim. App. 1972).. . . . . . . . . . . . . . . . 12
Milwaukee County v. M. E. White Co., 296 U.S. 268 (1935). . . . . . . . . . . . . . 7
Pacific Employers Ins. Co. v. Industrial Accident Comm'n.,
    306 U.S. 493 (1939). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 8
Pa. State Police v. Slaughter, 2016 Pa. Commw. LEXIS 144
    (Pa. Commw. Ct., Mar. 21, 2016).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
People v. Norton, 80 Cal. App. 3d Supp. 14 (Cal. App.
    Dep't Super. Ct. 1978). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13
People v. Van Heck, 252 Mich. App. 207, 651 N.W.2d
    174 (Mich. Ct. App. 2002). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12
Schlenther v. Department of State, Div. of Licensing,
    743 So. 2d 536 (Fla. Dist. Ct. App. 2d Dist. 1998). . . . . . . . . . . . . . . . . 9
United States v. Carpio-Leon, 701 F.3d 974 (4th Cir. 2012).. . . . . . . . . . . . . . 4
In re Winston, 438 N.J. Super. 1 (App. Div. 2014). . . . . . . . . . . . . . . . . . . . . 13

MISCELLANEOUS

E.P. Redpath, "Between Judgment and Law: Full Faith and Credit,
    Public Policy, and State Records," Emory Law Journal,
    vol. 62, p. 639 (2013). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

## INTEREST OF *AMICI CURIAE*

Gun Owners of America, Inc., Gun Owners Foundation, United States Justice Foundation, Downsize DC Foundation, DownsizeDC.org, The Heller Foundation and Conservative Legal Defense and Education Fund are nonprofit organizations, exempt from federal taxation under sections 501(c)(3) or 501(c)(4) of the Internal Revenue Code. Institute on the Constitution is an educational organization. Each is dedicated, *inter alia*, to the correct construction, interpretation, and application of the law.[1]

---

[1] *Amici* requested and received the consent of Defendants-Appellees to the filing of this brief *amicus curiae*, pursuant to Rule 29(a), Federal Rules of Appellate Procedure. Counsel for Plaintiff-Appellant declined to consent to the filing of this brief. No party's counsel authored the brief in whole or in part. No party or party's counsel contributed money that was intended to fund preparing or submitting the brief. No person other than these *amici curiae*, their members or their counsel contributed money that was intended to fund preparing or submitting this brief.

**STATEMENT**

Plaintiff was convicted in Virginia in 2006 of three felonies — credit card fraud, credit card theft, and credit card forgery. <u>Hamilton</u> v. <u>Pallozzi</u>, 2016 U.S. Dist LEXIS 19428, *2. The district court below noted that these are not "technical or regulatory offenses: they are black-letter *mala in se* felonies reflecting grave misjudgment and maladjustment." *Id.* at *25. Nevertheless, in 2013, Plaintiff's civil rights to vote, serve as a notary, serve on a jury, and hold public office were restored by a pardon from the Governor of Virginia. *Id.* at *2, n.2. Then, in 2014, the Circuit Court for Spotsylvania County expressly restored Plaintiff's Second Amendment rights to possess firearms. *Id.* Based on Virginia's restoration of rights, federal law also recognizes Plaintiff's rights to keep and bear arms. Appellant's Brief ("App. Br.") at 35.

Plaintiff now resides in Maryland. *Id.* at 5. As Defendant notes, "Maryland law generally prohibits the possession of [firearms] by persons who have been convicted of" a "'disqualifying crime,'" which includes certain felony convictions in other states. Doc. 7-1 (Oct. 6, 2015) at 3. Unlike Virginia, Maryland law provides no opportunity to obtain a restoration of Second Amendment rights, and Maryland refuses to recognize the restoration of firearm rights by other states.[2] *Id.*

---

[2] Contrarily, Virginia's felon disarmament statute states that its prohibition does not apply to "any person whose right to possess firearms or ammunition has

at 4.  Plaintiff was advised by the Maryland State Police that, even though

Plaintiff's Second Amendment rights have been restored by a Virginia court,

Maryland refuses to recognize either that judicial proceeding of its neighbor state,

or the restorative effect provided by federal law.[3]  App. Br. at 7-8.  The district

court's opinion upheld Maryland's refusal.  <u>Hamilton</u>, 2016 U.S. Dist. LEXIS

19428 at *29.

## ARGUMENT

Plaintiff's complaint asks for declaratory relief that the Maryland prohibitory

statute is unconstitutional as-applied to him.  Complaint at 6.  Central to that

---

been restored under the law of another state subject to conditions placed upon the
reinstatement of the person's right to ship, transport, possess, or receive firearms
by such state."  Va. Code Ann. § 18.2-308.2(B).

[3]  In the district court, Defendant argued that "Plaintiff's claim is not ripe for
adjudication because the Plaintiff has not even applied to obtain a handgun carry
permit or handgun qualification license...."  Defendant's Response Memorandum
in Opposition to the Plaintiff's Motion for Summary Judgment, p. 1.  However, in
order to apply for such a license, Maryland law requires "a statement made by the
applicant **under the penalty of perjury** that the applicant is not prohibited under
federal or State law from possessing a handgun."  Maryland Code §5–117.1
(emphasis added).  Thus, to challenge its law, Maryland would have Plaintiff first
apply for a license after being told he is ineligible for one, a potentially chargeable
offense, putting him at jeopardy of criminal prosecution.  It is no wonder that the
district court quite rightly rejected Maryland's argument, explaining that "[h]ad
Plaintiff gone through the motions of formally applying for a license or carry
permit, it is uncontroverted that the MSP would have denied his request.  The law
does not require Plaintiff to avail himself of a hopeless administrative process
before looking to the courts for relief."  <u>Hamilton</u>, 2016 U.S. Dist. LEXIS 19428
at *10-11.

determination is the issue whether Plaintiff is entitled to Second Amendment

rights.  In resolving this matter, *amici* do not believe that this Court needs to reach

the as-applied Second Amendment claim raised by Plaintiff, because it can be

resolved on a threshold issue.  Indeed, Plaintiff's entire case revolves around

"whether the plaintiff should be disarmed, considering his or her personal

circumstances" (App. Br. at 28-29) — whether he is a law-abiding citizen,

productive member of society, danger to others, *etc*.  But as Plaintiff explains in

his brief, those are precisely the same issues that the Virginia court has already put

to rest, determining that Plaintiff's firearm rights should be and are restored.  App.

Br. at 26.

   Plaintiff asks this Court for a "'determination that persons who commit some

offenses might nonetheless remain in the protected class of "law-abiding,

responsible" persons,'"[4] so that the federal courts restore his firearm rights.

However, that determination already has been made by a Virginia court.  Rather

than this Court addressing the fact-intensive question whether Plaintiff is the sort

of person who should possess firearms, for the reasons set forth in Section I,

below, this Court can and must simply recognize the judgment of a Virginia court

---

   [4]  App. Br. at 26, citing <u>United States</u> v. <u>Carpio-Leon</u>, 701 F.3d 974, 981 (4th
Cir. 2012).

which has already decided that very issue, and granted that very remedy.[5]

## I. MARYLAND HAS VIOLATED PLAINTIFF'S SECOND AMENDMENT RIGHTS BY REFUSING TO GIVE FULL FAITH AND CREDIT TO VIRGINIA'S JUDGMENT.

Maryland claims that "the order of the Circuit Court for Spotsylvania County, Virginia restoring the Plaintiff's ability to possess firearms under Virginia law ... **has no effect** on Maryland firearms law disqualifications."  Memorandum in Support of Defendants' Motion to Dismiss at 4 (emphasis added).  However, under Article IV, Section 1 of the U.S. Constitution, the Virginia court judgment expressly restoring the firearm rights that Virginia had previously taken away is dispositive of the issue.  Under the Full Faith and Credit Clause, Maryland is required to recognize the judicial proceeding in Virginia which restored Plaintiff's Second Amendment rights.  By withholding a handgun license from Plaintiff, Maryland seeks to re-open an issue which has already been litigated and decided in a Virginia court — whether Plaintiff should be allowed to possess firearms — and in so doing, Maryland violates Plaintiff's Second Amendment rights.

---

[5] Of course, should this Court reject the threshold argument presented in this *amicus* brief, it would then move on to the argument raised by Plaintiff.

**A. The Supreme Court Has Applied Full Faith and Credit Most Strongly to the Recognition of State Court Judgments.**

**1.    Maryland is Required to Recognize Virginia's Judgment.**

The Constitution's Full Faith and Credit Clause states that "Full faith and credit shall be given in each state to the public acts, records, and **judicial proceedings** of every other state.  And the Congress may by general laws prescribe the manner in which such acts, records, and proceedings shall be proved, and the effect thereof." Article IV, Section 1.  Pursuant to that grant of authority, Congress enacted 28 U.S.C. Section 1738, the current version of which states that "The records and judicial proceedings of any court of any such State ... shall have the same full faith and credit in every court within the United States ... as they have by law or usage in the courts of such State ... from which they are taken."  The Supreme Court has held that "[r]egarding judgments ... the full faith and credit obligation is exacting. A final judgment in one State, if rendered by a court with adjudicatory authority over the subject matter and persons governed by the judgment, qualifies for recognition throughout the land."  <u>Baker</u> v. <u>General Motors Corp.</u>, 522 U.S. 222, 233 (1998).

Here, Plaintiff was restored his gun rights by a judicial proceeding in the Circuit Court for Spotsylvania County, Virginia.  <u>Hamilton</u>, 2016 U.S. Dist LEXIS 19428, *2 n.2.  While Maryland might prefer to disregard a sister state's judicial

proceeding for restoration of rights because Maryland law does not allow such

restoration of rights for Maryland convictions, it may not do so.  The Supreme

Court has spoken to that very issue:  "credit must be given to the judgment of

another state although the forum would not be required to entertain the suit on

which the judgment was founded."  Milwaukee County v. M. E. White Co., 296

U.S. 268, 277 (1935).  Such is the case here.  Even though Maryland does not

provide for restoration of rights, Virginia does, and Maryland is required to

recognize Virginia's judicial proceeding which expressly restored Plaintiff's

firearm rights.[6]

---

[6] To be sure, the U.S. Supreme Court has noted that there are limits on the reach of the Full Faith and Credit clause:  "there may be limits to the extent to which the policy of one state, in many respects sovereign, may be subordinated to the policy of another."  Milwaukee County at 273.  Indeed, "[f]ull faith and credit caselaw has developed along diverging paths:  one path requiring 'exacting' faith and credit for **final judgments** and the other path severely limiting the faith and credit given to **legislative acts** through the creation of a public policy exception."  E.P. Redpath, "Between Judgment and Law:  Full Faith and Credit, Public Policy, and State Records," Emory Law Journal, vol. 62, p. 639 (2013) (emphasis added).

On the weak end of the spectrum are **statutes**, where "the full faith and credit clause does not require one state to substitute for its own statute, applicable to persons and events within it, the conflicting statute of another state...."  Pacific Employers Ins. Co. v. Industrial Accident Comm'n., 306 U.S. 493, 502 (1939).

On the other side of the spectrum, **judgments** receive strongest full faith and credit protection.  The Supreme Court has further divided the landscape into the **recognition** of **judgments** and the enforcement of judgments, with recognition of judgments receiving the strongest protection.  See Baker, 522 U.S. at 233.

## 2. Plaintiff is Not Asking for Enforcement of Virginia's Judgment.

With respect to **enforcement** of judgments, "there are some limitations upon the extent to which a state may be required by the full faith and credit clause to enforce even the judgment of another state in contravention of its own statutes or policy." Pacific Employers at 502. However, the Court made clear that there is "no roving 'public policy exception' to the full faith and credit due *judgments*." Baker v. General Motors Corp., 522 U.S. 222, 233 (1998). On the other hand, the Full Faith and Credit Clause applies most strongly in requiring a state to **recognize** an out-of-state judgment:

> where a judgment of one State has been denied full faith and credit in another State, because its **enforcement** would contravene the latter's policy, have been few and far between.... The Full Faith and Credit Clause is not to be applied, accordion-like, to accommodate our personal predilections. It substituted a command for the earlier principles of comity and thus basically altered the status of the States as independent sovereigns.... It ordered **submission** by one State **even to hostile policies reflected in the judgment of another State** because the practical operation of the federal system, which the Constitution designed, demanded it. [Estin v. Estin, 334 U.S. 541, 545-46 (1948) (emphasis added)].

Recognition of the Virginia judgment deserves the strongest full faith and credit protection. Plaintiff's right to possess a firearm was restored by a judicial proceeding (a judgment), not a legislative act (statute) or even an executive act (pardon). Furthermore, Plaintiff here is not asking Maryland to enforce the Virginia judgment, but simply to recognize that his rights to keep and bear arms

8

have been restored.  Maryland was constitutionally required to recognize that judgment, and may not simply cast it aside in order to disarm Plaintiff.

### B. Other Courts Have Given Full Faith and Credit to the Decisions of Sister States to Restore Firearm Rights.

Although the U.S. Supreme Court has never decided a case involving a restoration of firearm rights in the context of the Full Faith and Credit Clause, various state and federal courts have done so, in cases looking at court judgments, gubernatorial pardons, restorations of rights through statute, and even restorations granted by state agencies.  Across the board, the trend is to give in-state application to the out-of-state determination.  Many courts which have looked at the issue of restoration of the right to bear arms have decided that the full faith and credit doctrine is fully applicable, and that a sister state's decisions must be given full force.

In Schlenther v. Department of State, Div. of Licensing, 743 So. 2d 536 (Fla. Dist. Ct. App. 2d Dist. 1998), the State of Florida had denied an application for a permit to carry a concealed weapon, on the ground that the applicant had been convicted of a felony 28 years before in Connecticut.  Much like Maryland here, Florida argued that under its state law, the appellant was required "to apply to the Governor of Florida for restoration of his civil rights...."  *Id.* at 537.  However, on appeal from the state licensing board, the Florida appellate court noted that

"appellant's civil rights had been fully restored in Connecticut ... and that **restoration of appellant's civil rights is entitled to full faith and credit in Florida**." *Id.* at 536 (emphasis added). Further, the court noted, "[o]nce another state restores the civil rights of one of its citizens whose rights had been lost because of a conviction in that state, they are restored and the State of Florida has no authority to suspend or restore them at that point. The matter is simply at an end." *Id.* at 537.

In February 2015, the Supreme Court of New Hampshire examined a case where a Massachusetts Firearm Licensing Review Board[7] had determined that a previously ineligible individual was "'a suitable person to possess a license to carry firearms, and his right to possess a firearm therefore is fully restored in the Commonwealth.'" DuPont v. Nashua Police Dep't, 167 N.H. 429, 431 (N.H. 2015). Nevertheless, New Hampshire police both revoked the individual's license to carry and denied his application to be an armed security guard on the basis of his prior conviction. *Id.* at 433. On appeal, the Supreme Court of New Hampshire reversed on the grounds that "**Massachusetts acted clearly and directly to**

---

[7] The Massachusetts Review Board operates in much the same way as a court, with seven sitting members holding hearings according to the rules of evidence, with sworn witnesses, transcripts, and the power to subpoena witnesses. https://malegislature.gov/Laws/GeneralLaws/PartI/TitleXX/Chapter140/Section13 0B.

**remove the restriction** ... upon his civil right to keep and bear arms." *Id.* at 442-

43. Additionally, the court noted, this Massachusetts decision removed the federal

disqualification under 18 U.S.C. Section 921(a)(20). *Id.* at 441. Thus, the state

supreme court held, the New Hampshire police were not justified in their decision

to withhold a license from the individual.[8] *Id.* at 443.

### C. Many Courts Give Full Faith and Credit to the Pardons of Sister States Which Restore Firearm Rights.

Although not directly applicable here, when it comes to **pardons**, arguably

constituting "records" or "public acts" under the Full Faith and Credit Clause,

state courts have applied full faith and credit to the determinations of other states,

and the analysis employed by these courts is instructive.

Considering the issue of a pardon, the U.S. District Court for the District of

Hawaii stated that "the Court has conducted extensive independent research and

found no authority for the proposition that a Hawaii pardon would not allow

Plaintiff to purchase firearms in other states because the pardon would only be

---

[8] *Compare* <u>Pa. State Police</u> v. <u>Slaughter</u>, 2016 Pa. Commw. LEXIS 144 (Pa. Commw. Ct., Mar. 21, 2016), where the Commonwealth Court of Pennsylvania decided that full faith and credit was "inapplicable" to a Virginia court judgment that purported to restore rights that Pennsylvania had taken away after an involuntary mental health commitment that had occurred in Pennsylvania. *Id.* at 29.

given effect in Hawaii."  Fisher v. Kealoha, 49 F. Supp. 3d 727, 745 (D. Haw. 2014) (emphasis added).

Also, the Court of Criminal Appeals of Oklahoma has concluded that:

[t]here would appear to be some merit to the theory that if the State of Nevada had convicted a person and then nullified that conviction with a pardon, Oklahoma would be bound to give full faith and credit to the act of Nevada nullifying the conviction.  Oklahoma could not choose to recognize one act of the sister-state, the conviction, and then ignore its subsequent act which nullified the conviction.  [Kellogg v. State, 504 P.2d 440, *P8 (Okla. Crim. App. 1972).]

Moreover, a Michigan court considered a case in which a person had four misdemeanor convictions in Connecticut, which were expunged in Connecticut via an "unconditional and absolute pardon."  People v. Van Heck, 252 Mich. App. 207, 651 N.W.2d 174 (Mich. Ct. App. 2002).  The state of Michigan argued that the Connecticut expungement should be treated the same way as an expungement under Michigan law, where expungements do not erase the underlying fact of conviction.  Id. at 209.  The Michigan Court of Appeals, however, gave full faith and credit to the Connecticut expungement, noting that expungement in Connecticut went much further than expungement in Michigan.  Id. at 214.  The court gave full effect to the Connecticut pardon, **even though the broader Connecticut law provided something that the more narrow Michigan law did not allow**:  complete erasure of the very fact of conviction.  Id. at 215.

In <u>People</u> v. <u>Norton</u>, 80 Cal. App. 3d Supp. 14, 23 (Cal. App. Dep't Super. Ct. 1978), a California Appellate Court determined that "appellant received a limited pardon" which did not include the right to possess a concealed firearm in California. Of course, if the pardon had been absolute, it appears likely that the California court would have given it full application in California, as the Court expressly noted that "[w]e feel constrained to add that this is a narrow decision. We are not confronted with a case ... where the sister state ... expressly restored a defendant's right to possess a concealable weapon." *Id.*

If these courts give full faith and credit to pardons which restore firearm rights, there is little doubt that they would give full faith and credit to judicial proceedings which do the same.[9]

---

[9] At least one court has even given full faith and credit to a **statute** of another state. The Superior Court of New Jersey, Appellate Division looked to New York law in deciding the status of a person's firearm rights. Although upholding a decision denying a firearms purchaser identification card, the New Jersey court looked at New York's restoration statute, which provides "[a] certificate of relief from disabilities shall not, however, in any way prevent any judicial, administrative, licensing or other body, board or authority from relying upon the conviction specified therein as the basis for the exercise of its discretionary power to suspend, revoke, refuse to issue or refuse to renew any license, permit or other authority or privilege." <u>In re Winston</u>, 438 N.J. Super. 1, 7 (App. Div. 2014). Thus, because New York's restoration was qualified, permitting the conviction to still be used for licensing purposes, the New Jersey court decided that New Jersey was justified in using the conviction as grounds for denying a license.

# CONCLUSION

By refusing to give full faith and credit to the judicial proceeding of a Virginia court, Maryland has violated Plaintiff's Second Amendment rights that he has possessed since their restoration by a Virginia court in 2014. Maryland cannot rely on the judicial proceedings of a Virginia court convicting Plaintiff of a felony, while at the same time ignoring the judgment of that very same Virginia court system restoring his rights and effectively superceding the original judgment. In other states, there are many instances where firearm rights can be restored through automatic operation of statute, through gubernatorial pardon, or through a judicial proceeding and judgment. Of the three, judgments are most clearly protected by the Full Faith and Credit doctrine, and here, Plaintiff seeks only recognition (not enforcement) of that Virginia judgment. The judgment in Virginia which restored Plaintiff's rights is quintessentially the sort of judicial proceeding the Full Faith and Credit Clause was designed to protect, and yet Maryland casually dismisses it as having "no effect." The opinion of the district court upholding that claim should be reversed. For the reasons set out above, the Court of Appeals should reverse the decision of the district court, enter judgment in favor of the Plaintiff-Appellant.

Respectfully submitted,

_/s/ Robert J. Olson_

MICHAEL CONNELLY
  932 D Street, Ste. 2
  Ramona, CA 92065
_Attorney for Amicus Curiae_
   _U.S. Justice Foundation_




April 18, 2016
*Attorney of record

ROBERT J. OLSON*
HERBERT W. TITUS
WILLIAM J. OLSON
JOHN S. MILES
JEREMIAH L. MORGAN
  WILLIAM J. OLSON, P.C.
  370 Maple Avenue West, Suite 4
  Vienna, Virginia 22180-5615
  (703) 356-5070

# CERTIFICATE OF COMPLIANCE WITH RULE 32(a)

IT IS HEREBY CERTIFIED:

1.  This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using WordPerfect version 14.0.0.756 in 14-point Times New Roman.

*/s/ Robert J. Olson*

_____
Robert J. Olson
Attorney for *Amici Curiae*

Dated: April 18, 2016

## CERTIFICATE OF SERVICE

IT IS HEREBY CERTIFIED that service of the foregoing Brief *Amicus Curiae* of Gun Owners of America, Inc., *et al.*, in Support of Plaintiff-Appellant and Reversal, was made, this 18th day of April, by the Court's Case Management/ Electronic Case Files system upon the attorneys for the parties.

*/s/ Robert J. Olson*

_____

Robert J. Olson
Attorney for *Amici Curiae*