No. 16-1222

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FOURTH CIRCUIT

James Hamilton,

*Plaintiff-Appellant,*

v.

William L. Pallozzi, Superintendent of the Maryland State Police,
and Brian E. Frosh, Attorney General of Maryland

*Defendants-Appellees.*

On Appeal from the United States District Court
for the District of Maryland
(James K. Bredar, District Judge)

## BRIEF OF DEFENDANTS-APPELLEES

BRIAN E. FROSH
Attorney General of Maryland

MARK H. BOWEN
Assistant Attorney General
1201 Reisterstown Road
Pikesville, Maryland 21208
Tel. (410) 653-4226

May 16, 2016                    Attorneys for Appellees

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Disclosures must be filed on behalf of <u>all</u> parties to a civil, agency, bankruptcy or mandamus case, except that a disclosure statement is **not** required from the United States, from an indigent party, or from a state or local government in a pro se case. In mandamus cases arising from a civil or bankruptcy action, all parties to the action in the district court are considered parties to the mandamus case.

Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements.

If counsel is not a registered ECF filer and does not intend to file documents other than the required disclosure statement, counsel may file the disclosure statement in paper rather than electronic form. Counsel has a continuing duty to update this information.

No. __16-1222__    Caption: _James Hamilton v. William L. Pallozzi, et al._____

Pursuant to FRAP 26.1 and Local Rule 26.1,

_Brian E. Frosh_____
(name of party/amicus)

_____

who is _____appellee_____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1.    Is party/amicus a publicly held corporation or other publicly held entity? ☐YES ☑NO

2.    Does party/amicus have any parent corporations?    ☐YES ☑NO
      If yes, identify all parent corporations, including all generations of parent corporations:

3.    Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?    ☐YES ☑NO
      If yes, identify all such owners:

4.  Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation (Local Rule 26.1(b))?  ☐YES ☑NO
    If yes, identify entity and nature of interest:

5.  Is party a trade association? (amici curiae do not complete this question)  ☐YES ☑NO
    If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.  Does this case arise out of a bankruptcy proceeding?  ☐YES ☑NO
    If yes, identify any trustee and the members of any creditors' committee:

Signature: _____          Date: _____3/11/16_____

Counsel for: Brian E. Frosh _____

## CERTIFICATE OF SERVICE
****************************

I certify that on _____3/11/16_____ the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by serving a true and correct copy at the addresses listed below:

_____          _____3/11/16_____
(signature)                                           (date)

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Disclosures must be filed on behalf of <u>all</u> parties to a civil, agency, bankruptcy or mandamus case, except that a disclosure statement is **not** required from the United States, from an indigent party, or from a state or local government in a pro se case. In mandamus cases arising from a civil or bankruptcy action, all parties to the action in the district court are considered parties to the mandamus case.

Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements.

If counsel is not a registered ECF filer and does not intend to file documents other than the required disclosure statement, counsel may file the disclosure statement in paper rather than electronic form. Counsel has a continuing duty to update this information.

No. 16-1222      Caption: James Hamilton v. William L. Pallozzi, et al.

Pursuant to FRAP 26.1 and Local Rule 26.1,

William L Pallozzi
(name of party/amicus)

who is _____ appellee _____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1. Is party/amicus a publicly held corporation or other publicly held entity?  ☐ YES ☑ NO

2. Does party/amicus have any parent corporations?  ☐ YES ☑ NO
   If yes, identify all parent corporations, including all generations of parent corporations:

3. Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?  ☐ YES ☑ NO
   If yes, identify all such owners:

4. Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation (Local Rule 26.1(b))? ☐ YES ☑ NO
   If yes, identify entity and nature of interest:

5. Is party a trade association? (amici curiae do not complete this question) ☐ YES ☑ NO
   If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6. Does this case arise out of a bankruptcy proceeding? ☐ YES ☑ NO
   If yes, identify any trustee and the members of any creditors' committee:

Signature: _____    Date: _____3/11/16_____

Counsel for: William L. Pallozzi

## CERTIFICATE OF SERVICE
**************************

I certify that on _____3/11/16_____ the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by serving a true and correct copy at the addresses listed below:

_____               3/11/16
(signature)                                (date)

# TABLE OF CONTENTS

ISSUES PRESENTED FOR REVIEW .....................................................1

STATEMENT OF CASE .......................................................................1

    MARYLAND'S FIREARMS LAW...........................................................2

    FACTUAL BACKGROUND...................................................................3

    PROCEDURAL HISTORY.....................................................................4

SUMMARY OF ARGUMENT ...............................................................4

ARGUMENT ..........................................................................................5

I.     THE STANDARD OF REVIEW IS *DE NOVO* ........................................5

II.    ABSENT ANY APPLICATION AND BACKGROUND INVESTIGATION TO DETERMINE IF APPELLANT IS DISQUALIFIED FROM POSSESSING FIREARMS UNDER MARYLAND LAW, APPELLANT'S CLAIM WAS NOT RIPE FOR ADJUDICATION...................................................................................5

III.   APPELLANT FAILED TO SHOW THAT HIS FACTUAL CIRCUMSTANCES REMOVE HIS CHALLENGE FROM THE REALM OF ORDINARY SECOND AMENDMENT CHALLENGES AND SO FAILS TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED ................................................12

CONCLUSION ....................................................................................18

**TABLE OF AUTHORITIES**

Page

**Cases**

*Adar v. Smith, 639 F.3d 146 (5th Cir. 2011)* ...........................................................15

*Bach v. Pataki,* 408 F.3d 75 (2d. Cir. 2005) ...............................................................8

*Baker by Thomas v. Gen. Motors Corp.*, 522 U.S. 222 (1998) ...............................15

*Binderup v. Holder*, No. 13-6750, 2014 U.S. Dist. LEXIS 135110
   (E.D. Pa. Sept 25, 2014) ........................................................................................16

*Dearth v. Holder,* 641 F.3d 499 (D.C. Cir. 2011) ....................................................8

*District of Columbia v. Heller,* 554 U.S. 570 (2008) ..................................12, 14, 15

*Doe v. Virginia Dept. of State Police,* 713 F.3d 745 (4th Cir. 2013) .................9, 10

*Goldstein v. Moatz*, 364 F.3d 205 (4th Cir. 2013) ....................................................5

*Horsley v. Trame,* 808 F.3d 1126 (7th Cir. 2015) .....................................................8

*McCloud v. Dept. of State Police,* 426 Md. 473 (2012) ............................................2

*Miller v. Brown,* 462 F.3d 312 (4th Cir. 2006) .........................................................5

*Pacific Employers Ins. Co. v. Industrial Accident Comm'n*,
   306 U.S. 493 (1939)................................................................................................15

*Suarez v. Holder*, No. 14-968, 2015 U.S. Dist. LEXIS 19378
   (M.D. Pa. Feb. 18, 2015) .......................................................................................16

*Thompson v. Thompson, 484 U.S. 174 (1988)*...........................................................15

*United States v. Carpio-Leon,* 701 F.3d 974 (4th Cir. 2012) ..................................17

*United States v. Moore,* 666 F.3d 313 (4th Cir. 2012) ..........................13, 14, 17, 18

*United States v. Preuss,* 703 F.3d 242 (4th Cir. 2012) ............................................15

*United States v. Smoot,* 690 F.3d 215 (4th Cir. 2012) ..............................................17

## Constitutional Provisions

U.S. Const., art. IV, § 1 ...........................................................................................15

U.S. Const., amend. II ...................................................................................... *passim*

## Statutes

18 U.S.C. § 921(a)(20)(B) ........................................................................................13

18 U.S.C. § 922(g)(1).......................................................................................... 13, 16

Md. Code Ann., Pub. Safety § 5-101 ......................................................................... 2

Md. Code Ann., Pub. Safety § 5-117.1 .................................................... 2, 6, 10, 11

Md. Code Ann., Pub. Safety § 5-133.......................................................... 2, 7, 13

Md. Code Ann., Pub. Safety § 5-205 ............................................................... 2, 13

Md. Code Ann., Pub. Safety § 5-303.................................................................. 2, 6

Md. Code Ann., Pub. Safety § 5-304.................................................................. 2, 6

Md. Code Ann., Pub. Safety § 5-305 ................................................................. 2, 6

Md. Code Ann., Pub. Safety § 5-306 ............................................................. 2, 6, 7

Md. Code Ann., Pub. Safety § 5-312................................................................ 10, 11

Md. Code Ann., State Gov't § 10-205 ................................................................... 10

Md. Code Ann., State Gov't § 10-222 ................................................................... 11

Va Code Ann. § 18.2-192 ......................................................................................... 3

Va Code Ann. § 18.2-193 ............................................................ 3

Va. Code Ann. § 18.2-195 ........................................................... 3

Va Code Ann. § 18.2-308.2 ....................................................... 15

## ISSUES PRESENTED FOR REVIEW

1.     Should Mr. Hamilton's claim have been dismissed as unripe for adjudication where he did not submit an application for a handgun qualification license or handgun wear-and-carry permit and, as a result, the Maryland State Police have not conducted a background investigation to determine if he is disqualified to possess firearms under Maryland law?

2.     Did the district court correctly dismiss the claims of Mr. Hamilton, a convicted felon who desires to wear and carry a handgun in public in Maryland, where his allegations do not demonstrate factual circumstances that would remove his challenge from the realm of ordinary Second Amendment challenges?

## STATEMENT OF THE CASE

The Appellant, James Hamilton, who was convicted of three felonies in the Commonwealth of Virginia, filed this action seeking declaratory and injunctive relief to prevent the Appellees, the Superintendent of the Maryland State Police and the Attorney General of Maryland (the "State Defendants"), from enforcing provisions of Maryland's firearms laws against him based on those convictions.  Mr. Hamilton alleges that Maryland's firearms laws, as applied to him, violate his right to possess firearms under the Second Amendment.

## MARYLAND'S FIREARMS LAW

Maryland law generally prohibits the possession of handguns, rifles and shotguns by persons who have been convicted of "a violation classified as a felony in the State" or "a violation classified as a misdemeanor in the State that carries a statutory penalty of more than 2 years." Md. Code Ann., Pub. Safety ("PS") §§ 5-101(g), 5-133(b)(1) and 5-205(b)(1). The Maryland Court of Appeals has held that this definition of "disqualifying crime" includes out-of-state convictions, so long as Maryland law classifies the crime as a felony or covered misdemeanor. *McCloud v. Dept. of State Police*, 426 Md. 473, 480 (2012). When determining whether an out-of-state crime qualifies, an agency must look to the maximum penalty for the equivalent offense in Maryland. *Id.* At 487.

Individuals intending to purchase a handgun in Maryland must first apply for and obtain a handgun qualification license. PS § 5-117.1. Individuals seeking to wear, carry or transport a handgun must first apply for and obtain a handgun carry permit. PS § 5-303. Handgun qualification licenses and handgun carry permits are issued by the Maryland State Police only after completion of an investigation, which includes a State and federal fingerprint-based background check. PS §§ 5-117.1 & 5-304 – 5-306.

**FACTUAL BACKGROUND**

Mr. Hamilton was convicted in 2006 in Virginia of three felony offenses: credit card fraud, Va. Code Ann. § 18.2-195; credit card theft, Va. Code Ann. § 18.2-192; and credit card forgery, Va. Code Ann. § 18.2-193. (J.A. 7, ¶ 9.) Mr. Hamilton concedes that, as a result of those convictions, he lost the ability to lawfully possess firearms under federal law, Virginia law, and the law of Maryland, but he contends that his ability to lawfully possess firearms in Virginia and under federal law was restored by Virginia court order in 2014. (J. A. 7, ¶ 10-12.)

Mr. Hamilton asserts that he wishes to purchase and possess a handgun and a long gun for self-defense in his home, but refrains from doing so because he fears that he would face arrest and prosecution for violation of Maryland law. (J. A. 5, ¶ 1; 9, ¶ 21.) He further alleges that he "sought" a permit to carry a handgun from the Maryland State Police, though without completing an application for such a permit, but was verbally informed by an unidentified individual with the Maryland State Police Licensing Division that he could not possess a firearm unless he were to obtain a full pardon from Virginia's governor. (J. A. 9, ¶ 20.) The Maryland State Police Licensing Division has no record of Mr. Hamilton ever filing an application for a handgun carry permit or for a handgun qualification license, and has no record of *any* communication between Mr. Hamilton and the Licensing Division. (J.A. 27-28.)

On July 22, 2015, Mr. Hamilton filed his complaint in this action. (J.A. 2, 5-10.) Mr. Hamilton challenged the potential application of Maryland firearms prohibitions against him based on his Virginia felony convictions as infringements of his right to keep and bear arms under the Second Amendment. (J.A. 9-10.)

On October 6, 2015, the State Defendants filed a motion to dismiss for failure to state a claim. (J.A. 2, 11-12.) On October 26, 2015, Mr. Hamilton filed a motion for summary judgment. (J.A. 2, 14.) On February 18, 2016, the district court granted the State Defendants' motion to dismiss and denied Mr. Hamilton's motion for summary judgment. (J.A. 3, 34-50.) This appeal followed.

## SUMMARY OF ARGUMENT

Mr. Hamilton's claim is not ripe for adjudication because he has not applied to obtain a handgun carry permit or handgun qualification license and the State Defendants have taken no action, or threatened to take any action, against him. Additionally, Mr. Hamilton's claim that the application of disqualifications under Maryland's firearms laws based on his Virginia convictions would violate his right to keep and bear arms under the Second Amendment to the United States Constitution fails to state a claim on which relief can be granted because laws prohibiting felons from possessing firearms are facially valid and Mr. Hamilton's allegations, even taken as true for purposes of the State Defendants' motion to

dismiss, do not show factual circumstances that remove his challenge from the realm of ordinary challenges to such laws.

The Court should affirm the district court's grant of judgment in favor of the State Defendants.

## ARGUMENT

## I. THE STANDARD OF REVIEW IS *DE NOVO*.

This court reviews *de novo* the district court's dismissal of Mr. Hamilton's claims. *Miller v. Brown*, 462 F.3d 312, 316 (4th Cir. 2006) (*de novo* review of dismissal for lack of ripeness or standing); *Goldstein v. Moatz*, 364 F.3d 205, 211 (4th Cir. 2004) (*de novo* review of dismissal for failure to state a claim under Rule 12(b)(6)).

## II. ABSENT AN APPLICATION AND BACKGROUND INVESTIGATION TO DETERMINE IF MR. HAMILTON IS DISQUALIFIED FROM POSSESSING FIREARMS UNDER MARYLAND LAW, MR. HAMILTON'S CLAIM WAS NOT RIPE FOR ADJUDICATION.

"A case is fit for judicial decision when the issues are purely legal and when the action in controversy is final and not dependent on future uncertainties." *Miller*, 462 F.3d at 319. In this case, there has been no specific or final action by the State Defendants concerning Mr. Hamilton's ability to receive a permit to carry a handgun or to purchase or possess firearms.

Mr. Hamilton's complaint in this action is apparently based on a single, informal contact with an unnamed employee of the Department of State Police

concerning Mr. Hamilton's intention to obtain a permit to carry a handgun. Mr. Hamilton alleges that he "sought a permit to carry a handgun from the Maryland State Police," but decided not to apply for such a permit upon being told by an unnamed individual whom he believes was affiliated with the Licensing Division that he could not possess a firearm in Maryland owing to his Virginia conviction, unless he were to obtain a full pardon from Virginia's governor. (J. A. 9, ¶ 20.)

Mr. Hamilton does not allege that he even submitted an application to the MSP to obtain a handgun carry permit or an application to obtain a handgun qualification license (necessary in order to purchase a handgun in Maryland), nor does he allege that he was forbidden the opportunity to submit either or both.[1] Mr. Hamilton does not allege that he received any written response to his handgun permit inquiry or that he received any documented or specific statement of intended legal action from either the Maryland State Police or the Office of the Attorney General.[2]

_____

[1]   Maryland law requires a person to have a handgun carry permit before wearing, carrying or transporting a handgun, and to have a handgun qualification license before purchasing a handgun. PS §§ 5-303, 5-117.1. Both the handgun carry permit and the handgun qualification license are issued or denied by the Maryland State Police based upon the submission of applications and an investigation, including a fingerprint-based background check. PS §§ 5-304 through 5-306, 5-117.1.

[2]   In his Reply to Appellees' Response to his motion for summary judgment, Mr. Hamilton attached a copy of a December 22, 2014 email message from Susan Howe Baron, an Assistant Attorney General with the Department of Public Safety and Correctional Services, to Margaret Love, Mr. Hamilton's attorney at the time, in which Ms. Baron stated that Maryland would accept a full pardon from Virginia's Governor as restoring Plaintiff's right to possess firearms. Ms. Baron's

The Maryland State Police Licensing Division has no record of any application submitted by Mr. Hamilton or any communications with Mr. Hamilton. (J.A. 27-28.)

Had Mr. Hamilton actually submitted an application to obtain a handgun carry permit, or an application for a handgun qualification license, his application would have been investigated, including a fingerprint-based background check, to establish his identity and determine whether he was prohibited from possessing a handgun for any of the thirteen reasons set forth in § 5-133 of the Public Safety Article, or from receiving a permit to carry a handgun for any of the additional reasons set forth in § 5-306 of the Public Safety Article. If Mr. Hamilton was disqualified for any reason other than his Virginia conviction, his challenge concerning the use of that conviction by the State Defendants in any hypothetical future action against Mr. Hamilton would be moot.

The court below faulted the State Defendants for not presenting evidence that Mr. Hamilton would be disqualified from possessing a firearm based on any factor other than his Virginia convictions. However, the State Defendants had no such evidence because Mr. Hamilton had not filed an application, which would have

_____

communication was not made in connection with the processing of any application or other administrative action.

included information from which an investigation could have been conducted to make such a determination, such as his date-of-birth, address and fingerprints.

Mr. Hamilton asserts that he should not be required to go through "a futile, ritualistic act of submitting paperwork to test an announced disqualification." (Appellant's Brief at 15.)  However, the submission of an application to obtain a permit to carry a handgun or a handgun qualification license would not necessarily be futile or ritualistic, because the investigation of the application may disclose an alternative basis for denial not associated with the Virginia convictions.

Also, contrary to the three other cases on which Mr. Hamilton relies, in this case there has been no "announced" disqualification.  Unlike in *Bach v. Pataki*, 408 F.3d 75, 82, n.16 (2d Cir. 2005), no official of the Maryland State Police informed Mr. Hamilton that any application he filed with the Department's Licensing Division would be rejected.  In *Horsley v. Trame*, 808 F.3d 1126, 1129 (7th Cir. 2015), Horsely submitted an application for a Firearm Owners Identification Card which was returned to her with an accompanying cover letter informing her that the application was incomplete because she was not yet 21 and the application did not contain the signature of a parent or guardian.  And, in *Dearth v. Holder*, 641 F.3d 499, 501 (D.C. Cir. 2011), Dearth had twice previously attempted to go through the "formal process" of applying to purchase a firearm and was denied each time.  By contrast, Mr. Hamilton did not file any application with the Maryland State Police;

as a result, there was no investigation to determine if, and on what bases, Appellant may have been prohibited from possessing a firearm; and there was never any action by, or formal communication from, the Maryland State Police concerning the likely action on any application. Mr. Hamilton is thus asking this Court to confront a novel constitutional question regarding an as-applied challenge under the Second Amendment without bothering to satisfy the basic prerequisite for standing of having submitted an application for, and having received a denial of, the permit or license he seeks.

The court below mistakenly distinguished this Court's decision in *Doe v. Virginia Dept. of State Police*, 713 F.3d 745 (2013). In *Doe*, this Court concluded that the plaintiff in that case was required to petition the local school board and a Virginia circuit court "in their capacity as 'initial decisionmaker[s]'" to determine whether he would be granted access to school property before bringing a federal court action. *Id*. at 763. The court below decided that *Doe* could be distinguished on its facts because in the instant matter there are two separate decisionmaking processes: the Virginia Governor's decision on issuing a pardon; and Maryland's decision on the effect of that pardon on Mr. Hamilton's ability to possess firearms in Maryland.

However, the lower court overlooked the problem that even without considering the role of a possible pardon from the Virginia Governor, no

"decisionmaker" in Maryland has made a final decision on Mr. Hamilton's eligibility to obtain a handgun qualification license, a handgun carry permit or his ability to possess firearms in Maryland. Neither the oral statement from an unidentified person allegedly affiliated with the Maryland State Police Licensing Division that "he could not possess a firearm in Maryland" (J.A. 9) nor the e-mail communication from an assistant attorney general to Mr. Hamilton's former counsel (J.A. 32-33) constitutes a final, actionable decision by the Maryland State Police regarding an application Mr. Hamilton has never made. As Judge Keenan noted in her concurring opinion in *Doe*, "[t]here is a difference between the requirement that administrative remedies be exhausted and the requirement that a challenged action be final before it is judicially reviewable." *Id.* at 762 (citations omitted). Mr. Hamilton never submitted an application to the Maryland State Police, and was never told he would not be permitted to do so, and so no decision was made on whether he was disqualified from possessing a firearm in Maryland, based on his Virginia conviction or any other reason.[4]

---

[4] While exhaustion of administrative remedies is not required prior to the commencement of an action under 42 U.S.C. § 1983, if Mr. Hamilton had filed an application and it had been denied by the Maryland State Police, he would have been entitled to an administrative hearing before the Handgun Permit Review Board (in the case of an application for a permit to carry a handgun, PS § 5-312) or the State's Office of Administrative Hearings (in the case of an application for a license to purchase a handgun, PS § 5-117.1; Md. Code Ann., State Gov't § 10-205). Both of these agencies are independent of the Maryland State Police. Mr. Hamilton also would have had the right to subsequent judicial review of any adverse administrative

Finally, the court below also noted that if it granted Mr. Hamilton declaratory and injunctive relief concerning the Virginia restoration of rights, he would be shielded from prosecution based on the Virginia convictions. However, Mr. Hamilton would remain subject to prosecution based on any other disqualification. Without a thorough investigation, as is required of any applicant for a handgun qualification license or handgun carry permit in Maryland, and a formal decision by the Maryland State Police on Mr. Hamilton's ability to receive a handgun qualification license or handgun carry permit, the potential for criminal prosecution will exist regardless of any order issued in this case.

In the absence of the submission of an application, subsequent investigation, and an actual and specific action by the State Defendants on such application, Mr. Hamilton's challenge to the potential use of his Virginia conviction in a future, hypothetical licensing decision or law enforcement action is premature and not ripe for adjudication.

---

decision by either of these agencies. PS §§ 5-312, 5-117.1; Md. Code Ann., State Gov't § 10-222.

**III.  APPELLANT FAILED TO SHOW THAT HIS FACTUAL CIRCUMSTANCES REMOVE HIS CHALLENGE FROM THE REALM OF ORDINARY SECOND AMENDMENT CHALLENGES AND SO FAILS TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED.**

The Second Amendment provides: "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. Const., amend. II.  In *District of Columbia v. Heller*, the Supreme Court overturned a District of Columbia law that imposed a "complete prohibition" on the possession of handguns in the home.  554 U.S. 570, 629 (2008).  After engaging in a textual and historical analysis, the Court concluded that:  (1) the amendment codified a pre-existing right, *id.* at 592; (2) the right is an individual right, not dependent on militia service, *id.*; and (3) "whatever else it leaves to future evaluation, it surely elevates above all other interests the right of law-abiding, responsible citizens to use arms in defense of hearth and home," *id.* at 635.

Although the Court declined to speculate about other conduct that might fall *within* the protection of the Second Amendment, *id.*, it observed, notwithstanding the amendment's unconditional language, that "the right was not a right to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose." *Id.* at 626.  Especially relevant to this case, the Supreme Court declared that its decision in that case "should not be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons . . . ." *Id.* at 627.

This case presents a challenge to the constitutionality of precisely that longstanding prohibition against possession of firearms by felons. Consistent with *Heller*, this Court, in *United States v. Moore*, 666 F.3d 313, 319 (4th Cir. 2012), categorically rejected the argument that 18 U.S.C. § 922(g)(1), which prohibits possession of firearms by individuals "convicted in any court of, a crime punishable by imprisonment for a term exceeding one year,"[5] on its face violates the Second Amendment.[6] In leaving open the possibility of an as-applied challenge to the statute, the *Moore* Court stated that an individual asserting such a challenge "cannot 'obtain relief based on arguments that a differently situated person might present.'" *Id.* Instead, "a litigant claiming an otherwise constitutional enactment is invalid as applied to him must show that his factual circumstances remove his challenge from the realm of ordinary challenges." *Id.*

---

[5]  18 U.S.C. § 921(a)(20)(B) defines the term "crime punishable by imprisonment for a term exceeding one year" to include, in addition to felonies, any State offense classified by the laws of the State as a misdemeanor and punishable by a term of imprisonment of more than two years.

[6]  The Maryland firearms laws at issue in this case, PS §§ 5-133(b)(1) and 5-205(b)(1), are effectively identical to 18 U.S.C. § 922(g)(1) in that they also prohibit the possession of firearms by individuals convicted of felonies or state-law misdemeanors punishable by more than two years' imprisonment. Accordingly, federal cases concerning the application of the Second Amendment to 18 U.S.C. § 922(g)(1) are applicable to any Second Amendment challenge to PS §§ 5-133(b)(1) and 5-205(b)(1).

In this case, the district court properly decided that Mr. Hamilton failed to show that his factual circumstances did "remove his challenge from the realm of ordinary challenges." In his Complaint (J.A. 9-10, ¶ 24), Mr. Hamilton asserts that it is unconstitutional to apply Maryland's firearms laws against him due to his "unique personal circumstances" including the nature of his convictions, the restoration of his rights in Virginia, his general law-abiding record, his asserted trustworthiness with firearms, and the asserted lack of danger that his possession of firearms would pose. However, Mr. Hamilton's circumstances are neither unique (none of the cited characteristics is in any way out of the ordinary) nor do they justify a determination that Maryland law, as applied to him, violates the Second Amendment.

As was the case in *Moore*, Mr. Hamilton does not fall within the category of citizens to which the Supreme Court in *Heller* ascribed the Second Amendment's protection of "the right of law-abiding responsible citizens to use arms in defense of hearth and home." Less than a decade ago, Mr. Hamilton was convicted of three felony crimes in Virginia. The Maryland equivalents of two of those crimes are also felonies, and the Maryland equivalent of the third would be a disqualifying misdemeanor.

The fact that Mr. Hamilton's convictions were for non-violent felonies does not give support to his Second Amendment challenge. Indeed, the Supreme Court

did not limit its presumptive approval of prohibitions on the possession of firearms by felons to those who had committed violent felonies.  *Heller*, 554 U.S. at 626; *see also United States v. Preuss*, 703 F.3d 242, 247 (4th Cir. 2012) ("We join our sister circuits in holding that application of the felon-in-possession prohibition to allegedly non-violent felons like Preuss does not violate the Second Amendment.").  Thus, the nonviolent nature of Mr. Hamilton's crimes does not remove his challenge from the realm of ordinary challenges.

That Mr. Hamilton had his eligibility to possess firearms restored in Virginia is equally irrelevant.  Maryland is not obliged to accept and give effect to the restoration of eligibility granted under Virginia law.[7]  Maryland is not bound by

---

[7] "The Full Faith and Credit Clause does not compel 'a state to substitute the statutes of other states for its own statutes dealing with a subject matter concerning which it is competent to legislate.'" *Baker by Thomas v. Gen. Motors Corp*., 522 U.S. 222, 232 (1998) (quoting, *Pacific Employers Ins. Co. v. Industrial Accident Comm'n*, 306 U.S. 493, 501 (1939)).  In order to give effect in Maryland to the permit issued under VA Code § 18.2-308.2(c), as the amicus brief filed in this case urges, Maryland would have to substitute the laws of Virginia for its own.  Maryland is not required to do so.  Further, by its terms, the Virginia law has no effect outside of that state. VA Code § 18.2-308.2(c) authorizes a Virginia court to direct the issuance of a permit which functions to exempt the individual from the disqualifying provisions of Virginia's firearms laws ("The provisions of this section relating to firearms, ammunition for a firearm, and stun weapons shall not apply to any person who has been granted a permit pursuant to this subsection.")  Finally, as noted by Mr. Hamilton in his Opposition to Motion to File Brief Amicus Curiae, the Full Faith and Credit Clause does not give rise to an implied federal cause of action or create rights enforceable against state actors under Section 1983.  *See*, *Thompson v. Thompson*, 484 U.S. 174, 182 (1988); *Adar v. Smith*, 639 F.3d 146, 154 (5th Cir. 2011).

Virginia's decision to restore Mr. Hamilton's eligibility to possess a firearm within Virginia's borders.

Mr. Hamilton's allegations that he is trustworthy and that his possession of firearms would not pose a danger are nothing more than his personal assertions, unverifiable and not factors in application of the statutory prohibition. Furthermore, Mr. Hamilton's convictions are not so far removed in time that their disqualifying effect should be nullified. Unlike the other cases Mr. Hamilton cited as having upheld an as-applied challenge to 18 U.S.C. § 922(g)(1), Mr. Hamilton's convictions are less than a decade old. *See Suarez v. Holder*, No. 14-968, 2015 U.S. Dist. LEXIS 19378 at 17-18 (M.D. Pa. Feb. 18, 2015) (conviction nearly 25 years old) and *Binderup v. Holder*, No. 13-6750, 2014 U.S. Dist. LEXIS 135110 (E.D. Pa. Sept 25, 2014) (conviction 16 years old).

In the declaration he filed in support of his motion for summary judgment, Mr. Hamilton asserts that he intends to possess a handgun and a long gun to defend himself and his family at home. (J. A. 17, ¶ 14.) As with his description of his personal attributes, Mr. Hamilton's general desire to possess firearms does not distinguish his challenge from the realm of ordinary challenges. "Like the threat in *Moore*—the potential for being robbed in a bad neighborhood," and the threat in *Smoot*—who claimed that "other people were looking for him," Mr. Hamilton's generalized desire for self-protection is "'far too vague and unsubstantiated to

remove his case from the typical felon in possession case.'" *United States v. Smoot*, 690 F. 3d 215, 222 (4th Cir. 2012) (quoting *Moore*, 666 F.3d at 320).

Mr. Hamilton argues, erroneously, that the court below was required to conduct an analysis as to whether he had been rehabilitated to determine whether his Second Amendment claim could proceed. However, neither *Moore* nor any other case cited by Mr. Hamilton requires such an analysis. In *United States v. Carpio-Leon*, 701 F.3d 974, 981 (4th Cir. 2012), this Court simply observed that "illegal aliens do not fall in the class of persons who are classified as law-abiding members of the political community for the purpose of defining the Second Amendment's scope." In *Smoot*, 690 F.3d at 221, Smoot's criminal history was "remarkably egregious, and he can hardly be considered a 'law-abiding responsible citizen.'" Likewise, in *Moore*, 666 F.3d at 320, this Court noted that Moore's criminal history "clearly demonstrate that he is far from a law-abiding, responsible citizen." In none of these cases did the Court conduct a factual analysis of whether the individual had rehabilitated himself.

In reaching its decision, the court below noted that Mr. Hamilton had been convicted of three serious felonies, and that his crimes were not technical or regulatory. (J.A. 47.) The court also cited to studies showing "a statistically significant risk that persons who commit property crimes may engage in other maladaptive behaviors." (*Id.*) Mr. Hamilton's offenses bring him directly within

the scope of Maryland's prohibition on the possession of firearms by felons. Mr. Hamilton had not, as *Moore* requires, presented facts in his Complaint that show that he has removed "his challenge from the realm of ordinary challenges" – that his circumstances are markedly different from those of other felons whose ability to possess firearms is not protected by the Second Amendment. Without removing his challenge from the realm of ordinary challenges, Mr Hamilton's challenge was, in effect, a facial challenge to the constitutionality of the Maryland laws and was properly dismissed by the court below.

## CONCLUSION

The judgment of the United States District Court for the District of Maryland should be affirmed.

<div style="margin-left: 50%">

BRIAN E. FROSH
Attorney General of Maryland

/s/ Mark H. Bowen
MARK H. BOWEN
Assistant Attorney General
1201 Reisterstown Road
Pikesville, Maryland 21208
Tel. 410-653-4228

</div>

May 16, 2016                              Attorneys for Appellants

**CERTIFICATE OF COMPLIANCE WITH RULE 32(a)**
Type-Volume Limitation, Typeface Requirements, and Type Style Requirements

This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains 4,442 words, excluding the parts of the brief exempted by Fed R. App. P. 32(a)(7)(B)(iii).  This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word in Times New Roman, 14-point font.

/s/ Mark H. Bowen
MARK H. BOWEN

May 16, 2016

Attorneys for Defendants-Appellants

**CERTIFICATE OF SERVICE**

I certify that, on this 16th day of May 2016, the foregoing Brief of Appellant was served on all counsel of record through the CM/ECF System.


<u>/s/ Mark H. Bowen</u>
MARK H. BOWEN

May 16, 2016                               Attorneys for Defendants-Appellees