No. 16-1222

# In The United States Court of Appeals For The Fourth Circuit

JAMES HAMILTON,

Plaintiff-Appellant,

v.

WILLIAM L. PALLOZZI, Superintendent of the Maryland State Police, and BRIAN E. FROSH, Attorney General of Maryland,

Defendants-Appellees.

Appeal from a Judgment of the United States District Court for the District of Maryland, the Hon. James K. Bredar, District Judge (1:15-CV-02142-JKB)

## APPELLANT'S REPLY BRIEF

Cary Hansel
Hansel Law, P.C.
2514 N. Charles Street
Baltimore, MD 21218
301.461.1040/Fax 443.451.8606
cary@hansellaw.com

Alan Gura
Gura & Possessky, PLLC
916 Prince Street, Suite 107
Alexandria, VA 22314
703.835.9085/Fax 703.997.7665
alan@gurapossessky.com

June 20, 2016

Attorneys for Appellant

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Disclosures must be filed on behalf of <u>all</u> parties to a civil, agency, bankruptcy or mandamus case, except that a disclosure statement is **not** required from the United States, from an indigent party, or from a state or local government in a pro se case. In mandamus cases arising from a civil or bankruptcy action, all parties to the action in the district court are considered parties to the mandamus case.

Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements.

If counsel is not a registered ECF filer and does not intend to file documents other than the required disclosure statement, counsel may file the disclosure statement in paper rather than electronic form. Counsel has a continuing duty to update this information.

No. 16-1222        Caption: James Hamilton v. William L. Pallozzi, et al.

Pursuant to FRAP 26.1 and Local Rule 26.1,

James Hamilton
(name of party/amicus)


who is _____ appellant _____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)


1.      Is party/amicus a publicly held corporation or other publicly held entity?  ☐YES ☑NO


2.      Does party/amicus have any parent corporations?                              ☐YES ☑NO
        If yes, identify all parent corporations, including all generations of parent corporations:




3.      Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or
        other publicly held entity?                                                 ☐YES ☑NO
        If yes, identify all such owners:

4.    Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation (Local Rule 26.1(b))?    ☐ YES ☑ NO
If yes, identify entity and nature of interest:

5.    Is party a trade association? (amici curiae do not complete this question)    ☐ YES ☑ NO
If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.    Does this case arise out of a bankruptcy proceeding?    ☐ YES ☑ NO
If yes, identify any trustee and the members of any creditors' committee:

Signature:  /s/ Alan Gura                              Date:  March 4, 2016

Counsel for:  Appellant James Hamilton

## CERTIFICATE OF SERVICE
*****************************

I certify that on      March 4, 2016      the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by serving a true and correct copy at the addresses listed below:

/s/ Alan Gura                                                          March 4, 2016
(signature)                                                                (date)

TABLE OF CONTENTS

Table of Authorities.......................................... ii

Preliminary Statement........................................ 1

Summary of Argument ........................................ 1

Argument.................................................... 4

    I.    The District Court Correctly Rejected Defendants'
          Ripeness Claims.................................... 4

    II.   Hamilton, A Responsible, Law-Abiding Citizen,
          Is Entitled to As-Applied Relief. ...................... 9

Conclusion................................................. 13

Certificate of Compliance

Certificate of Service

i

# TABLE OF AUTHORITIES

Cases

*Bach* v. *Pataki*,
    408 F.3d 75 (2d Cir. 2005). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Dearth* v. *Holder*,
    641 F.3d 499 (D.C. Cir. 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*District of Columbia* v. *Heller*,
    554 U.S. 570 (2008). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 12

*Doe* v. *Va. Dep't of State Police*,
    713 F.3d 745 (4th Cir. 2013). . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Ezell* v. *City of Chicago*,
    651 F.3d 684 (7th Cir. 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Horsley* v. *Trame*,
    808 F3d 1126 (7th Cir. 2015). . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Medimmune, Inc.* v. *Genentech, Inc.*,
    548 U.S. 118 (2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Mobil Oil Corp.* v. *Attorney Gen'l of Virginia*,
    940 F.2d 73 (4th Cir. 1991). . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*United States* v. *Carpio-Leon*,
    701 F.3d 974 (4th Cir. 2012). . . . . . . . . . . . . . . . . . . . . . . . . . 11

*United States* v. *Moore*,
    666 F.3d 313 (4th Cir. 2012). . . . . . . . . . . . . . . . . . . . . . . . 10, 11

*United States* v. *Triple Canopy, Inc.*,
    775 F.3d 628 (4th Cir. 2015). . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Rules and Statutes

18 U.S.C. § 922(g)(1). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Md. Pub. Safety Code Ann. § 5-133(b)(1) . . . . . . . . . . . . . . . . . . . 6, 8

Md. Pub. Safety Code Ann. § 5-205(b)(1) . . . . . . . . . . . . . . . . . . . 6, 8

## PRELIMINARY STATEMENT

Although Plaintiff-Appellant James Hamilton still maintains his Virginia armed security officer certification, there has been a recent change in his employment. Hamilton is now employed, through a contractor, as a Protective Security Officer for the Department of Homeland Security. He provides armed security for federal government sites in the Nation's capital. Of course, he still does not possess a firearm at his Maryland home.

## SUMMARY OF ARGUMENT

Defendants confirm that the District Court correctly rejected their ripeness claim, which apparently does not even address ripeness or justiciability, at least as those concepts are applied by courts.

The ripeness or justiciability claim is specious, as Defendants' brief makes one thing perfectly clear: there is no dispute that today, Defendants would arrest and prosecute Hamilton were he to possess a firearm of any kind, on account of his Virginia convictions. That is obviously a ripe injury-in-fact that the District Court properly considered traceable to the Defendants and redressable by the Court.

Baseless speculation that Hamilton may have some *other*, unspecified disqualification does not diminish this injury or make it unripe. Even if the speculation proved true (though Defendants do not even so much as offer a guess as to what the issue might be), it would not diminish Hamilton's injury or make it unripe.

Moreover, Defendants' argument depends on factual assertions that directly contradict the facts asserted in the complaint. The complaint, after all, states that no other disqualifications exist. Joint Appendix ("JA") at 6, 35 n.3.  It further states that Hamilton was, in fact, told by Defendants not to bother applying, JA 9—a fact Defendants dispute, but cannot disprove. Speculation warring with a complaint's asserted facts simply cannot be credited on a motion to dismiss. And Defendants plainly misread the various cases that dispense with the need to engage in futile acts.

Defendants' merits-based arguments fare no better. Defendants at once acknowledge that as-applied challenges are available, *see* Defendants' Br. at 13, but four pages later, they deny that any individualized assessment is required, *id*. at 17. Oddly, they erroneously suggest that a felon's *reasons* for seeking a gun are

determinative of an as-applied challenge, such that even a very dangerous felon may be entitled to relief from a firearms disability if he faces a heightened risk of harm. *Id.* at 16-17.

But Defendants carefully avoid explaining *why* felon disarmament is presumptively constitutional, failing to address (let alone rebut) the obvious reason: felons are assumed to be dangerous. That does not immunize dangerous *non*-felons (i.e., domestic violence misdemeanants, drug addicts) against being disarmed, any more than it means that non-dangerous felons cannot regain their rights. Indeed, Defendants do not truly explain why Hamilton would be dangerous.

Misreading precedent, Defendants offer that uniqueness of one's circumstances, in and of itself, is the controlling factor. Respectfully, the government's interest in disarming someone does not rise or fall with the commonality of his personal circumstances, but with what those circumstances indicate about the individual's proclivity to commit violence. The uncontroverted evidence calls for reversal with instructions to enter summary judgment for Hamilton.

ARGUMENT

I. THE DISTRICT COURT CORRECTLY REJECTED DEFENDANTS'
   RIPENESS CLAIMS.

In a typical ripeness challenge, the government claims that the absence of some event means that the plaintiff is not yet suffering an injury. But as the District Court found, "Defendants never refute Plaintiff's basic assertion—*i.e.*, that because of the Firearms Prohibitions, he is barred from lawfully possessing a handgun or long gun in the State of Maryland." JA 39. That suffices to end the ripeness matter, but there is more.

Defendants argue at length that their firearms prohibitions are properly applied to Hamilton. Appellees' Br. at 12-18. Hamilton's allegations as to his conversations with the police, JA 17, must be assumed true on a motion to dismiss, *United States* v. *Triple Canopy, Inc.*, 775 F.3d 628, 632 n.1 (4th Cir. 2015). And Defendants do not dispute the authenticity of the email from their counsel in this case, to one of Hamilton's attorneys, specifically stating that Hamilton is barred from having firearms in Maryland. JA 32.

The claim that "no 'decisionmaker' in Maryland has made a final decision on Mr. Hamilton's . . . ability to possess firearms in Maryland,"

Appellees' Br. at 9-10, is thus not only specious, it is irrelevant. Hamilton plainly has good reason to refrain from touching a firearm in Maryland. The Supreme Court has made it crystal clear that pre-enforcement standing does *not* require some official determination that a criminal law applies to a particular person. *Medimmune, Inc.* v. *Genentech, Inc.*, 548 U.S. 118, 129 (2007). It only matters whether the individual has a reasonable fear of having the law enforced against him. The notion that Hamilton must await some "final decision" by a "decisionmaker" as to whether the law applies to him, before he files suit, is precisely what this Court rejected in *Mobil Oil Corp.* v. *Attorney Gen'l of Virginia*, 940 F.2d 73 (4th Cir. 1991).

*Medimmune* and the numerous precedents that it reviews, along with *Mobil Oil* and this Court's consistent precedent, were not overruled by *Doe* v. *Va. Dep't of State Police*, 713 F.3d 745 (4th Cir. 2013). At bottom, *Doe* merely provides that a case is not ripe if the injury is not complete. The *Doe* majority never claimed more than this. In *Doe*, this Court did not know whether and to what extent that plaintiff was barred from school and church grounds. Here, the Court

knows full well what Hamilton cannot do: he cannot possess a firearm in Maryland. That much is not in doubt. There is no mystery as to whether Md. Pub. Safety Code Ann. §§ 5-133(b)(1) or 5-205(b)(1) apply to Hamilton. They do. Even now, Defendants do not deny it.

Accordingly, nothing more need be established to show that Hamilton's claim is ripe. Hamilton's possession of arms is at least arguably affected with a constitutional interest, but if he possesses a firearm in Maryland, Defendants will arrest and prosecute him. The ripeness and immediacy of this case or controversy requires no further annotation.

Nor do Defendants suggest that they would grant Hamilton a permit to possess or carry a handgun (not required to possess long guns). Rather, Defendants *speculate* that had Hamilton applied for a handgun permit (not necessary to obtain a rifle), they might have discovered some other, unknown disqualification, beyond his Virginia record. In other words, theirs is not really a ripeness or justiciability claim at all. Defendants do not deny the existence of a present injury, they only lament that Hamilton did not invite them to find additional injuries.

As the District Court correctly found, other disqualifiers would be irrelevant because Defendants could still charge Hamilton with being a felon in possession of a firearm. JA 40. Moreover, any handgun permit applications that Hamilton would have submitted would not have disclosed the other disqualifiers, because none exist. Hamilton's complaint specifically denied the existence of other disqualifiers. The District Court was required to accept those facts on Defendants' motion to dismiss; it was not free to speculate that Hamilton lied or erred.

At best, had Defendants wished to argue that Hamilton was wrong or lying, *and*, had they wished to argue further that the existence of a mystery problem defeated Hamilton's claim, nothing barred them from investigating Hamilton and providing evidence on summary judgment. But the government cannot defeat a civil rights case, where it already vows to prosecute the plaintiff should he violate the challenged law, simply by speculating that there may be some unknown problem with the case that contradicts material aspects of the allegations in the complaint and the plaintiff's evidence.

Of course, a handgun permit application would have had nothing to do with Hamilton's interest in possessing a long gun, nor would it have

made Defendants' threatened prosecution under Md. Pub. Safety Code Ann. §§ 5-133(b)(1) or 5-205(b)(1) any more real and immediate.

Because Defendants are not actually denying the injury—threatened prosecution for being a felon in possession of a handgun or long gun—the question of whether a handgun license application would have been a futile act (it would have been futile) is probably beside the point.

But to be sure, Defendants' reading of the futile act cases is lacking.

Defendants badly misread the facts of *Dearth* v. *Holder*, 641 F.3d 499 (D.C. Cir. 2011) in arguing that Mr. Dearth "had twice previously attempted to go through the 'formal process' of applying to purchase a firearm and was denied each time." Appellees' Br. at 8. That is incorrect. Confronted with a form he could not truthfully complete lest it instantly cause his rejection, Dearth walked away. That is precisely Hamilton's experience with Defendants' application form.

Defendants claim that "[u]nlike in *Bach v. Pataki*, 408 F.3d 75, 82, n.16 (2d Cir. 2005), no official of the Maryland State Police informed Mr. Hamilton that any application he filed with the Department's Licensing Division would be rejected." Appellees' Br. at 8. Again, on Defendants' motion to dismiss, Hamilton's allegation that this is

exactly what happened must be credited. Nor do Defendants attempt to disprove Hamilton's description of events. They claim only that they have no record of his communication, not that the police keep a log of every inquiry.

More to the point, Defendants do not dispute what Hamilton alleges he was told by the police—that any such application would be denied. So the continued insistence that Hamilton misrepresents his transactions with the police is pointless.[1] Because there is no dispute that Hamilton would be denied access to a firearm on his conviction—including access to a long gun not subject to any handgun permits—Hamilton has non-applicant standing in addition to pre-enforcement standing.

## II. HAMILTON, A RESPONSIBLE, LAW-ABIDING CITIZEN, IS ENTITLED TO AS-APPLIED RELIEF.

As Defendants note, "[i]n leaving open the possibility of an as-applied challenge to [18 U.S.C. § 922(g)(1)], [this] Court stated that an individual asserting such a challenge 'cannot obtain relief based on

---

[1]Defendants restate, but do not appear to address, *Horsley* v. *Trame*, 808 F.3d 1126, 1129 (7th Cir. 2015). The Seventh Circuit held that Horsley's case was ripe, notwithstanding her refusal to resubmit her application for processing by the state police.

arguments that a differently situated person might present.'" Appellees'

Br. at 13 (quoting *United States* v. *Moore*, 666 F.3d 313, 319 (4th Cir.

2012)) (internal quotation marks omitted).

Precisely. Because felon disarmament laws are facially valid, any

successful challenge must be tailor-made to fit the individual's personal

circumstances. An argument that anyone might make is, by definition,

not an as-applied argument.

Defendants miscomprehend the law, suggesting that Hamilton must

lose because "none of [his] cited characteristics is in any way out of the

ordinary." Appellees' Br. at 14. Of course, that is true—many people are

peaceful, non-threatening, upstanding members of their community

who lack any history of violence. And such people "*are* the 'law-abiding,

responsible citizens' whose Second Amendment rights are entitled to

full solicitude under *Heller*." *Ezell* v. *City of Chicago*, 651 F.3d 684, 708

(7th Cir. 2011) (citing *District of Columbia* v. *Heller*, 554 U.S. 570

(2008)).

The issue is not whether Hamilton happens to be the only individual

in Maryland, or in the Fourth Circuit, or in the United States, entitled

to relief from a firearms disability. There is no quota on the number of

"persons who commit some offenses [who] might nonetheless remain in the protected class of 'law-abiding, responsible' persons." *United States v. Carpio-Leon*, 701 F.3d 974, 981 (4th Cir. 2012). The issue is whether a "differently situated person might present" Hamilton's sort of case. *Moore*, 666 F.3d at 319. A differently situated person—violent, irresponsible, and dangerous—could *not* present Hamilton's claim.

Or as this Court otherwise put it, an as-applied challenger "must show that his factual circumstances remove his challenge from the realm of ordinary challenges." *Moore*, 666 F.3d at 319. An "ordinary challenge" is one made by an ordinary felon, i.e., a felon who is properly presumed to be dangerous. A felon who has had all of rights restored by the convicting jurisdiction and under federal law, who has been adjudicated by a state court as one who may be entrusted with firearms, and who serves as a federal police officer, is well-beyond this presumptive category.

To be sure, Hamilton is not claiming that he is entitled to possess a firearm because he faces some special risk of harm. Every person, regardless of whether he or she is entitled to exercise Second Amendment rights, might have a strong self-defense interest in doing

so. But the Defendants fail to address, let alone negate, the obvious benchmark for delineating individuals entitled to Second Amendment rights from those who have forfeited their entitlement to those rights: dangerousness—the propensity to endanger others with firearms.

The concept of as-applied challenges is not new. *Heller* confirmed, but did not originate, the concept. Like every federal appellate court to have considered the issue, this Court has, repeatedly, confirmed that as-applied challenges are available to those who can overcome the presumptive validity of felon disarmament laws. Accordingly, the District Court was required to consider Hamilton's challenge.

The District Court erred in dismissing a complaint whose facts, which must be taken as true on a motion to dismiss, set out a valid claim for as-applied Second Amendment relief. And because Defendants did not even bother contradicting Hamilton's evidence, which plainly supports his claim of being a responsible, law-abiding citizen, the District Court was required to enter summary judgment for Hamilton as a matter of law.

CONCLUSION

The District Court's judgment should be reversed, and the case remanded with instructions to grant Hamilton's motion for summary judgment.

Dated: June 20, 2016     Respectfully submitted,

                /s/ Alan Gura

Cary Hansel         Alan Gura
Hansel Law, P.C.       Gura & Possessky, PLLC
2514 N. Charles Street     916 Prince Street, Suite 107
Baltimore, MD 21218     Alexandria, VA 22314
301.461.1040/Fax 443.451.8606 703.835.9085/Fax 703.997.7665
cary@hansellaw.com     alan@gurapossessky.com

                Attorneys for Appellant

# UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

No. <u>16-1222</u>      **Caption:** <u>James Hamilton v. William Pallozzi</u>

## CERTIFICATE OF COMPLIANCE WITH RULE 28.1(e) or 32(a)
Type-Volume Limitation, Typeface Requirements, and Type Style Requirements

1. **Type-Volume Limitation:** Appellant's Opening Brief, Appellee's Response Brief, and Appellant's Response/Reply Brief may not exceed 14,000 words or 1,300 lines. Appellee's Opening/Response Brief may not exceed 16,500 words or 1,500 lines. Any Reply or Amicus Brief may not exceed 7,000 words or 650 lines. Counsel may rely on the word or line count of the word processing program used to prepare the document. The word-processing program must be set to include footnotes in the count. Line count is used only with monospaced type.

   This brief complies with the type-volume limitation of Fed. R. App. P. 28.1(e)(2) or 32(a)(7)(B) because:

   [✓]  this brief contains <u>2,291</u> [*state number of*] words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii), *or*

   [ ]  this brief uses a monospaced typeface and contains _____ [*state number of*] lines of text, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2. **Typeface and Type Style Requirements:** A proportionally spaced typeface (such as Times New Roman) must include serifs and must be 14-point or larger. A monospaced typeface (such as Courier New) must be 12-point or larger (at least 10½ characters per inch).

   This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

   [✓]  this brief has been prepared in a proportionally spaced typeface using <u>WordPerfect X4</u> [*identify word processing program*] in <u>14 point Century Schoolbook</u> [*identify font size and type style*]; **or**

   [ ]  this brief has been prepared in a monospaced typeface using _____ [*identify word processing program*] in _____ [*identify font size and type style*].

(s) <u>/s/Alan Gura</u>

Attorney for <u>James Hamilton</u>

Dated: <u>June 20, 2016</u>

# CERTIFICATE OF SERVICE

I certify that on  June 20, 2016  the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by serving a true and correct copy at the addresses listed below:

/s/ Alan Gura

Signature

June 20, 2016

Date